# **Exhibit 1**

No *Shepard's* Signal™
As of: April 22, 2020 2:51 AM Z

# Ctr. for Investigative Reporting v. United States DOI

United States District Court for the District of Columbia

April 7, 2020, Decided; April 7, 2020, Filed

No. 18-cv-1599 (DLF)

**Reporter**
2020 U.S. Dist. LEXIS 61201 *

CENTER FOR INVESTIGATIVE REPORTING, Plaintiff, v. UNITED STATES DEPARTMENT OF THE INTERIOR, Defendant.

## Core Terms

withheld, records, deliberative process, harms, disclosure, withhold, summary judgment, emails, exemption, asserts, summary judgment motion, reasonably foreseeable, sea level, documents, invoked, pages, deliberations, foreseeable, releasing

**Counsel:** For CENTER FOR INVESTIGATIVE REPORTING, Plaintiff: D. Victoria Baranetsky, Emeryville, CA; Joshua Hart Burday, Merrick Jason Wayne, Matthew Topic, LOEVY & LOE **[*1]** VY, Chicago, IL.

For UNITED STATES DEPARTMENT OF THE INTERIOR, Defendant: Brian J. Field, LEAD ATTORNEY, U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA, Washington, DC.

**Judges:** DABNEY L. FRIEDRICH, United States District Judge.

**Opinion by:** DABNEY L. FRIEDRICH

## Opinion

**MEMORANDUM OPINION**

Before the Court is the U.S. Department of the Interior's Motion for Summary Judgment, Dkt. 16, and the Center for Investigative Reporting's Cross-Motion for Summary Judgment, Dkt. 18. Based on the concessions of both parties, only one contested issue remains in this *Freedom of Information Act (FOIA)* case: whether the Department has shown that disclosure of the withheld information would result in reasonably foreseeable harm to the Department's deliberative processes. For the reasons that follow, the Court concludes that the Department has not, and thus the Court will grant in part and deny without prejudice in part the Department's Motion for Summary Judgment and deny without prejudice the Center's Cross-Motion for Summary Judgment.

**I. BACKGROUND**

**A. The Migratory Bird Treaty Act (MBTA) Request**

On February 9, 2018, the Center submitted a FOIA request to the Department's Office of the **[*2]** Solicitor that sought "any emails, text messages, or other communications that mention the *Migratory Bird Treaty Act [(MBTA)]*" and "any communications between the solicitor's office and its lawyers and companies, individuals, organizations and state or local officials . . . between January 2017 and the present." Def.'s Statement of Facts, Dkt. 16-2, ¶ 1.[1] The Center also

---

[1] The Center does not dispute the Department's Statement of Facts, apart from any legal assertions. Pl.'s Reply, Dkt. 23, at

asked for "any recordings of video calls or conference calls where the [MBTA] was discussed. For example: Dan Jorjani's schedule for May 25, 2017 shows a video call on MBTA from 12:30 to 1:30." *Id.* And it requested "the personal schedule of Principal Deputy Solicitor Dan Jorjani and Kevin Haugrud for 2017." *Id.*

The Department conducted a search and located approximately 7,554 pages of responsive records. *Id.* ¶ 7. It produced these records to the Center, but it withheld portions of certain records under *FOIA Exemptions 2*, *5*, and *6*. *Id.* ¶ 9.

**B. The Sea Level Requests**

On February 9, 2018, the Center also submitted a FOIA request to the Department's National Park Service (NPS) related to sea level changes. *Id.* ¶ 11. That request sought "[a]ny emails, text messages[,] or other communications concerning 'Sea Level Change in **[*3]** the National Park System' report . . . between 2016 and the present"; and "[a]ny drafts of the report called 'Sea Level Change in the National Park System' or any drafts of reports on sea level rise and storm surge for individual parks or for all coastal parks that were produced by Maria Caffrey, Rebecca Beavers[,] or other scientists." *Id.*

The NPS conducted a search and released 3,075 pages of responsive records. *Id.* ¶¶ 20- 21. The NPS withheld portions of these records under *FOIA Exemptions 5* and *6*. *Id.* ¶ 14.

On April 12, 2018, the Center submitted a second request to the NPS, seeking: "[a]ny and all documents or recordings related to NPS report entitled Sea Level and Storm Surge Projections for National Parks"; "emails sent or received by people in the Park Service and the Interior Department related [to] this report"; "emails sent or received by others[,] including but not limited to Maria Caffrey (at her Colorado.edu address and her partner.nps.gov addresses) and Brendan Moynahan, [at] Brendan_moynahan@nps.gov"; "original word documents of all versions of this report dating back to August 2016"; and "any recordings of conference calls or video calls or other videos or recordings **[*4]** related to this report." *Id.* ¶ 23.

The NPS conducted a search and released 1,691 pages of responsive records. *Id.* ¶ 29. The NPS also determined that 1,600 pages of the 3,075 pages that were responsive to the Center's other request were also responsive to this request. *Id.* ¶ 30. It withheld portions of these records under *FOIA Exemptions 2*, *4*, *5*, *6*, and *7(A)*. *Id.* ¶ 25.

**C. Summary Judgment Motions**

The Center filed a complaint challenging the Department's responses to these requests. *See* Dkt. 1. On April 5, 2019, the Department filed a motion for summary judgment. Dkt. 16. The Department argued that it had satisfied its obligation under FOIA to perform a reasonable search and that it had justifiably withheld portions of responsive records under *FOIA Exemptions 4*, *5*, *6*, and *7(A)*. *See* Def.'s Mot. for Summ. J. 10-21. The Department explained that *Exemption 5* protects documents "that would be privileged in the civil discovery context" and invoked the attorney-client privilege, the attorney work-product doctrine, and the executive deliberative process privilege to withhold information under that exemption. *Id.* at 11. And in invoking the deliberative process privilege, the Department argued that the withheld **[*5]** information was both predecisional and deliberative, as that privilege requires. *Id.* at 12-15.

In its combined opposition and cross motion for summary judgment, the Center did not challenge these issues: the adequacy of the search; the information withheld under *Exemption 4*; the information withheld under *Exemption 6*; and the information withheld under *Exemption 5* based on the attorney-client privilege or the attorney work-product doctrine. *See* Pl.'s Opp. and Cross-Mot., Dkt. 18, 1-2, 5-7. It thus conceded them. *Hopkins v. Women's Div., 284 F. Supp. 2d 15, 25 (D.D.C. 2003)* ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

The Center raised just two points. It argued that the Department failed to show that it "'reasonably foresees that disclosure'" of the information withheld under *Exemption 5* based on the deliberative process privilege "would harm an interest protected by an exemption.'" Pl.'s Opp. and Cross-Mot. 3 (quoting *5 U.S.C. § 552(a)(8)(A)(i)*). And it argued that the Department failed to establish that *Exemption 7(A)* applies. *Id.* at 7-8. The Department subsequently agreed to produce **[*6]** the records it previously withheld under *Exemption 7(A)*

2. Because no genuine disputes of material fact exist, this opinion cites only to the Department's Statement of Facts.

along with "a portion of the records it withheld under deliberative process," rendering this second issue moot. Id.

The remaining question the Court must decide is whether the Department has shown that disclosure of this information withheld under Exemption 5 would result in foreseeable harm to the Department's deliberative processes.

## II. LEGAL STANDARD

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a federal agency moves for summary judgment in a FOIA case, the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1003, 386 U.S. App. D.C. 239 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." Perry v. Block, 684 F.2d 121, 126, 221 U.S. App. D.C. 347 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted). "The system of disclosure established by the FOIA is simple in theory": a "federal agency must [*7] disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)." DOJ v. Julian, 486 U.S. 1, 8, 108 S. Ct. 1606, 100 L. Ed. 2d 1 (1988). The agency bears the burden of justifying the application of any exemptions, "which are exclusive and must be narrowly construed." Mobley v. CIA, 806 F.3d 568, 580, 420 U.S. App. D.C. 108 (D.C. Cir. 2015).

Federal courts rely on agency affidavits to determine whether an agency complied with FOIA. Perry, 684 F.2d. at 126. Agency affidavits are entitled to a presumption of good faith, SafeCard Servs. v. SEC, 926 F.2d 1197, 1200, 288 U.S. App. D.C. 324 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, Judicial Watch v. U.S. Secret Serv., 726 F.3d 208, 215, 406 U.S. App. D.C. 440 (D.C. Cir. 2013). The "vast majority of FOIA cases can be resolved on summary judgment." Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527, 395 U.S. App. D.C. 155 (D.C. Cir. 2011).

## III. ANALYSIS

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This includes all documents that would normally be privileged in the civil discovery context. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975).

One such privilege is the deliberative process privilege, which the Department has invoked to withhold certain documents under Exemption 5. The deliberative process privilege allows agencies to withhold "documents reflecting [*8] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Petroleum Info. Corp. v. United States Dep't of Interior, 976 F.2d 1429, 1433, 298 U.S. App. D.C. 125 (D.C. Cir. 1992) (internal quotation and citation omitted). To invoke the deliberative process privilege, an agency must show that the information withheld is both "predecisional" and "deliberative." Petroleum Info. Corp., 976 F.2d at 1434.

The Center does not contest that the Department properly invoked the deliberative process privilege to withhold information under Exemption 5. The Center instead invokes a 2016 amendment to FOIA that applies "even if a record would otherwise be exempt." Pl.'s Opp. and Cross-Mot. 3. That amendment allows an agency to "withhold information under [FOIA] only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b) . . . or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). The Center asserts that the Department failed to meet this foreseeable harm requirement. Pl.'s Opp. and Cross-Mot. 3.

To make this argument, the Center relies heavily on a recent case from this Court that interprets this FOIA provision. Judicial Watch, Inc. v. Dep't of Commerce ("Judicial Watch I"), 375 F. Supp. 3d 93 (D.D.C. 2019).

In that case, the court concluded that both the [*9] "text and purpose" of § 552(a)(8)(A)(i) "support a heightened standard for an agency's withholdings under Exemption 5." Id. at 100. To satisfy its obligations, the agency must "articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." Id. (quotation omitted). This task "requires more than speculation"—"[t]he question is not whether the purported harms could" occur, but whether "it is reasonably foreseeable" that they will occur. Id. at 101.

The Department does not challenge Judicial Watch I or offer a competing interpretation of § 522(a)(8)(A)(i); it argues simply that it has satisfied its obligations under that provision. See Def.'s Reply 3. And since the parties filed their briefs, several courts in this District have followed the same approach as the court in Judicial Watch I. See Judicial Watch, Inc. v. U.S. Dep't of Justice ("Judicial Watch II"), No. 17-cv-0832 (CKK), 2019 U.S. Dist. LEXIS 163473, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019) (holding that the government had failed to satisfy the foreseeable harm standard); Ctr. for Investigative Reporting v. U.S. Customs & Border Prot., No. 18-cv-2901 (BAH), 2019 U.S. Dist. LEXIS 223077, 2019 WL 7372663, at *10 (D.D.C. Dec. 31, 2019) (same). The Court will do the same here.

**A. Office of the Solicitor Withholding**

There is only one record that the Office of the Solicitor [*10] withheld solely under the deliberative process privilege. That record consists of "three pages of untitled, undated notes" that were "attached to an email." Supp. Moore Decl., Dkt. 22-1, ¶ 8. That email, in turn, "refers to a draft 'one-pager on the Dec. 22 M Opinion for the Secretary in preparation for his upcoming budget hearings' that the author was 'developing.'" Id.

The Department suggests that releasing this record would cause several harms. See Moore Decl. ¶ 12-15. For example, the Department asserts that "given the on-going litigation challenging the Opinion, disclosure of this record (like the other records [that the Office of the Solicitor] withheld under Exemption 5) 'could reasonably undermine the Department's position in the pending litigation and/or civil settlement negotiations,'" which "'would significantly and negatively impact SOL's perceived freedom to candidly discuss internal legal strategy.'" Def.'s Reply 4 (quoting Supp. Moore Decl. ¶ 15)).

Though these harms are undoubtedly legitimate, the Department has not adequately explained how disclosing this "*particular*" record—or some category of substantively related records—"would harm the agency's deliberative process." [*11] Judicial Watch II, 2019 U.S. Dist. LEXIS 163473, 2019 WL 4644029, at *5. The Supplemental Moore Declaration merely asserts, without elaboration, that these harms would result from disclosing "any" of the records that the Office of the Solicitor withheld under the deliberative process privilege. Supp. Moore Decl. ¶ 12. This assertion falls short of "connect[ing] the harms in any meaningful way" to the withheld notes, "such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." Judicial Watch II, 2019 U.S. Dist. LEXIS 163473, 2019 WL 4644029, at *5. For instance, the Department does not say "who prepared" the notes, what the notes were generally about, or how the notes were "ultimately used" in the deliberative process. Ctr. for Investigative Reporting, 2019 U.S. Dist. LEXIS 223077, 2019 WL 7372663, at *10. These asserted harms, untethered to any particular disclosure, are thus akin to the "general explanations and boiler plate language" rejected in Rosenberg, Judicial Watch I, Judicial Watch II, and Center for Investigative Reporting. Ctr. for Investigative Reporting, 2019 U.S. Dist. LEXIS 223077, 2019 WL 7372663, at *9.

**B. National Park Service Withholdings**

The Center challenges three categories of the Department's National Park Service withholdings.[2] First, the NPS withheld emails that contained "discussions regarding one employee's suggested changes relating to the format for displaying data within [a] report." Supp. Wilson Decl., Dkt. 22-2, ¶ 3. Second, it withheld an [*12] email that "contained internal discussions concerning an opinion expressed by a peer reviewer." Id. ¶ 4. Third, it withheld emails that "contained internal communication summarizing the conversations related to a different report, which is unrelated to this FOIA request and has not yet been finalized." Id. ¶ 5.

The Department asserts virtually the same harms associated with releasing each category. For the first two categories, the Department asserts that releasing

---

[2] The NPS also withheld a fourth category of information, but during briefing the NPS agreed to release those records. See Def.'s Reply 7. That dispute is therefore moot.

this information "*could* inhibit open discourse between researchers in the future for fear that expressing differences in opinion on analyses or [on] how to present results *could* subject them to harassment by individuals who disagree or who misinterpret their work and deliberations." *Id.* ¶¶ 3-4 (emphasis added). The Department says that releasing the information in category two "*could* also have a chilling effect on future participations in peer reviews or discussions aimed at improving NPS scientific projects." *Id.* ¶ 4 (emphasis added). And similarly, the Department says that releasing the information in category three

> *could* subject NPS staff and peer reviewers who are working on and reviewing the draft report to undue harassment **[*13]** during the editorial process, which would not only impair the ability of NPS staff to complete that draft report but *could* have a chilling effect on future participation in peer reviews or discussions aimed at improving NPS scientific projects.

*Id.* ¶ 5.

On the current record, the Department has not established a reasonably foreseeable link between these harms and the specific information contained in the withheld records. First, the Department merely asserts what *could* happen if this information were released. The Department has not even asserted, let alone established, that it is reasonably foreseeable that disclosing these records would lead to these harms. But the Department must show that disclosure *would* cause reasonably foreseeable harms, not that it *could* cause such harms. *5 U.S.C. § 552(a)(8)(A)(i)*. The task of meeting this heightened standard "requires more than speculation." *Judicial Watch I, 375 F. Supp. 3d at 101*. Thus, the court in *Judicial Watch I* rejected similarly speculative harms. There the agency argued that "release of the withheld information could have a chilling effect on the discussion within the agency in the future and discourage a frank and open dialogue among agency employees" and that failure "to have these frank deliberations **[*14]** could cause confusion if incorrect or misrepresented climate information remained in the public sphere." Yet the court rejected those assertions as falling short "of articulating a link between the specified harm and specific information contained in the material withheld." *Id.* (quotation omitted). So too here.

Second, and as with the Office of the Solicitor's withholdings, the Department has not provided enough information about these record categories to establish a particular link between their disclosure and these purported harms. Again, the Department must "connect the harms in [a] meaningful way" to the withheld records, "such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Judicial Watch II, 2019 U.S. Dist. LEXIS 163473, 2019 WL 4644029, at *5*.

The Department thus has failed to show that the withholdings discussed in this opinion "would result in reasonably foreseeable harm to its deliberative process," and so the Court must deny the Department's motion. *Judicial Watch I, 375 F. Supp. 3d at 101*. But "[i]n light of the interests underlying the deliberative process privilege," the Court will deny the Department's motion without prejudice. *Judicial Watch II, 2019 U.S. Dist. LEXIS 163473, 2019 WL 4644029, at *5*.

## CONCLUSION

For the foregoing reasons, **[*15]** the Court grants in part and denies without prejudice in part the Department's Motion for Summary Judgment and denies without prejudice the Center's Cross-Motion for Summary Judgment. The parties shall jointly propose a schedule for further proceedings on or before May 7, 2020. A separate order consistent with this decision accompanies this memorandum opinion.

/s/ Dabney L. Friedrich

DABNEY L. FRIEDRICH

United States District Judge

April 7, 2020

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is

**ORDERED** that the U.S. Department of the Interior's Motion for Summary Judgment, Dkt. 16, is GRANTED in part and DENIED without prejudice in part. It is further

**ORDERED** that the Center for Investigative Reporting's Cross-Motion for Summary Judgment, Dkt. 18, is DENIED without prejudice. It is further

**ORDERED** that the parties shall jointly propose a schedule for further proceedings on or before May 7,

2020.

/s/ Dabney L. Friedrich

DABNEY L. FRIEDRICH

United States District Judge

April 7, 2020

**End of Document**