IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, BUZZFEED, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, *et al.*, <br><br> *Defendants*. | Case No. 1:19-cv-1278 (CKK) |

### JOINT STATUS REPORT

Pursuant to the Court's June 14, 2019, Order, the parties hereby submit this Joint Status Report in this Freedom of Information Act ("FOIA") case.

**I.      Plaintiffs' Statement**

**A.   The Status of Plaintiffs' FOIA Requests**

Defendants have not issued "determinations," as the D.C. Circuit has defined that term, on any of the requests at issue in this case.

**B.   Discussions Regarding the Scope of Plaintiffs' FOIA Requests**

Counsel have conferred regarding the scope of certain of Plaintiffs' requests multiple times between June 12 and July 12, and will continue to do so.

**C.   Status of Defendants' Searches**

It is Plaintiffs' understanding that Defendants have begun searching for and processing responsive records for some of the requests and that Defendants claim that other requests Defendants are not required to process, which Plaintiffs dispute. Plaintiffs will continue to confer with Defendants about those requests in an effort to avoid motion practice, if possible.

### D. The Anticipated Number of Documents Responsive to Plaintiffs' FOIA Requests

Defendants provide numeric estimates to Plaintiffs on the afternoon of July 12, 2019. Plaintiffs have not yet had an opportunity fully to evaluate them, their underlying assumptions, or the extent to which deduplication or other tools would substantially reduce the volume of records to be processed. Plaintiffs are initially skeptical that the Special Counsel's Office has a larger volume of data than the entirety of the Library of Congress. *See* https://blogs.loc.gov/thesignal/2011/07/transferring-libraries-of-congress-of-data/ (noting common estimate of 10 terabytes of data). Plaintiffs will continue to confer with Defendants about the requests, and a briefing schedule on any motions contemplated by Defendants, in advance of the next status report.

### E. The Anticipated Date(s) for Release of the Documents Requested by Plaintiffs

Plaintiffs request that Defendants make releases every 30 days. Given the importance of the records to the next Presidential election, where the President will likely continue to refer to the Mueller investigation as an illegal, politically motivated witch hunt, and where his opponents may argue that the President should have been charged with a crime, Plaintiffs request that each Defendant process at least 2500 pages per month so that the public will have as much information as possible to evaluate competing claims about the investigation.

### F. Whether A Motion for Stay is Likely Under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976)

Defendants have not provided Plaintiffs with any evidence meeting the requirements for an *Open America* stay.

### G. Whether a *Vaughn* Index Will be Required in This Case

Because Defendants are likely to withhold or redact various records, Plaintiffs anticipate that a *Vaughn* Index will be required for any material that is withheld.

### H. Further Joint Status Reports

Plaintiffs propose that the parties file a joint status report on October 3, 2019.

## II.    DEFENDANT'S STATEMENT

### A. The Status of Plaintiffs' FOIA Requests

#### i. Plaintiffs' FOIA Requests

This case concerns four of Plaintiffs' FOIA requests submitted to the Department of Justice ("DOJ") and two of Plaintiffs' requests submitted to the Federal Bureau of Investigation ("FBI") in March and April 2019 for records related to the investigation conducted by the Office of the Special Counsel and the "Report On The Investigation Into Russian Interference In The 2016 Presidential Election" (hereinafter, "Mueller Report" or "Report").[1] Two of the requests to DOJ and one request to FBI contain multiple subparts.

The four requests submitted to DOJ are as follows:

- Request No. DOJ-2019-003098: "I request disclosure from the Office of Attorney General, the Deputy Attorney General, and the Office of Special Counsel Robert Mueller the following records: 1. Copies of any and all records, which includes but is not limited to FBI 302s, emails, memos, letters, charts, used by the Office of Special Counsel Robert Mueller during the drafting and preparation of its FINAL REPORT relating to the Office's investigation into: any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise

---

[1] In their Complaint, Plaintiffs name as defendants the following entities and individual: "U.S. Department of Justice," "DOJ Office of Attorney General," "DOJ Deputy Attorney General," "DOJ Office of Special Counsel," and "Federal Bureau of Investigation." Compl. at 1, Dkt. 1. Because the Office of the Attorney General, the Deputy Attorney General, the Office of the Special Counsel, and the Federal Bureau of Investigation are part of the Department of Justice, Defendant's position is that the Department of Justice is the only proper defendant in this matter.

3

directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *See* Dkt. 14-1.

- Request No. DOJ-2019-003140: "I request disclosure from the Office of the Attorney General, the Deputy Attorney General and the Office of Special Counsel the following records:

  1. Copies of the 2800 subpoenas issued/executed by Special Counsel Robert Mueller during his investigation into any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a).

  2. Copies of the 500 search warrants issued/executed by Special Counsel Robert Mueller during his investigation into any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *See* Dkt. 14-3.

- Request No. DOJ-2019-003143: "I request disclosure from the Office of Special Counsel Robert Mueller the following records: All documents and records collected, maintained and stored by the Office of Special Counsel Robert Mueller since May 17, 2017 during the Office's investigation into: any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *See* Dkt. 14-7.

- Request No. DOJ-2019-003627: "I request disclosure from the Office of the Attorney General, the Office of Deputy Attorney General and the Office of Special Counsel the following records:

  1. Any and all summaries of the final Mueller report written/drafted by investigators/prosecutors/attorneys working on Special Counsel Robert Mueller's investigation into any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump.

  2. Any reports or documents that summarized Special Counsel Robert Mueller's final report into any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump. These summaries could have been written by any individual working on Special Counsel Robert Mueller's investigation.

  3. Any and all records, which includes but is not limited to emails, memos, letters, text messages, in possession of the Attorney General, the Deputy Attorney

General and the Office of Special Counsel, that mentions or refers to summaries." *See* Dkt. 14-9.

The two requests submitted to FBI are as follows:

- Request No. 1432673-000: "I request disclosure from the FBI the following investigative records: 1.  All FBI 302s maintained/stored/in possession of the FBI relating or referring to all of the individuals who were questioned and interviewed by FBI agents working for the Office of Special Counsel Robert Mueller during his investigation into: any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *See* Dkt. 14-5.

- Request No. 1432684-000: "I request disclosure from the FBI for the following NON INVESTIGATIVE records. This request may be limited to senior leadership in the Office of the Director, Deputy Director, the Office of General Counsel, Criminal Investigative Division, Cyber Division, Counterintelligence Division, Directorate of Intelligence and International Operations Division:

    1. Any and all records, which includes but is not limited to emails, memos, letters, text messages, that mentions or refers to Special Counsel Robert Mueller's final report relating to the [Office's] investigation into: any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump.

    2. Any and all records, which includes but is not limited to emails, memos, letters, text messages, that mentions or refers to Attorney General William Barr's four page summary of Special Counsel Robert Mueller's final report relating to the [Office's] investigation into: any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump.

    3. Any and all emails that mentions or refers to Robert Mueller, the Mueller report, Donald Trump, President Trump, obstruction, collusion, Russia, William Barr, Attorney General Barr, Rod Rosenstein, counterintelligence. The timeframe for the three parts of this request is March 15, 2019 through the date the search for responsive records is conducted.

    PLEASE NOTE: I AM NOT SEEKING INVESTIGATIVE RECORDS STORED IN THE CRS. I AM SEEKING NON INVESTIGATIVE RECORDS." *See* Dkt. 14-11.

### ii. Discussions Regarding the Scope of Plaintiffs' FOIA Requests

Counsel for the parties have conferred regarding the scope of certain of Plaintiffs' requests multiple times between June 12 and July 12, but have not reached a resolution regarding the scope of Plaintiffs' FOIA requests. Counsel intend to continue their discussions.

### B. The Anticipated Number of Documents Responsive to Plaintiffs' FOIA Requests

The Office of the Special Counsel has wound down and completed transfer of control of its records, which are voluminous, to other DOJ offices and custodians.

Two agency offices are processing Plaintiffs' FOIA requests. The Office of Information Policy ("OIP") is processing the four requests submitted to DOJ, and the FBI is processing the two requests submitted to FBI. OIP has begun conducting preliminary inquiries of the indexed material to locate responsive records. FBI has begun searching for and processing responsive records, though no records are ready for release at this time.

For Request No. DOJ-2019-003143—Plaintiffs' request for all records from the Office of the Special Counsel—the volume of responsive documents is enormous.

Defendant estimates that the approximate number of responsive records that OIP would process is as follows:

- 11 terabytes of non-email digital data, which is the approximate equivalent of 825 million pages (assuming each terabyte consists of 75 million pages); and

- 318 gigabytes of email, which is the approximate equivalent of over 215 million pages (assuming each gigabyte consists of 677,963 pages).

Defendant estimates that the approximate number of responsive records that FBI would process is as follows:

- More than 2 million pages of investigative records that are not on media devices; and

- More than 2,300 media devices that have a combined storage capacity of 240 terabytes of data. If these devices are filled to capacity, this is the approximate equivalent 18 billion pages.

Defendant represents that it cannot process records responsive to this request within any reasonable amount of time. Because of the volume of documents, it is Defendant's position that this request is overbroad and not a proper FOIA request and should be dismissed from the case. Defendant anticipates moving to dismiss this request as overbroad and unduly burdensome.

As for Plaintiffs' other requests, because OIP and FBI have been unable to complete some of their searches for documents responsive to Plaintiffs' FOIA requests, Defendant is not currently able to determine the approximate number of records responsive to each of Plaintiffs' FOIA requests. Once Defendant has sufficient information concerning the approximate number of records responsive other requests, and after the parties finish conferring regarding the scope of Plaintiffs' requests, Defendant may also move to dismiss those requests as overbroad and unduly burdensome.

### C. The Anticipated Date(s) for Release of the Documents Requested by Plaintiffs

Defendant proposes making its first response to one or more of Plaintiffs' FOIA requests of any documents that are identifiable and not unduly burdensome on September 26, 2019. Thereafter, Defendant proposes to make rolling responses every 90 days. The responses would include, if applicable, productions of non-exempt responsive records that are identifiable and not unduly burdensome.

As part of its processing, Defendant will review whether documents implicate the equities of other agencies. If so, Defendant will forward those documents to the appropriate agencies for consultation. After completing the relevant consultations (the timing of which is

uncertain and depends in part on the response times of the other agencies), Defendant will produce any remaining non-exempt, responsive records subject to FOIA.

Given the law enforcement sensitivities and the necessary consultations, Defendant cannot commit to processing a specific number of pages each month at this time. As a benchmark, the ordinary maximum number of pages that the FBI reviews/processes is 500 pages per month per request. By processing and making interim responses based on 500-page work items, the FBI is able to provide more pages to more requesters, thus avoiding a system where a few large requests monopolize finite processing resources and where fewer requesters' requests are being fulfilled.[2] By working in 500-page increments, the FBI has found that more pages get processed, reviewed, and released to more requesters each month because processors can work on 500-page work items for several requests in a month. Also, 500-page work items are more manageable for the subject matter experts ("SMEs") outside of the FBI's Record/Information Dissemination Section ("RIDS") who review the materials to ensure that FBI equities are properly addressed and who juggle these FOIPA reviews with their regularly-assigned work.[3] Finally, it is more efficient to run required information security protocols on FOIPA releases of 500 pages or less.

If the Court imposes a more burdensome production schedule, such as the schedule proposed by Plaintiffs, the FBI and OIP would potentially be forced to reallocate resources in a

---

[2] The FOIA encourages agencies to develop multi-track processing with the goal of responding to more requests. *See, e.g.*, 5 U.S.C. § 552(a)(6)(D). As a result, the FBI has established four processing queues for small requests (1-50 pages), medium requests (51-950 pages), large requests (951-8,000 pages), and extra-large requests (more than 8,000 pages).

[3] SMEs can include special agents and intelligence analysts who worked on particular investigations; special agents, intelligence analysts, or other employees who are experts in particular operational or technical subject matters, such as cyber or foreign intelligence threats or CART examinations; and attorneys.

way that would deprive other FOIA requesters and litigants the timely production of their documents. Beyond that, this case is complicated well beyond a typical FOIA case. The office that collected or created the records – the Special Counsel's Office – is closed, and other Department entities are responsible for processing those records. The Special Counsel's investigation encompassed both counterintelligence and criminal aspects, and the records gathered and created are voluminous. While the Special Counsel's Office is closed, charged cases remain pending in numerous U.S. Attorney's Offices across the country, and other investigations remain active as well. These factors substantially complicate the Department's ability to search for and process records, and make it impossible at this time to accurately predict the number of pages we can produce each month. This is all the more difficult because the parties have not yet been able to agree on a reasonable scope for some of the requests.

### D. Whether A Motion for Stay is Likely Under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976)

At this time, Defendant does not anticipate moving for an *Open America* stay. However, if the request for all records from the Office of the Special Counsel is not narrowed or struck from the Complaint, given the volume of records potentially responsive to that request, Defendant may move for such a stay. Defendant may move for a stay depending on the volume of records responsive to other requests.

### E. Whether a *Vaughn* Index Will be Required in This Case

Defendant proposes that the parties be allowed time to confer, following Defendant's productions of those documents that are identifiable and not unduly burdensome, to determine whether any issues remain in dispute and whether a *Vaughn* index and summary judgment briefing may be necessary in this case.

Dated: July 15, 2019                                    Respectfully submitted,

*/s/ Matthew V. Topic*
Matthew Topic
Joshua Burday
*(E-Mail: foia@loevy.com)*
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
Tel.: (312) 243-5900
Fax: (312) 243-5902
Bar Nos. IL0037 and IL0042


*Counsel for Plaintiffs*

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW (N.C. Bar No. 46578)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12012
Washington, D.C. 20005
Telephone: (202) 616-8467
Facsimile: (202) 616-8470
courtney.d.enlow@usdoj.gov

*Counsel for Defendant*