## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, BUZZFEED, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 19-cv-1278 (RBW)<br>) |
| UNITED STATES DEPARTMENT OF JUSTICE, et al. | )<br>)<br>) |
| Defendants. | )<br>) |
| CABLE NEWS NETWORK, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 19-cv-1626 (RBW)<br>) |
| FEDERAL BUREAU OF INVESTIGATION, | )<br>)<br>) |
| Defendant. | )<br>) |

### DEFENDANT'S STATUS REPORT AND RESPONSE TO THE COURT'S ORDER

Defendant, the Department of Justice ("DOJ"), respectfully submits this status report in advance of the status conference set for January 8, 2020, to inform the Court of its compliance with the Court's Orders and to propose further steps in this case.

#### DEFENDANT'S COMPLIANCE WITH THIS COURT'S ORDERS

#### Defendant's Production of FD-302s

Pursuant to the Court's Order, Dkt. 49, on January 2, 2020, Defendant produced to Plaintiffs Jason Leopold and BuzzFeed, Inc. (collectively, "Leopold"), and Plaintiff Cable News Network ("CNN") the non-exempt portions of 430 pages of the typewritten narratives of the FD-

1

302s that were made available to the United States House Committee on the Judiciary ("House Judiciary Committee") and the United States House Permanent Select Committee on Intelligence ("House Intelligence Committee"). The FD-302s were redacted with the appropriate exemptions under the Freedom of Information Act ("FOIA").[1] As reflected in the redactions, information was withheld, *inter alia*, under Exemption 5—which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Information was withheld under Exemption 5 based on, *inter alia*, attorney work product privilege. *See, e.g.*, *Judicial Watch, Inc. v. Dep't of Justice*, 391 F. Supp. 3d 43, 53 (D.D.C. 2019), *appeal filed*, No. 19-5218 (D.C. Cir.) (concluding that "[b]ecause the Forms 302 were prepared in anticipation of impending litigation by FBI agents acting under the substantial direction of Assistant United States Attorneys, they are records exempt from FOIA release as attorney work product under Exemption 5"); *New York Times Co. v. Dep't of Justice*, 138 F. Supp. 3d 462, 476 (S.D.N.Y. 2015) (concluding that the "FD-302s are exempt from disclosure under FOIA Exemption 5"), *aff'd in part, rev'd in part, and remanded*, 939 F.3d 479 (2d Cir. 2019).[2]

Plaintiffs argue in their status report that Defendant's production has been inconsistent because it has withheld information cited in the report regarding Special Counsel Robert Mueller's investigation into Russian interference in the 2016 United States presidential election (the "Mueller Report"). *See* Pls.' Status Report at 3, Dkt. 50. As an initial matter, the time to address the redactions is at the summary judgment stage, not in a status report. In any event, Plaintiffs

---

[1] Certain FD-302s have not yet been disclosed because the FBI referred them to one or more members of the Intelligence Community for a determination as to whether those agencies' information should be withheld or released, in compliance with DOJ FOIA regulations. Once those agencies have made their determinations, the portions of those FD-302s determined to be non-exempt will be disclosed.

[2] The plaintiff in the *New York Times* case did not appeal the district court's decision that the FD-302s were exempt from disclosure under Exemption 5 as attorney work product.

point to only one example: a quote from the Mueller Report that was redacted in the FD-302 memorializing the interview of Stephen Miller. *See id.* Upon consultation with the individuals processing the FD-302s, it is undersigned counsel's understanding that the redaction for that sentence in the Miller FD-302 was a result of an inadvertent human error. Defendant will re-release the Miller FD-302 with that inadvertent redaction removed.

If Plaintiffs discover what they perceive to be other errors in the future, it would be more productive if they brought them to undersigned counsel's attention and allowed Defendant time to resolve them before involving the Court. Such a procedure would be more efficient and would conserve the parties' and the Court's resources.

### Defendant's Production of a List of Witnesses

Pursuant to the Court's Order, Dkt. 47, on January 3, 2020, the FBI produced to Plaintiffs a list of all of the individuals who were interviewed by the FBI in relation to Special Counsel Mueller's investigation into Russian interference in the 2016 United States presidential election and for whom a FD-302 form was created. The list included the total volume of the typewritten narratives associated with these individuals' FD-302 forms. As explained to Plaintiffs, the FBI redacted certain names from the list because revealing the names could affect the FBI's pending operational sensitivities, potentially reveal protected federal grand jury information, or infringe on individuals' privacy interests in not being associated with a criminal investigation. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91–92 (D.C. Cir. 1984) (stating that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity").

Although Plaintiffs had not raised any issue with the list to undersigned counsel, Plaintiffs argue in their status report that Defendant has redacted witness names which have already been released to the public. *See* Pls.' Status Report at 2, Dkt. 50. As an initial matter, information cited

in press reports does not mean that the information has been officially acknowledged by the government such that the information must be disclosed under the FOIA. *See Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).

More importantly, the FBI created this 35-page list as a result of the Court Order. The FBI worked diligently to ensure that the list was complete and correct, but, owing to the short production time, other work in this case (e.g., processing the FD-302s) and in other cases, and the compressed schedule because of the holiday season, it is possible that inadvertent errors may have been made on the list.[3] As undersigned counsel explained to Plaintiffs' counsel, if such errors are discovered, the FBI will provided a corrected list to Plaintiffs. *See* Exh. D, Dkt. 50-4. Undersigned counsel will confer with the FBI concerning the issues raised in Plaintiffs' Status Report to determine whether release of a corrected list is appropriate.

As a general matter, because the FBI has not yet processed all the FD-302s on the list, the FBI has not yet made a final determination on whether the names can be released. Until processing of the FD-302s on the list is complete, it is not feasible to determine whether some of the redactions may be lifted in the future. Once the 302s have been processed, the FBI may be in a position to release the names of certain interviewees that are currently redacted on the list.

**Defendant's Response to Leopold's Request for "Summaries" of the Mueller Report**

Leopold filed a FOIA request with DOJ for summaries of the Mueller Report. *See* Answer, Exh. I, Dkt. 14-9. Leopold's FOIA request for the summaries of the Mueller Report encompasses the following:

> 1. Any and all summaries of the final Mueller report written/drafted by investigators/prosecutors/attorneys working on Special Counsel Robert Mueller's investigation into any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump. 2. Any

---

[3] Indeed, undersigned counsel alerted Plaintiffs' counsel of one such error. *See* Exh. D to Pls.' Status Report, Dkt. 50-4.

> reports or documents that summarized Special Counsel Robert Mueller's final report into any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump. These summaries could have been written by any individual working on Special Counsel Robert Mueller's investigation.

*Id.*

On November 28, 2019, the Court ordered the Department to process at least 500 pages of records responsive to this request on a monthly basis and produce the non-exempt portions of those records on a monthly basis beginning on January 3, 2020. *See* Order, Dkt. 47.

Pursuant to that Order, on January 3, 2020, the Department's Office of Information Policy ("OIP") issued a response letter to Leopold. In that letter, OIP informed Leopold that searches for records responsive to parts (1) and (2) of Leopold's request have been conducted in files from the Special Counsel's Office and in the Offices of the Attorney General and Deputy Attorney General. OIP stated that the Executive Summaries to the Mueller Report were responsive to the FOIA request and that those summaries could be found online in OIP's FOIA Library.[4] OIP further informed Leopold that drafts of the Executive Summaries also were responsive to the request but were being withheld in full under Exemption 5 of the FOIA, which protects from disclosure, *inter alia*, certain inter- and intra-agency communications protected by the deliberative process privilege. OIP noted that because of "a technical issue, OIP is unable at this time to open these electronic records to determine responsiveness or to provide a page count of drafts withheld in full pursuant to Exemption 5. Other overlapping FOIA Exemptions may also apply to portions of these records." Finally, OIP informed Leopold that no additional records responsive to the request for summaries of the Mueller Report were located.

---

[4] The Executive Summaries had been previously produced to Leopold in the related case, *Leopold v. Department of Justice*, No. 19-957-RBW, on May 6, 2019, in response to Leopold's FOIA request for the Mueller Report.

## PROPOSED NEXT STEPS

### January and February Productions

In compliance with the Court's Order, Dkt. 49, Defendant is diligently processing the remaining pages of the typewritten narratives of the FD-302s that were made available to the House Judiciary Committee and the House Intelligence Committee for production to Plaintiffs on January 17, 2020.  Defendant is also diligently processing 500 pages of the typewritten narratives of the FD-302s referenced in the Mueller Report for production to Plaintiffs on February 3, 2020 (the next business day after Saturday, February 1, 2020).  The content and the dates of these productions should remain unchanged.

### Monthly Productions After February

As for the monthly productions after February, the FBI should maintain its pace of processing 500 pages of the typewritten narratives of the FD-302s referenced in the Mueller Report per month.  The FBI has estimated that there are approximately 1,400 pages of the typewritten narratives of the FD-302s referenced in the Mueller Report remaining to be processed.  At a rate of 500 pages per month, Defendant will complete its processing of the typewritten narratives of the FD-302s referenced in the Mueller Report in the April production.  Following the completion of processing of the typewritten narratives of the FD-302s referenced in the Mueller Report, Defendant agrees to process the typewritten narratives of the FD-302s on Plaintiffs' priority list (Exhibit B to Plaintiffs' Status Report).

Although Plaintiffs urge the Court to adopt the reasoning set forth by a district court in the Southern District of New York for a faster processing schedule, *see* Pls.' Status Report at 4–7, that reasoning has not been adopted in this district.  Indeed, just the opposite: the D.C. Circuit has recognized that the FBI's policy of processing 500 pages per request per month "serves to promote

efficient responses to a larger number of requesters." *Nat'l Sec. Counselors v. Dep't of Justice*, 848 F.3d 467, 471–72 (D.C. Cir. 2017). And in a number of recent cases in this District, a production rate of 500 pages per month has been approved.[5] *See, e.g.*, *Freedom Watch v. Bureau of Land Mgmt. & Dep't of Justice*, 325 F. Supp. 3d 139, 142 (D.D.C. 2018) (upholding the FBI's interim release policy of 500 pages per month despite the fact that processing of plaintiff's FOIA request would take approximately 500 months); *Colbert v. Fed. Bureau of Investigation*, No. 16-CV-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (permitting a processing rate of 500 pages per month for 71,000 responsive records); *Daily Caller News Found. v. Fed. Bureau of Investigation*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019) (finding "no reason in this case to vary from the FBI's policy of processing 500 pages per month" even though there were estimated to be 7,000 potentially responsive documents); *Negley v. Dep't of Justice*, 305 F. Supp. 3d 36, 47 (D.D.C. 2018); *Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 235 F. Supp. 3d 207, 210 (D.D.C. 2017); *Klayman v. Judicial Watch, Inc.*, 278 F. Supp. 3d 252, 264 (D.D.C. 2017); *Middle E. Forum v. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 186 (D.D.C. 2018); *Republican Nat'l Comm. v. Dep't of State*, No. 16-cv-486, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016); *Energy Future Coalition v. OMB*, 201 F. Supp. 3d 55, 59–60 (D.D.C. 2016); Minute Order, *Judicial Watch v. Dep't of Justice*, No. 16–cv–2046 (D.D.C. Apr. 19, 2017); *New Orleans Workers' Ctr. for Racial*

---

[5] Not only that, courts in this District routinely approve processing schedules at a rate of less than 500 pages per month. *See, e.g.*, *Ctr. for Repro. Rights v. State*, No. 18-2217-DLF (D.D.C. Apr. 3, 2019) (directing a 300-page-per-month processing rate, despite the plaintiff's request for a higher rate, in a case where there are over 123,000 potentially responsive pages); *Citizens United v. State*, No. 16-67-CRC (D.D.C. Aug. 16, 2016) (ordering 300 page per month review rate despite plaintiff's request that agency review 2,000 pages per month); *Citizens United v. State*, No. 16-108-RMC (D.D.C. July 27, 2016) (same); *Judicial Watch v. State*, No. 17-205-CRC (D.D.C. June 30, 2017) (ordering 300 page-per-four-week review rate despite plaintiff's request that agency review on average more than 16,000 pages per month); *Citizens United v. State*, No. 18-326-CRC (D.D.C. May 30, 2018 & June 6, 2018) (ordering 300 page-per-month review rate despite plaintiff's request that agency review almost 8,000 pages per month, "in light of the resource constraints and production orders in other cases"); *Blixseth v. Dep't of Justice*, No. 18-2281-JEB (D.D.C. Dec. 17, 2018) (ordering 300 page-per-month review rate); *Jordan v. Dep't of Justice*, No. 17-2702-RC (D.D.C. Aug. 28, 2018) (same).

*Justice v. U.S. Immigration & Customs Enf't*, No. CV 15-431 (RBW), 2019 WL 4852743, at *1 (D.D.C. July 11, 2019).

As explained by David Hardy, the Section Chief of the FBI's Record/Information Dissemination Section ("RIDS"), "[b]y processing and making interim responses based on 500-page work items, the FBI is able to provide more pages to more requesters, thus avoiding a system where a few large requests monopolize finite processing resources and where fewer requesters' requests are being fulfilled." Hardy Decl. ¶ 19 (Aug. 9, 2019), Dkt. 25-5. "By working in 500 pages increments, the FBI has found that more pages get processed, reviewed, and released to more requesters each month because processors can work on 500-page work items for several requests in a month." *Id.* Simply put, processing resources are finite. Increasing the volume to 1,000 pages per month, as Plaintiffs request, would result in Plaintiffs monopolizing more of those resources and leaving fewer resources to process other FOIA requests.

Courts in this Circuit have long considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material in a given case. *See, e.g.*, *Middle East Forum v. Dep't of Homeland Security*, 297 F. Supp. 3d 183, 187 (D.D.C. 2018) (finding that the plaintiff had not provided reasons that its requests should take precedence over other FOIA requests); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying motion for preliminary injunction requesting immediate production of documents pursuant to FOIA request and noting that allowing the plaintiff "to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters"); *cf. Nat'l Sec. Counselors*, 848 F.3d at 471–72 (in context of challenge to FOIA processing fees, stating policy of processing 500 pages per request per month "serves to promote efficient responses to a larger number of requesters"). Accordingly, Plaintiffs'

demand that Defendant prioritize its request "does little to respond to the agency's concern that diverting resources to accelerate processing of the plaintiff's request necessarily will redound to the detriment of other requesters." *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 15 (D.D.C. 2015); *see also Allied Progress v. Consumer Fin. Prot. Bureau*, 2017 U.S. Dist. LEXIS 67889, *21 (D.D.C. May 4, 2017) ("[E]xpediting FOIA requests is not an end in itself, as it means that either some requests are merely put ahead of others, or that expedited processing is rendered meaningless, as expediting all requests is tantamount to expediting none.").

In addition, "[r]equiring the agency to process and produce these materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA." *Daily Caller*, 152 F. Supp. 3d at 14. As explained by FBI's declarant, processing 500 pages per month is "more manageable for the subject matter experts outside of RIDS who review the materials to ensure that FBI equities are properly addressed." Hardy Decl. ¶ 19 (Aug. 9, 2019), Dkt. 25-5. These subject matter experts "juggle these FOIA reviews with their regularly assigned work." *Id.* This regularly assigned work concerns the operational components of the FBI, as the subject matter experts "can include special agents and intelligence analysts who worked on particular investigations; special agents, intelligence analysts, or other employees who are experts in particular operational or technical subject matters, such as cyber or foreign intelligence threats or CART examinations; and attorneys." *Id.* ¶ 19 n.9. These subject matter experts need sufficient time to complete their review of the FD-302s to ensure that no exempt information is inadvertently released.

Finally, the FBI has found that "it is more efficient to run required information security protocols on FOIA releases of 500 pages or less." *Id.* ¶ 19. Because "many FBI records contain classified information and because all FBI records are processed on a classified computer enclave,

records can only be disclosed after being run through security software that scans for particular information to ensure that it is not improperly disclosed." *Id.* These security protocols take longer as more pages are added to the production. *Id.*

With regard to the FD-302s at issue in this case, processing the records sought by Plaintiffs is a time-consuming task requiring multiple reviews by numerous individuals across the Department, and in some instances, consultations with entities outside the Department. Indeed, "[a]s part of the FBI's FOIA process, subject matter experts and other stakeholders within the FBI are consulted prior to the release of records, and if other agencies' records or equities are implicated, the FBI consults with those agencies and/or refers records to them for processing prior to any final decisions about release or withholding under the FOIA." *Id.* ¶ 18 n.7. This is particularly the case with certain FD-302s of witness interviews taken as part of the investigation into Russian interference with the 2016 presidential election, which require review by various subject matter experts to ensure that counterintelligence and information affecting national security are not disclosed. Some of the FD-302s present classification issues, and all require classification review prior to public release. And because much of this review must take place on classified systems, processing the documents presents additional challenges. *See id.* ¶ 19.

Based on Defendant's resource limitations and commitments to other FOIA requesters, Defendant cannot reasonably undertake this process for more than 500 pages per month. As explained in the FBI's declaration, at the end of fiscal year 2019, FBI had 8,691 pending FOIPA requests, many of which predate the first request at issue in this case. Hardy Decl. ¶ 10 (Nov. 12, 2019), Dkt. 38-1. As of November 12, 2019, FBI had 343 other FOIA matters in litigation, not including this case. *Id*. ¶ 15. As for DOJ, the Office of Information Policy had 1,820 open FOIA

requests and 121 ongoing litigations as of November 12, 2019. Vanessa Brinkmann Decl. ¶ 6 (Nov. 12, 2019), Dkt. 38-2.

Defendant is working diligently to meet its obligations in this and other litigations as well as to respond to the thousands of open FOIA requests that are now pending with FBI and DOJ. Defendant's proposal in this case to continue processing the typewritten narrative portions of the FD-302s at a rate of 500 pages per month is reasonable given these resource constraints and obligations to other FOIA requesters.

## Partial Summary Judgment Briefing

Plaintiffs argue that the Court should set a briefing schedule concerning Defendant's withholdings under Exemption 5. *See* Pls.' Status Report 8–9. As an initial matter, Plaintiffs appear to believe that all the withholdings under Exemption 5 are under the deliberative process privilege. But, as noted above, the information that was withheld under Exemption 5 was primarily attorney work product. Although Plaintiffs argue that "[t]here are strong reasons to be skeptical of these redactions," *id.* at 8, the two district courts that have analyzed the issue have determined that the Department properly withheld FD-302s under Exemption 5 as attorney work product. *See Judicial Watch*, 391 F. Supp. 3d at 53; *New York Times Co.*, 138 F. Supp. 3d at 476.

The redactions for attorney work product under Exemption 5 cover the broadest scope of the redactions in the FD-302s. While ordinarily piecemeal briefing is inefficient and wastes the parties' and the Court's resources, briefing the propriety of the attorney work product redactions under Exemption 5 as a threshold issue in this case could expedite processing if the Court issues an expedited ruling on the issue. If the Court orders briefing on partial summary judgment for the threshold attorney work-product issue, Defendant respectfully requests that the Court waive the

requirement in Local Rule 7(h) that the parties file statements of material facts in support of their cross-motions for partial summary judgment.

Dated: January 7, 2020

Respectfully submitted,

ETHAN DAVIS
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2020, I electronically transmitted the foregoing to the parties and the clerk of court for the United States District Court for the District of Columbia using the CM/ECF filing system.

>*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov