**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

JASON LEOPOLD, BUZZFEED, INC.,    )
                                    )
            Plaintiffs,          )
                                    )
            v.                  )     Civil Action No. 19-cv-1278 (RBW)
                                    )
UNITED STATES DEPARTMENT OF    )
JUSTICE, et al.                    )
                                  )
            Defendants.       )
_____  )
                                  )
CABLE NEWS NETWORK,        )
                                  )
            Plaintiff,           )
                                  )
            v.                  )     Civil Action No. 19-cv-1626 (RBW)
                                    )
FEDERAL BUREAU OF          )
INVESTIGATION,              )
                                  )
            Defendant.       )
_____  )

**DEFENDANT'S RESPONSE TO COURT ORDER AND DEFENDANT'S RESPONSE**
**TO PLAINTIFFS' MOTION TO ENFORCE COURT ORDERS**

      Defendant, the Department of Justice ("DOJ"), respectfully submits this response to the

Court's Order, Dkt. 53, and response to Plaintiffs' Motion to Enforce Court Orders, Dkt. 54.

**Defendant's Response to Court Order**

      On January 13, 2020, the Court directed the Department to advise the Court at the next

status conference

      (1) the number of cases involving the public interest that are pending before other
      members of this Court in which the plaintiffs in those cases claim that timely
      production of documents is imperative in light of impending political events (e.g.,
      President Trump's impeachment, and the 2020 United States presidential election)
      and the number of pages other members of this Court have required the Department

to process and produce on a monthly basis in each of those cases; and (2) the number of cases pending before other members of this Court in which the Department has granted expedited processing under the FOIA and the number of pages other members of this Court have required the Department to process and produce on a monthly basis in each of those cases.

Order, Dkt. 53.

As an initial matter, Defendant does not track cases by whether requesters claim that the production of documents are imperative in light of impending political events. Defendant has diligently worked to gather as much information as possible to respond to the Court's inquiries, but given the fact that this information is not tracked and the time allotted for this task, it is possible that the information does not represent every processing order entered against Defendant.

The Federal Bureau of Information ("FBI") has provided the following information in response to the Court's Order:

- The FBI is a defendant in approximately 342 pending FOIA lawsuits in districts and circuits across the country.

  o In certain cases, the FBI has provided the plaintiff with an anticipated end date for processing and the court has not entered a schedule mandating that the FBI process a certain number of pages per month. For example, in *Judicial Watch v. DOJ*, 19-cv-795 (D.D.C.), which concerns records related to Roger Stone, the parties filed joint status report whereby the FBI proposed an anticipated end date for processing that was seven months from the date of filing. *See* Joint Status Report, *Judicial Watch v. DOJ*, 19-cv-795 (D.D.C. Nov. 26, 2019), Dkt. 12; *see also* Joint Status Report, *Judicial Watch v. DOJ*, 19-cv-726 (D.D.C. Jan. 10, 2020), Dkt. 10 (in a case seeking records concerning Russian interference in the 2016 Presidential election, similarly proposing an end date for processing without committing to processing a certain number of pages for each interim release).

- There are processing schedules in 52 pending lawsuits in which FBI is a defendant; 33 of those cases are in the United States District Court for the District of Columbia and 19 cases are in other districts.  Fifteen of the 52 cases are "high visibility" cases, which involve matters of significant public interest.

  o Of those 52 pending lawsuits, approximately 43 cases have a processing schedule at a rate of 500 pages reviewed per month (not including this case).[1]  One of those cases is *Judicial Watch v. DOJ*, 18-cv-154 (D.D.C.), which concerns records related to Peter Strzok and Lisa Page.

  o One case has a processing schedule at a rate of 750 pages per month per court order.  This case is *CREW v. DOJ* (Walton, J.), and it concerns reprocessing records concerning Andrew McCabe now that the (b)(7)(A) assertion has expired.

  o One case has a processing schedule at a rate of 300 pages per month based on agreement of the parties.  This case is *CREW v. DOJ* (Sullivan, J.), concerning records from the Michael Cohen/campaign finance investigation.

  o One case has a processing schedule at a rate of 350 pages per month based on agreement of the parties.  This case is *POP v. DOJ* (Friedrich, J.), concerning records about Antifa.

  o Two cases in this district have processing schedules of 15 minutes of video or 30 minutes of audio or 500 pages per month.  These cases are *Martinez v. DOJ* (Moss, J.), concerning records about the shooting of Laquan McDonald, and *Freedom Watch v. DOJ* (Sullivan, J.), seeking records about an individual.

  o In one case, the court did not set a page-per-month count, but rather set a date by

---

[1] In one of those cases, the FBI has only 90 pages left to process (after issuing other interim responses based on a rate of 500 pages processed per month).

which processing must be completed.  This case is *Wang v. DOJ*, pending in the Northern District for California, and the plaintiff (Michael Wang, a police officer in Richmond, California) sought records pertaining to an alleged investigation of his own activities.

- The FBI officially granted expedited processing in three of the 52 cases.
  - In the *CREW v. DOJ* case pending before this Court (concerning the McCabe records), expedited processing was granted under both 28 C.F.R. § 16.5(ii) ("an urgency to inform the public about an actual or alleged Federal Government activity [by a media requester]") and § 16.5(iv) ("a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence").
  - Expedited processing was granted in two other cases under 28 C.F.R. § 16.5(ii) ("an urgency to inform the public about an actual or alleged Federal Government activity [by a media requester]") – *ACLU v. DOJ* (N.D. Cal.) (monitoring of social media by law enforcement) (500 page-per-month processing schedule); *CREW v. DOJ* (D.D.C.) (Sullivan, J.) (concerning the Cohen investigation) (300 page-per-month processing schedule).  In the *CREW* case, the parties agreed that the FBI would begin processing 300 pages of search warrant applications, supporting affidavits, and FD-302s each month beginning in May 2020.  *See* Joint Status Report, *CREW v. DOJ*, 19-cv-2267 (D.D.C. Jan. 24, 2020), Dkt. 13.

- An additional 88 requests pending at the administrative stage have been granted expedited processing, including approximately 13 for records from or related to the Special Counsel's Office investigation/Russian interference in the 2016 election.

The Office of Information Policy ("OIP")[2] has advised that in cases in which OIP is a defendant, the vast majority of production schedules are negotiated between the parties. In those negotiated schedules, OIP has advised that it usually issues interim responses approximately every 45 to 60 days. For example, in *CREW v. DOJ*, 1:19-cv-3104 (D.D.C.), which concerns calendar entries that show meetings between Attorney General Barr and United States Attorney Durham, OIP negotiated a schedule with the plaintiff whereby OIP agreed to complete its searches for responsive records by a date certain and complete its processing a month later. *See also* Joint Status Report, *Judicial Watch v. DOJ*, 19-cv-726 (D.D.C. Jan. 10, 2020), Dkt. 10 (in a case where plaintiff seeks records related to Russian interference in the 2016 Presidential election, noting the parties' agreement for OIP to provide an interim response to the FOIA request in 6 weeks, despite OIP's identification of only 36 responsive records). Similarly, in *Judicial Watch v. DOJ*, 18-cv-490, which concerns, *inter alia*, communications between former Associate Deputy Attorney General Bruce G. Ohr and Christopher Steele, OIP negotiated a schedule with the plaintiff whereby OIP would make interim releases every 30 days, but there was no set page count per release. *See* Joint Status Report, *Judicial Watch v. DOJ*, 18-cv-490 (D.D.C. July 18, 2018), Dkt. 13; Minute Order, *Judicial Watch v. DOJ*, 18-cv-490 (D.D.C. July 18, 2018); *see also* Joint Status Report, *Judicial Watch v. DOJ*, 18-cv-1854 (D.D.C. July 19, 2019), Dkt. 20 (in a separate case concerning records related to Bruce Ohr and Fusion GPS, noting the parties' agreement to have OIP make interim releases without a set page count for each release). OIP further advises that it very rarely has had to process more than 500 pages per month.

---

[2] OIP is responsible for processing FOIA requests seeking records from within OIP and from within six senior leadership offices of the Department of Justice, specifically the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO). Moreover, OIP is responsible for processing FOIA requests seeking certain records from the Special Counsel's Office (SCO). *See* Brinkmann Decl. ¶ 1, Dkt. 38-2.

As for court-ordered production schedules that were not entered pursuant to the parties' negotiations, OIP advised that in the consolidated *Electronic Privacy Information Center v. Department of Justice*, No. 19-cv-810 (RBW) and *Leopold v. Department of Justice*, No. 19-cv-957 (RBW), this Court adopted OIP's proposed processing schedule, and directed processing of the Special Counsel's Report On The Investigation Into Russian Interference In The 2016 Presidential Election (the "Mueller Report") to be complete by May 6, 2019. *See* Def.'s Status Report ¶ 2, *Electronic Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. May 1, 2019) Dkt. 39 (proposing the May 6 date); Order, *Electronic Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. May 3, 2019) Dkt. 43 (adopting the May 6 date).  The Mueller Report was under 500 pages.

OIP further advised that it is aware of one other production schedule entered by the Court in *A.B. v. Dep't of Justice*, No. 19-cv-598 (D.D.C.).  *A.B.* is a high-profile case that involves an individual's (A.B.'s) asylum claim and records from, *inter alia*, then-Attorney General Jefferson Sessions.  When the initial request was submitted, the requester sought expedited processing but was denied.  On November 19, 2019, the *A.B.* court ordered OIP to search for and produce non-exempt records by January 13, 2020.  Minute Order, *A.B. v. Dep't of Justice*, No. 19-cv-598 (D.D.C. Nov. 19, 2019).  At the time the court entered the production order, OIP had not yet completed its search and thus had not identified the total number of potentially responsive records.  Upon completion of its search and after negotiations with the requester, OIP identified 2,017 pages of responsive records to process in two months.  However, of those records, OIP withheld in full 957 pages because those records mainly comprised repetitive drafts of the same document, which eased the burden of processing this many pages in a short period of time.

This data from the FBI and OIP shows that in the vast majority of other cases involving

impending political or newsworthy events, courts have regularly maintained a 500 page-per-month processing schedule.[3]  There is no reason to deviate from the 500 page-per-month schedule that has been imposed on this case; as the D.C. Circuit has recognized, the FBI's policy of processing 500 pages per request per month "serves to promote efficient responses to a larger number of requesters."  *Nat'l Sec. Counselors v. Dep't of Justice*, 848 F.3d 467, 471–72 (D.C. Cir. 2017).

Finally, although Plaintiffs argue that being granted expedited processing means that the Court should enter a faster processing schedule, the expedited processing provision of FOIA does not require agencies to process expedited requests within a specific time limit.  Instead, the statute directs agencies to "process as soon as practicable any request for records to which [they have] granted expedited processing."  5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added); *see also* 28 C.F.R. § 16.5(e)(4) ("If expedited processing is granted, the request shall be given priority . . . and shall be processed as soon as practicable").  As the Senate Report accompanying the FOIA amendments that inserted the expedited processing procedures explains, the intent of the expedited processing provision was to give certain requests priority, not to require that such requests be processed within a specific period of time:

> *No specific number of days for compliance is imposed* by the bill since, depending on the complexity of the request, the time needed for compliance may vary.  The goal is not to get the request processed within a specific time frame, but to give the request priority for processing more quickly than would otherwise occur.

---

[3] Undersigned counsel is aware of other cases in which the FBI and OIP are not parties where the courts imposed a 500 page-per-month processing schedule even though the records related to political or newsworthy events.  For example, in *Electronic Privacy Information Center v. Department of Homeland Security*, No. 17-cv-2047 (D.D.C.) (Boasberg, J.), which concerns records of the Department of Homeland Security's research, integration, analysis, and other activities related to the Russian interference in the 2016 Presidential election, the Court ordered the Department of Homeland Security to "process the 4,994 pages of potentially responsive records at a rate of 500 pages per month." Minute Order (Feb. 9, 2018).  And undersigned counsel is aware of other newsworthy cases involving other defendants in which the court did not set a specific page count to be processed per month.  For example, in *Leopold v. Office of the Director of National Intelligence*, No. 16-cv-2517 (D.D.C.) (Kollar-Kotelly, J.), which concerns records of various members of the Intelligence Community related to attempts by the Russian government to interfere in the November 2016 election, the Court ordered the defendants to make rolling productions every six weeks, but did not order the defendants to process a set number of pages for each production.  *See* Minute Order, *Leopold v. Office of the Director of National Intelligence*, No. 16-cv-2517 (D.D.C. May 10, 2017).

S. Rep. No. 104-272 (May 15, 1996), 1996 WL 262861, *17 (emphasis added). Thus, while the purported urgency of Plaintiffs' request may be a factor in determining whether a request for expedited treatment will be granted, *see* 5 U.S.C. § 552(a)(6)(E)(v)(II), it is not a factor in determining the speed by which an agency needs to complete the request. Rather, what is practicable, and hence what is required by the statute, will vary depending on the size, scope, detail, and complexity of issues presented by the request; the number of offices with responsive documents; other agencies or components which must be consulted or to which documents might have to be referred for additional review; exemption issues; and the resources available to process the request.

In short, the expedited processing provision of FOIA is an ordering mechanism, allowing certain FOIA requesters to jump to a faster processing queue, avoiding the simple or complex queues. *See*, *e.g.*, 28 C.F.R. § 16.5(b). Once a request is in the expedited queue, however, "practicability" is the standard that governs how quickly any particular request can be processed. *See Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 279 (D.D.C. 2012) (denying preliminary injunction to expedite processing where, *inter alia*, the agency stated that the request is already at the top of the queue). The statute does not require an agency to complete the processing as soon as a requester purportedly needs the records.

Accordingly, given the processing schedules entered in similar cases and the fact that a grant of expedited processing does not mean that Plaintiffs are entitled to a faster processing schedule once the case is in litigation, and given the increasing burdens on the agencies to process thousands of other pending FOIA requests, the Court should maintain the 500-page-per-month processing schedule.

**Defendant's Response to Plaintiffs' Motion to Enforce Court Orders**

Contrary to Plaintiffs' assertion, Defendant has met its obligations under the Court's orders.  The Court ordered Defendant to process and produce the non-exempt portions of the typewritten narratives of the FD-302s.  *See* Orders, Dkt. 47, 49.  In doing so, the FBI has fully processed the required number of pages for each release, meaning that the FBI identified any classified and other exempt information in the FD-302s and marked information concerning the FBI's equities to be redacted.  Exh. A (Decl. of David Hardy ¶¶ 13, 17, 17 n.3 (Jan. 29, 2020)).  As part of this process, the FBI identified information in certain FD-302s that was obtained from other governmental agencies ("OGAs"), including a federal law enforcement partner and members of the Intelligence Community ("IC"), or bore on OGA equities.  *Id.* ¶¶ 4, 17.  When FBI identified such information, it followed DOJ's FOIA regulation (28 C.F.R. § 16.4) that "specifically addresses how OGA information and records are to be handled during the processing of a FOIA request, including classified information," and FBI's standard coordination process.  *Id.* ¶¶ 4, 11.  Specifically, once the FBI identified OGA information in the 302s, it marked the information, notated which OGA needed to review it, and prepared the coordination packages to be sent to the OGA(s).  *Id.* ¶¶ 12, 17.  As FBI declarant attests, "[g]iven the sensitivities of these records and significant law enforcement, national security, and/or intelligence concerns implicated by the presence of particular IC or law enforcement agency information in them, it is critical to solicit and incorporate the input of these agencies before releasing the records."  *Id.* ¶ 19.  Once the OGAs receive and review the FD-302(s) for their equities, they will "advise the FBI on how to handle (*i.e.*, disclose or redact) their information."  *Id.* ¶ 17.

As of January 29, 2020, the FBI has sent seven consultation/coordination requests to six agencies.  *Id.* ¶ 18.  Those requests concern fourteen FD-302s (some with overlapping equities of

more than one OGA). *Id.* The FBI has been diligently working with their partners at the OGAs to ensure timely production to Plaintiffs. Specifically, the FBI is "requesting responses by the OGAs within two weeks of receipt, so that any 302s with fully resolved responses can be included in the next scheduled interim response." *Id.* One OGA responded that "it is diligently working toward meeting the requested two week deadline the FBI provided." *Id.* ¶ 18 n.4. One OGA response has been received, but based on that response, FBI "determined additional pages from the same 302 required consultation/coordination and those pages are now pending resolution." *Id.* *Id.* ¶ 18. "Another OGA has contacted the FBI to advise that it will need more time to process the consultation/coordination request sent to it due to its 'multiple competing priorities, including other litigation deadlines,'" though that "OGA has advised it will respond as soon as possible." *Id.* ¶ 18 n.4. The remaining OGAs have acknowledged receipt, but "have not determined if they will be able to meet the requested two week deadline provided by FBI." *Id.*

The FBI noted that this coordination process was ongoing in the cover letter accompanying the productions. Moreover, Defendant's status report filed in prior to the January 8 status hearing likewise stated that

> Certain FD-302s have not yet been disclosed because the FBI referred them to one or more members of the Intelligence Community for a determination as to whether those agencies' information should be withheld or released, in compliance with DOJ FOIA regulations. Once those agencies have made their determinations, the portions of those FD-302s determined to be non-exempt will be disclosed.

Def.'s Status Report 2 n.1, Dkt. 51. The OGAs "will prioritize the FBI litigation consults but only to the extent doing so does not impede their ability to meet their own litigation deadlines," and the FBI has no mechanism to "compel another [agency] to respond to a consultation request by a date certain." Hardy Decl. ¶ 16.

In sum, the FBI has followed its long-standing procedures that it follows both at the administrative phase as well as for cases in litigation, and has done all it can do to comply with the

Court's Orders and process the FD-302s for release.  *Id.* ¶ 17.  Because directing the release of FD-302s before this consultation process is complete risks exposing classified and/or law enforcement sensitive information that would otherwise be exempt under the FOIA, *id.* ¶ 11, the Court should reject Plaintiffs' request to order disclosure of FD-302s before that consultation process is complete.

Finally, the Court should reject Plaintiffs' request for a list "denoting which entities outside of the Department, including the White House, are still in the process of reviewing the 302s withheld from the January productions, and the date on which the Department made each referral." *See* Pls.' Mot. 5.  As an initial matter, Plaintiffs point to no case in which a court has ordered such a disclosure.  And for good reason.  The regulations governing coordination with other agencies specifically permit the withholding of the "identity of the component or agency to which the referral would be made" if such disclosure "could harm an interest protected by an applicable exemption, such as the exemptions that protect personal privacy or national security interests."  28 C.F.R. § 16.4(d)(3).

As explained by FBI's declarant, "[t]he FBI typically follows the coordination version of the consultation process for OGA equities in [its] records."  Hardy Decl. ¶ 11.  In that process, "the OGA whose records or equities are involved is not disclosed to the requester because that could, itself, reveal classified or otherwise exempt information, or cause harms protected against by FOIA exemptions."  *Id.* ¶ 6 (citing 28 C.F.R. § 16.4(d)(3)).  This process "is critical to the resolution of Intelligence Community ("IC") equities in particular because an IC agency's connection to a specific individual, activity, program, or FBI investigation can often be classified or prohibited from disclosure under a withholding statute."  *Id.* ¶ 11.  And if the FBI reveals that it is consulting with a federal law enforcement partner, then the FBI "runs the risk of exposing [a]

law enforcement interest in a person or activity that may not otherwise be known in a way that adversely affects a pending . . . investigation." *Id.* This process, "whereby consultations are made without publicly identifying the OGA, is the only reasonable method to avoid potential inadvertent disclosure of classified and/or law enforcement sensitive information that would otherwise be exempt under the FOIA." *Id.* ¶¶ 11, 19. Accordingly, because disclosing a list of the Intelligence Community members and federal law enforcement partners that are engaged in the coordination process with the FBI concerning the 302s would risk disclosure of classified and/or law enforcement sensitive information, the Court should deny Plaintiffs' request for such a list.


Dated: January 29, 2020                    Respectfully submitted,

                                           ETHAN DAVIS
                                           Principal Deputy Assistant Attorney General
                                           Civil Division

                                           ELIZABETH J. SHAPIRO
                                           Deputy Director
                                           Federal Programs Branch

                                           */s/ Courtney D. Enlow*
                                           COURTNEY D. ENLOW (N.C. Bar No. 46578)
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, N.W.
                                           Room 12102
                                           Washington, D.C. 20005
                                           Tel: (202) 616-8467
                                           Email: courtney.d.enlow@usdoj.gov

                                           *Counsel for Defendant*