IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEOPOLD & BUZZFEED,<br><br>Plaintiffs,<br>v.<br>U.S. DEPARTMENT OF JUSTICE *et al.*,<br><br>Defendants. | Civil Action No. 19-cv-1278 |
| CABLE NEWS NETWORK, INC.,<br><br>Plaintiff,<br>v.<br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Civil Action No. 19-cv-1626 |

### SECOND DECLARATION OF DAVID M. HARDY

(1)    I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

1

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 242 employees supported by approximately 71 contractors who staff a total of twelve Federal Bureau of Investigation Headquarters ("FBIHQ") units and two field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010), and the preparation of declarations in support of Exemption (b)(1) claims asserted under the FOIA. I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the consultation and referral process mandated by DOJ FOIA regulation 28 C.F.R. § 16.4; the FBI's implementation of that regulatory requirement and interactions with other government agencies ("OGAs") regarding consultations/referrals of records during FOIA processing both at the administrative stage and in litigation; the processing of the records responsive to Plaintiffs' FOIA requests at issue in the consolidated litigation cases referenced above; and the resources available to the FBI

in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.

(4)   The FBI's investigative files regularly contain information and records obtained from OGAs or that bear on OGA equities. National security-related investigations, in particular, regularly involve information or equities of other agencies within the Intelligence Community and such information/equities are often classified. DOJ has promulgated a FOIA regulation that specifically addresses how OGA information and records are to be handled during the processing of a FOIA request, including classified information.

### DOJ's FOIA REGULATION GOVERNING RESPONSIBILITY FOR RESPONDING TO FOIA REQUESTS

(5)   DOJ's FOIA regulation at 28 C.F.R. § 16.4 addresses the "[r]esponsibility for responding to [FOIA] requests." In this regulation, DOJ recognizes that the agency that received and is processing a FOIA request may not be in the best position to make disclosure determinations about information in its possession originating from an OGA and/or involving OGA equities. Accordingly, at § 16.4(d), DOJ established procedures for handling such information through the referral and consultation/coordination process.

(6)   According to DOJ's FOIA regulation, "the component [processing a FOIA request] shall determine whether another agency in the Federal Government is better able to determine whether the record is exempt from disclosure under the FOIA," and if so, employ one of the three processes – referral, consultation, or coordination – to determine the disposition of the record. 28 C.F.R. § 16.4(d).

    (a)   Under the **referral** process, the processing agency applies whatever redactions it deems appropriate for its information and then sends it to the OGA, which will process it for the OGA's equities and then respond directly to the FOIA requester. This process

3

is typically used when the processing agency locates a document that originated from an OGA. *See, e.g.,* 28 C.F.R. § 16.4(d)(2). For example, if the U.S. Park Police (USPP) located an FBI FD-302 in its files, it would process the record to address USPP equities and then refer the record to the FBI. The FBI would then process the record to address FBI equities and the FBI – not USPP – would respond directly to the FOIA requester by releasing that FD-302 in whole or in part, or withholding it in full.

(b) The **consultation** process is similar to the referral process except once the OGA finishes processing a record for its equities, it returns the record to the processing agency, which will then respond directly to the requester. Consultations can involve (i) records originating from the processing agency that contain or implicate OGA equities, and/or (ii) records originating from an OGA where both agencies agree that the processing agency will handle the record as a consultation rather than a referral. *See* 28 C.F.R. 16.4(d)(1), (d)(2)(i). For example, if the FBI located a USPP record in its files – or located an FBI record discussing USPP equities – the FBI would send the record to USPP for consultation; USPP would make any redactions necessary and return the record to the FBI; the FBI would implement any USPP redactions as well as any FBI redactions; and then the FBI would respond to the requester. Any given record may involve consultations to multiple OGAs. That is, a single record may include information from and/or implicate the equities of multiple OGAs. It is also possible that an OGA receiving a consultation will determine that another agency also has equities in and should review the record, and so the OGA could recommend further consultation.

(c) The **coordination** process is a variation on the consultation process where the OGA whose records or equities are involved is not disclosed to the requester because that

could, itself, reveal classified or otherwise exempt information, or cause harms protected against by FOIA exemptions. *See* 28 C.F.R. § 16.4(d)(3).

(7)     DOJ's FOIA regulation governing the responsibility for responding to FOIA requests also specifically addresses the handling of OGA classified information:

> Whenever a request involves a record containing information that has been classified or may be appropriate for classification by another component or agency under any applicable executive order concerning the classification of records, the receiving component shall refer the responsibility for responding to the request regarding that information to the component or agency that classified the information, or that should consider the information for classification. Whenever a component's record contains information that has been derivatively classified (for example, when it contains information classified by another component or agency), the component shall refer the responsibility for responding to that portion of the request to the component or agency that classified the underlying information.

28 C.F.R. § 16.4(e).

(8)     These processes are not unique to DOJ and its components. Most agencies' FOIA regulations contain similar provisions governing the handling of OGA information that generally mirror these processes.

### FBI'S PROCEDURES FOR HANDLING OGA EQUITIES GENERALLY

(9)     The FBI processes its records in compliance with this DOJ FOIA regulations, including § 16.4.

(10)    The referral and consultation/coordination procedures outlined in § 16.4 are followed both at the administrative phase as well as for cases in litigation.

(11)    The FBI typically follows the coordination version of the consultation process for OGA equities in our records. That is, we do not identify the agency or agencies to which we are sending records as part of our processing of a FOIA request. The coordination process is critical

to the resolution of Intelligence Community ("IC") equities in particular because an IC agency's connection to a specific individual, activity, program, or FBI investigation can often be classified or prohibited from disclosure under a withholding statute. Unless/until the IC agency has had a chance to review the records and determine whether its equities in them can be publicly acknowledged, the FBI must rely on the coordination process. But coordination can also be key in resolving non-IC equities in our investigative records. For example, if the FBI were to consult with the Securities and Exchange Commission ("SEC") about a particular matter, and were to disclose that it was doing so, the FBI runs the risk of exposing SEC law enforcement interest in a person or activity that may not otherwise be known in a way that adversely affects a pending SEC investigation. Accordingly, given the FBI's dual law enforcement and national security/intelligence mission, the FBI has concluded that the coordination process, whereby consultations are made without publicly identifying the OGA, is the only reasonable method to avoid potential inadvertent disclosure of classified and/or law enforcement sensitive information that would otherwise be exempt under the FOIA.[1]

(12) In implementing the consultation/coordination procedures from § 16.4, the FBI processes records to identify classified and other exempt information, and marks information to be redacted. During that process, we identify any OGA records or information, mark the information and notate which OGA needs to review it, and prepare consultation/coordination packages to be sent to the OGA(s).

---

[1] The FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency; conduct investigations and activities to protect the United States and its people from terrorism and threats to national security; and further the foreign intelligence objectives of the United States.

(13)  It is the FBI's long-standing practice to send consultation/coordination requests only after a work item has been fully processed by the FBI.[2] Records must be fully processed to identify any classified information before they can be sent for consultation/coordination because that will govern how they are handled both by the FBI and by the OGA. Additionally, from a technology standpoint, pages that must be sent for consultation/coordination cannot be extracted while processing is still occurring on the work item in which the pages are located without altering the work item and consequently, interfering with the preparation of the non-consultation records for release to the requester. RIDS has not been able to identify a technological solution that would allow creation of the OGA consultation package in FDPS prior to the finalization of the relevant work item.

(14)  Regardless of whether an entire record or only a portion of it requires consultation/coordination, the FBI typically removes the entire record from the relevant monthly production, rather than releasing the non-OGA portions of the record and then re-releasing the record once consultation/coordination is completed. There are both substantive and logistical reasons for this.

(a)  First, there are instances when more information than what the FBI identified contains OGA equities, such that not resolving the consultation/coordination before any information is released risks disclosing OGA equity information before that agency has a chance to advise how it should be handled (and could result in the disclosure of classified, law enforcement sensitive, or otherwise exempt information).

---

[2] Within the FBI's FOIA Document Processing System ("FDPS"), records responsive to a FOIA request are grouped into "work items" for processing. Generally, work items are approximately 500 pages or less (if there are not 500 pages to put together in a work item, such as when there are fewer than 500 pages to process in response to any given request).

7

(b)     Second, in order to incorporate another agency's input once a document has already been finalized for disclosure requires various steps to revert the document to draft form in FDPS; deletion of boxes covering any information subject to consultation/coordination; the implementation of any redactions identified by the OGA; finalization of all redactions; and running information technology security protocols required by FBI policy before any releases can be made. Performing all of these steps for multiple versions of the same document creates significant inefficiency, and also increases the chances of information being inadvertently released.

(c)     Third, releasing multiple different versions of the same document can create confusion. Indeed, the same document may be sent to multiple OGAs for review, thus exacerbating the risk of confusion. (It would also compound the inefficiencies outlined above.)

(15)    The consultation/coordination process outlined above is a long-standing one followed at the administrative stage, as well as in litigation. That is, once a request is in litigation and subject to either an agreed-upon or court-ordered processing schedule, the FBI processes the specified number of pages per month (typically 500 pages), releases the non-exempt portions of any pages not requiring consultation, coordination, or referral, and then sends the consultation/coordination requests and/or referrals to OGAs. Once OGAs send consultation/coordination responses back, the FBI finalizes those pages for release of any reasonably segregable, non-exempt information and includes them in the next-scheduled interim response. Particularly once a request is in litigation, RIDS follows up on outstanding consultation/coordination requests with OGAs on a regular basis; the frequency with which this occurs will vary depending on a variety of factors such as the number of outstanding consultation/coordination requests and how long they have been outstanding. The FBI has

followed this process in responding to numerous other requests from the Plaintiffs in these consolidated cases (at the administrative stage and/or in litigation).

(16)     Finally, when the FBI receives a consultation/coordination request from an OGA regarding a request that is in litigation, the FBI prioritizes it to the extent possible in light of litigation deadlines in cases to which the FBI is a party. In my experience, this practice is reciprocated by OGAs receiving consultation requests from the FBI for cases in litigation. That is, they will prioritize the FBI litigation consults but only to the extent doing so does not impede their ability to meet their own litigation deadlines. This process relies on good will and cooperation among agencies to function; there is no statutory or regulatory mechanism by which one agency can compel another to respond to a consultation request by a date certain.

### FBI'S PROCEDURES FOR HANDLING OGA EQUITIES HERE

(17)     The FBI has followed its standard, long-standing consultation/coordination process in this case. That is, after identifying all potential OGA equities during the processing of a 500-page work item, consultation/coordination requests have been sent to the OGAs, including a federal law enforcement partner and members of the IC, so that they can review the records for their equities and advise the FBI on how to handle (*i.e.*, disclose or redact) their information.[3]

(18)     Currently, seven consultation/coordination requests have been sent to six agencies and concern a total of fourteen 302s (some with overlapping equities of more than one OGA). One OGA response has been received, but based on the response the FBI determined additional pages from the same 302 required consultation/coordination and those pages are now pending

---

[3] At the time the FBI sends out consultation/coordination requests – in this case or any other – it has completed processing the records for its information and equities, and is waiting only for OGAs to make disclosure determinations about their records/equities.

9

resolution in a separate request.[4]   Once other consultation/coordination requests are fully resolved – *i.e.*, all affected OGAs have responded – RIDS will finalize the records for release of any reasonably segregable, non-exempt information and include them in the next scheduled interim response. The FBI is requesting responses by the OGAs within two weeks of receipt, so that any 302s with fully resolved responses can be included in the next scheduled interim response. RIDS has requested each agency to provide a central point of contact for receipt of future consultation/coordination requests in this case in an effort to create a more efficient flow. In addition, RIDS confirms receipt of each consultation/coordination request package with each OGA and whenever possible, seeks confirmation of the estimated completion date.

(19)   Given the sensitivities of these records and significant law enforcement, national security, and/or intelligence concerns implicated by the presence of particular IC or law enforcement agency information in them, it is critical to solicit and incorporate the input of these agencies before releasing the records. As explained above, the FBI generally relies on the coordination version of the consultation process for OGA equities in our investigative records, and does not identify the agencies with which we are coordinating because to do so could itself result in the inadvertent disclosure of classified or law enforcement sensitive information, or information otherwise exempt from disclosure under the FOIA. In recognition of the sensitivities of the records and information involved, the FBI concluded that the coordination

---

[4] Another OGA has contacted the FBI to advise that it will need more time to process the consultation/coordination request sent to it due to its "multiple competing priorities, including other litigation deadlines." The OGA has advised it will respond as soon as possible. A third OGA responded, noting it is diligently working toward meeting the requested two week deadline the FBI provided. The remaining three OGAs have acknowledged receipt, but have not determined if they will be able to meet the requested two week deadline provided by FBI.

process was the appropriate one to use here to resolve OGA equities, consistent with our standard practice and with 28 C.F.R. § 16.4(d) and 16.4(e).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of January, 2020.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia