# Exhibit D

"Special Counsel Robert S. Mueller III Makes Statement on Investigation into Russian Interference in the 2016 Presidential Election,"

dated May 29, 2019

🇺🇸 An official website of the United States government  Here's how you know



STICE NEWS

**Special Counsel Robert S. Mueller III Makes Statement on Investigation into Russian Interference in the 2016 Presidential Election**

Washington, DC ~ Wednesday, May 29, 2019

---

Two years ago, the Acting Attorney General asked me to serve as Special Counsel, and he created the Special Counsel's Office.

The appointment order directed the office to investigate Russian interference in the 2016 presidential election.  This included investigating any links or coordination between the Russian government and individuals associated with the Trump campaign.

I have not spoken publicly during our investigation.  I am speaking today because our investigation is complete. The Attorney General has made the report on our investigation largely public.  And we are formally closing the Special Counsel's Office.  As well, I am resigning from the Department of Justice and returning to private life.

I'll make a few remarks about the results of our work.  But beyond these few remarks, it is important that the office's written work speak for itself.

Let me begin where the appointment order begins: and that is interference in the 2016 presidential election.

As alleged by the grand jury in an indictment, Russian intelligence officers who were part of the Russian military launched a concerted attack on our political system.

The indictment alleges that they used sophisticated cyber techniques to hack into computers and networks used by the Clinton campaign.  They stole private information, and then released that information through fake online identities and through the organization WikiLeaks.  The releases were designed and timed to interfere with our election and to damage a presidential candidate.

And at the same time, as the grand jury alleged in a separate indictment, a private Russian entity engaged in a social media operation where Russian citizens posed as Americans in order to interfere in the election.

These indictments contain allegations. And we are not commenting on the guilt or innocence of any specific defendant. Every defendant is presumed innocent unless and until proven guilty in court.

The indictments allege, and the other activities in our report describe, efforts to interfere in our political system. They needed to be investigated and understood. That is among the reasons why the Department of Justice established our office.

That is also a reason we investigated efforts to obstruct the investigation. The matters we investigated were of paramount importance. It was critical for us to obtain full and accurate information from every person we questioned. When a subject of an investigation obstructs that investigation or lies to investigators, it strikes at the core of the government's effort to find the truth and hold wrongdoers accountable.

Let me say a word about the report. The report has two parts addressing the two main issues we were asked to investigate.

The first volume of the report details numerous efforts emanating from Russia to influence the election. This volume includes a discussion of the Trump campaign's response to this activity, as well as our conclusion that there was insufficient evidence to charge a broader conspiracy.

And in the second volume, the report describes the results and analysis of our obstruction of justice investigation involving the President.

The order appointing me Special Counsel authorized us to investigate actions that could obstruct the investigation. We conducted that investigation and we kept the office of the Acting Attorney General apprised of the progress of our work.

As set forth in our report, after that investigation, if we had confidence that the President clearly did not commit a crime, we would have said that.

We did not, however, make a determination as to whether the President did commit a crime. The introduction to volume two of our report explains that decision.

It explains that under long-standing Department policy, a President cannot be charged with a federal crime while he is in office.  That is unconstitutional.  Even if the charge is kept under seal and hidden from public view—that too is prohibited.

The Special Counsel's Office is part of the Department of Justice and, by regulation, it was bound by that Department policy.  Charging the President with a crime was therefore not an option we could consider.

The Department's written opinion explaining the policy against charging a President makes several important points that further informed our handling of the obstruction investigation.  Those points are summarized in our report.  And I will describe two of them:

First, the opinion explicitly permits the investigation of a sitting President because it is important to preserve evidence while memories are fresh and documents are available. Among other things, that evidence could be used if there were co-conspirators who could now be charged.

And second, the opinion says that the Constitution requires a process other than the criminal justice system to formally accuse a sitting President of wrongdoing.

And beyond Department policy, we were guided by principles of fairness.  It would be unfair to potentially accuse somebody of a crime when there can be no court resolution of an actual charge.

So that was the Justice Department policy and those were the principles under which we operated.  From them we concluded that we would not reach a determination – one way or the other – about whether the President committed a crime.  That is the office's final position and we will not comment on any other conclusions or hypotheticals about the President.

We conducted an independent criminal investigation and reported the results to the Attorney General—as required by Department regulations.

The Attorney General then concluded that it was appropriate to provide our report to Congress and the American people.

At one point in time I requested that certain portions of the report be released.  The Attorney General preferred to make the entire report public all at once.  We appreciate that the Attorney General made the report largely public.  I do not question the Attorney General's good faith in that decision.

I hope and expect this to be the only time that I will speak about this matter. I am making that decision myself—no one has told me whether I can or should testify or speak further about this matter.

There has been discussion about an appearance before Congress. Any testimony from this office would not go beyond our report. It contains our findings and analysis, and the reasons for the decisions we made. We chose those words carefully, and the work speaks for itself.

The report is my testimony. I would not provide information beyond that which is already public in any appearance before Congress.

In addition, access to our underlying work product is being decided in a process that does not involve our office.

So beyond what I have said here today and what is contained in our written work, I do not believe it is appropriate for me to speak further about the investigation or to comment on the actions of the Justice Department or Congress.

It is for that reason that I will not take questions here today.

Before I step away, I want to thank the attorneys, the FBI agents, the analysts, and the professional staff who helped us conduct this investigation in a fair and independent manner. These individuals, who spent nearly two years with the Special Counsel's Office, were of the highest integrity.

I will close by reiterating the central allegation of our indictments—that there were multiple, systematic efforts to interfere in our election.

That allegation deserves the attention of every American.

Thank you.

---

**Component(s):**
Department of Justice

*Updated May 29, 2019*

# Exhibit E

Letter from Andrew McCabe to Robert Mueller,

dated July 21, 2017



**U.S. Department of Justice**

Federal Bureau of Investigation

Office of the Director

Washington, D.C. 20535-0001

July 21, 2017

Mr. Robert S. Mueller, III
Special Counsel
U.S. Department of Justice
Washington, DC 20530

Dear Special Counsel Mueller:

The purpose of this letter is to memorialize our understanding concerning the relationships between FBI employees and your office as they assist you with investigating the matters under your jurisdiction.

As we have discussed, you have identified certain FBI employees needed to assist you in executing your responsibilities as Special Counsel. As described more fully below, those FBI employees fall into three categories: (1) FBI investigative personnel who will remain under FBI supervision while working on Special Counsel's Office (SCO) matters that you supervise; (2) FBI legal staff who will remain under FBI supervision while working on SCO matters; and (3) other FBI personnel who will be detailed to SCO working under your supervision on SCO matters. We understand that in the future you may identify additional FBI employees in each of those three categories to aid you in your efforts.

1. **FBI Investigative Personnel**. Designated FBI Special Agents, Intelligence Analysts, and other investigative personnel (collectively, hereinafter, FBI investigative personnel) will work on matters that are within your jurisdiction, but they will remain under FBI supervision at all times. In other words, such personnel will assist you in conducting the investigations that you supervise while at the same time they will remain full-time FBI employees. For example, the FBI investigative personnel will retain all of their lawful authorities – as well as accesses to FBI systems and data – and will adhere to all applicable federal law and all Department and FBI regulations, guidelines, and policies. We expect that FBI investigative personnel will work closely with you and your office on a day-to-day basis much the same way such FBI personnel would work with a United States Attorney's Office. Of course, SCO will determine the course and direction of the investigations under its jurisdiction. To that end, I have directed FBI investigative personnel to follow your instructions regarding those investigations, consistent with applicable law and policy, and assigned a Senior Executive who is co-located with you to supervise directly all FBI investigative personnel.

2. **FBI Legal Staff**. Designated FBI attorneys will work on FBI-related matters for SCO, including but not limited to compliance with all FBI policies and procedures, such as the Domestic Investigations and Operations Guide (DIOG). Those attorneys will continue to work under FBI legal supervision while assisting on FBI-related legal matters for SCO.

Mr. Robert S. Mueller, III

3. **FBI Detailees to SCO.** Certain non-investigative FBI employees work for you as detailees to address administrative and other support matters. The FBI will detail such personnel to you pursuant to individualized Memoranda of Understanding (MOUs) with your office that set forth the terms and conditions of such details. During their details, those employees will be under your direction and control consistent with the terms of the applicable MOUs and will engage in the work of the SCO rather than the FBI. While the FBI will continue to pay the salaries of FBI employees described in paragraphs 1 and 2 above, the salaries of employees referenced in this paragraph will be reimbursed by SCO. The reason for this distinction is that employees described in this paragraph will work pursuant to SCO authorities while they support your investigation.

The FBI is committed to supporting you fully in a manner consistent with applicable law and policy, and we stand ready to make other FBI personnel and resources available to you, such as the FBI Laboratory Division, Operational Technology Division, or other FBI field office resources. Please let me know if you have any questions regarding FBI personnel working with you or regarding other FBI resources.

Sincerely yours,

Andrew G. McCabe
Acting Director