# Exhibit 3

Declaration of David Hardy, with supporting exhibits,

dated February 24, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD & BUZZFEED, INC.,<br><br>Plaintiffs,<br>v.<br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>Defendants. | Civil Action No. 19-cv-1278 |
| CABLE NEWS NETWORK, INC.,<br><br>Plaintiff,<br>v.<br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Civil Action No. 19-cv-1626 |

**THIRD DECLARATION OF DAVID M. HARDY**

(1)  I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

1

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 245 employees supported by approximately 71 contractors who staff a total of twelve Federal Bureau of Investigation Headquarters ("FBIHQ") units and two field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based on my personal knowledge, information provided to me in my official capacity, and conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the processing of the records responsive to Plaintiffs' FOIA requests at issue in these lawsuits pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. This declaration is submitted in support of Defendants' opposition to Plaintiffs' Partial Summary Judgment Motion, *see* ECF No. 59, and also of Defendants' cross-motion for partial summary judgment, both of which concern Defendants' assertions of Exemption 5 in documents processed through January 17, 2020 in response to Plaintiffs' FOIA requests for FBI FD-302s from the Special Counsel Office's investigation into the Russian government's efforts to interfere in the 2016 presidential election, including any links or coordination between the Russian government and individuals associated with the Trump campaign (which was codenamed "Crossfire Hurricane"), as well as into President Trump's actions toward the FBI's and SCO's investigations.

## ADMINISTRATIVE HISTORY[1]

(4) On March 27, 2019, Plaintiffs Jason Leopold and Buzzfeed, Inc. submitted a FOIA request through the FBI's electronic FOIA online system ("eFOIA"), seeking the following:

> All FBI 302s maintained/stored/in possession of the FBI relating or referring to all of the individuals who were questioned and interviewed by FBI agents working for the Office of Special Counsel Robert Mueller during his investigation into: any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. §600.4(a).

*See* **Exhibit A.**

(5) By letter dated March 26, 2019, Plaintiff Cable News Network ("CNN") submitted a FOIA request to the FBI seeking copies of "FBI memoranda, such as 302s, from any and all of the interviews of the 'approximately 500 witnesses' in the Mueller investigation," as well as "any and all case files" related to those interviews. *See* **Exhibit B.**

(6) Plaintiffs Leopold and Buzzfeed filed their lawsuit on May 2, 2019. Plaintiff CNN filed its lawsuit on June 4, 2019. By Order dated October 3, 2019, the two cases were consolidated.

(7) Pursuant to production and priority schedules set by the Court in this case, the FBI has made five interim productions of FD-302s ("302s")[2] from the Special Counsel's

---

[1] This administrative history is limited to Plaintiffs' requests seeking 302s. Plaintiffs' additional requests at issue in this litigation are not relevant to the resolution of whether Defendants have been properly asserting FOIA Exemption 5.

[2] FD-302s are FBI interview summaries. They are investigative records that document factual information elicited from interviewees (*e.g.*, targets, witnesses, others with pertinent information) during FBI criminal and national security investigations. While not verbatim transcripts of interviews, their purpose is only to document information provided by interviewees. Investigators should not write their – or the prosecutors' – impressions, opinions, or analyses of that information in the 302s. (The information provided by an interviewee and documented

3

investigation. Those productions have been made in conjunction and coordination with DOJ's Office of Information Policy ("OIP").[3] As of the FBI's release on February 3, 2020, FBI and DOJ had processed 2,163 pages in response to Plaintiffs' requests.

(8)    In the motion currently pending before the Court, Plaintiffs have challenged the Defendants' application of FOIA Exemption 5 to the records processed for release through January 17, 2020 (*i.e.*, releases one through four). Plaintiff also challenged the application of Exemption 5 on records not yet produced to Plaintiffs due to pending consultations with members of the Intelligence Community and/or Law Enforcement agencies. The FBI is currently consulting with those agencies to determine if the agencies' information should be withheld or released, in compliance with DOJ FOIA regulations. Once those agencies have made their determinations, the portions of those FD-302s determined to be non-exempt will be disclosed. *See* Doc. No. 57-1. Within the records released to the Plaintiff, the FBI has asserted Exemption 5 in conjunction with the deliberative process privilege on 29 pages consisting of drafts of talking points and potential questions and answers about the Crossfire Hurricane cases prepared in anticipation of briefing Congress about those investigations.[4] These materials were originally drafted by the FBI in early March 2017 and thereafter provided to and exchanged with DOJ for review and editing. Versions of the draft briefing materials were serialized into the

---

in a 302 can include descriptions of privileged agency deliberations shared with prosecutors and investigators during an interview.) 302s are written with the expectation that they will be disclosed in criminal discovery pursuant to law and Department policy if a case is prosecuted.

[3] Records from the now-closed SCO are part of a DOJ records collection; portions of the collection are maintained by DOJ and portions are maintained by the FBI. For FOIA purposes, OIP is responsible for the portion of the collection maintained by DOJ. OIP and the FBI have been and are working closely on FOIA requests for SCO records.

[4] As originally processed, Bates page 684 of the McCord 302 lists Exemption 5 as a basis for the FBI's redaction of information. Upon further review, the FBI has decided to no longer assert Exemption 5 on this page. This has not resulted, however, in any additional information becoming available for disclosure on this page due to the application of additional exemptions by the FBI and/or DOJ's assertion of Exemption 5 on this page.

4

FBI's investigative files as an attachment to the 302 of the interview of Mary McCord, who held various roles at DOJ, including Acting Assistant Attorney General of the National Security Division.[5] *See* Bates pages 795–823.

## EXEMPTION 5 – PRIVILEGED INFORMATION

(9)   FOIA Exemption 5 has been construed to exempt documents or information normally privileged in the civil discovery context, including the deliberative process privilege.

(10)   In general, the deliberative process privilege protects predecisional, deliberative information provided as part of a process through which an agency decision is made. The deliberative process privilege protects the internal deliberations of the government by insulating recommendations, analyses, opinions, and other non-factual information comprising the decision-making process. The privilege protects materials that contain or were prepared in connection with the formulation of decisions, opinions, advice, evaluations, policies, proposals, conclusions, or recommendations. The privilege also protects records and information that if disclosed, would reveal the agency's collection of multitudinous facts, and the sorting, evaluation, and analysis of those facts in order to make recommendations or reach a final agency decision. The privilege is predicated on the recognition that release of such information would inhibit the government's development of policy and stifle its decision-making process, thereby degrading the quality of agency policies and decisions. Exempting such privileged information from disclosure also protects against public confusion that might result from preliminary disclosure of opinions and information that do not, in fact, reflect the final views or policies of

---

[5] The FBI has not included in this discussion pages that have not been produced to Plaintiffs because they are currently pending consultation with other government agencies and no final disclosure decision has yet been made, nor have pages from the fifth release on February 3, 2020 been included in this discussion as they were not addressed by Plaintiffs' motion.

the FBI. Exemption 5 and the deliberative process privilege together protect the integrity of the decision-making process itself where exposure of the process would result in harm.

(11) In order to apply Exemption 5, agencies must first satisfy the threshold requirement – *i.e.*, show that the information protected consists was "inter-agency or intra-agency." Once the threshold is satisfied, agencies must satisfy the elements of the pertinent privilege. With respect to the deliberative process privilege, agencies must show that the withheld information was both predecisional – *i.e.*, antecedent to a final agency decision – and deliberative – *i.e.*, part of the process in which the agency engaged in an effort to reach a final decision (whether or not any final decision was ever reached).

### McCord 302, Bates Pages 795-823

(12) When Ms. McCord was interviewed on July 17, 2017, certain documents were referenced and/or used as exhibits, including 29 pages of draft materials—talking points and potential questions and answers—about the Crossfire Hurricane cases prepared in anticipation of briefing Congress about those FBI investigations.[6] These materials were originally drafted by the FBI in early March 2017; were sent to DOJ for review; and went through various rounds of comments and edits within and between DOJ and the FBI. The 29 pages attached to the McCord 302—and withheld in full here pursuant to Exemption 5—have electronically-tracked changes ("redlines") and comments, and/or handwritten notes/hand-marked edits reflecting the back-and-forth process by which these materials were prepared and finalized.[7]

---

[6] For the initial two productions of records in response to Plaintiffs' requests, the FBI processed the 302 forms summarizing interviews, as well as all attachments to them including agents' and prosecutors' handwritten notes as well as exhibits used in the interviews. The McCord 302 was processed and produced to Plaintiffs in the second production, so the production included the handwritten notes and attachments to the McCord 302. The Court subsequently directed the FBI to process only the typewritten narratives of the 302s and not the notes or attachments.

[7] The FBI also relied on Exemptions 1, 3, and 7(E) on each page and 6, 7(A), 7(C), and 7(D) on some pages to protect some information on these pages.

(13)     This is precisely the type of information about the internal give-and-take leading to a final agency decision—here, about how to engage with Congress—at the heart of the Executive Branch's privilege against disclosing its deliberative decision-making processes. It is critical for those participating in the decision-making process and advising agency decision-makers to do so with the understanding that their candid views, opinions, and recommendations—which may not ultimately be reflected in the final agency decision—will not be exposed publicly.

(14)     The specific types of documents at issue here—talking points and potential questions and answers prepared in anticipation of briefing Congress—are themselves inherently deliberative. They are anticipatory and predictive, containing proposed answers to as-yet unasked questions. They require authors to anticipate the areas of interest by whichever Senators/Members of Congress would be receiving the briefing, to predict what their questions might be, and to propose how to respond to these hypothetical questions. It is always possible that those being briefed will not ask all—or even any—of the anticipated questions and will ask unanticipated questions. Moreover, while a final version of a talking points/question-and-answer document might reflect an agency's decision about how it plans to brief an issue or answer a question, it is ultimately a reference guide for FBI officials conducting the briefing and/or addressing various questions that may arise and may not reflect the exact briefing or responses given.

(15)     And the documents protected here were mere drafts of the Congressional briefing materials, not the final products. They contain electronic and handwritten comments and edits tracking and reflecting the back-and-forth that occurred within and between DOJ and the FBI as employees worked toward a final, agreed-upon position for agency officials to take in briefing

Congress. Draft documents such as these are inherently part of the deliberative process. These documents, in particular, predated the agency's final position regarding the content of any Congressional briefing and proposed answers to potential questions. Moreover, they are deliberative inasmuch as they reflect the solicitation and provision of feedback, edits, and recommendations critical to reaching consensus and a final decision about the form and content of any Congressional briefing. The handwritten and electronic edits and comments they bear directly reflect the give-and-take process leading to a final agency decision. Finally, these draft materials were internal to DOJ and FBI, thus satisfying Exemption 5's inter- or intra-agency threshold requirement.[8]

(16) Disclosure of these internal predecisional, deliberative materials would reasonably likely cause harm to the FBI's and DOJ's decision-making processes. It is critical for those participating in the decision-making process and advising agency decision-makers to do so with the understanding that their candid views, opinions, and recommendations—which may not ultimately be reflected in the final agency decision—will not be exposed publicly. That is particularly true when they are advising about sensitive matters of the utmost significance to our democratic processes and the national security of the country. As is clear from Plaintiffs' FOIA requests and this litigation itself, such decisions have been the subject of extreme scrutiny both inside and outside the Government. The employees involved in these deliberations certainly appreciated this, and it would be the natural tendency of someone finding themselves in such circumstances to "pull their punches." Such a tendency is mitigated only by assuring employees

---

[8] While the McCord 302 was made available to members of the House Judiciary Committee ("HJC") according to an accommodations process, the attachments to it, including the draft materials protected by the FBI pursuant to Exemption 5 and the deliberative process privilege, were not made available to HJC. *See* Supplemental Submission Regarding Accommodation Process, which was filed on this docket at Dkt. 36-4, for details concerning the accommodation process.

8

that recommendations, opinions, and preliminary views they voice during a decision-making process will not be made public. When that tendency is mitigated, employees will provide the fulsome and full-throated counsel necessary to make the best-informed decision possible. Given the sensitivities here, the best-informed decision was critical, and therefore, the need for those providing counsel about it to be fulsome and candid was just as critical.

(17) Furthermore, disclosure of these predecisional, deliberative materials would reasonably likely cause harm protected against by the privilege because it would risk public confusion. These drafts do not reflect a final agency decision about how and what to brief to Congress and disclosure could lead to a false, incorrect, or incomplete narrative about what actually occurred.

(18) The FOIA Improvement Act of 2016 add an additional requirement for withholding deliberative process materials: the records over which the privilege is asserted must be less than 25 years old. The records here are substantially less than 25 years old.

(19) Finally, Plaintiffs raised three arguments in their motion for partial summary judgment as to Defendants' Exemption 5 assertions: (1) waiver by public disclosure, (2) waiver by proffer agreement, and (3) governmental misconduct. The draft briefing materials withheld by the FBI pursuant to Exemption 5 have not been officially publicly disclosed; the McCord interview was not conducted pursuant to a proffer agreement; and Plaintiffs have not made any argument of misconduct by SCO or the FBI in the conduct of the interview of Ms. McCord or in relation to the Department's briefing of Congress about the Crossfire Hurricane cases in March 2017. Thus, even assuming solely for purposes of drafting this declaration that Plaintiffs' arguments would be bases to undermine assertions of Exemption 5 as a general proposition, they do not undermine the FBI's specific assertions of Exemption 5 here on Bates pages 795–823.

(20)    After reviewing the 29 pages that have been withheld in full, the FBI has concluded that there is no non-exempt information that can reasonably be segregated and released.  The documents are, in their entireties, predecisional and deliberative.  Releasing any portions of them would reveal those portions that were the subject of discussion, debate, and editing through the course of the back-and-forth process within and between the FBI and DOJ.

## CONCLUSION

(21)    For the reasons described above, the FBI properly asserted FOIA Exemption 5 to protect privileged deliberative process information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this __24th__ day of February, 2020.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD & BUZZFEED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, *et al.*, <br><br> Defendants. | Civil Action No. 19-cv-1278 |
| CABLE NEWS NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | Civil Action No. 19-cv-1626 |

**EXHIBIT A**

----START MESSAGE---- Subject: FOIA Request Received Sent: 2019-03-2/ .21:11:18.506644+00:00 Status: pending Message:

## Individual Information

**Prefix**

**First Name** Jason

**Middle Name**

**Last Name** Leopold

**Suffix**

**Email** jasonleopold@gmail.com

**Phone** 2132704334

**Location** United States

## Domestic Address

**Address Line 1** 1669 Benedict Canyon Drive

**Address Line 2**

**City** Beverly Hills

**State** California

**Postal** 90210

## Agreement to Pay

| | |
|---|---|
| **How you will pay** | I am reque___ng a fee waiver for my request and have review__ _ne FOIA reference guide. If my fee waiver is denied, I am willing to pay additional fees and will enter that maximum amount in the box below. |
| **Allow up to $** | 25 |

## Proof Of Affiliation for Fee Waiver

**Waiver Explanation**

I am the senior investigative reporter for BuzzFeed News and formerly senior investigative reporter and on-air correspondent for VICE News. Additionally, my reporting has been published in The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America.

I request a complete waiver of all search and duplication fees. If my request for a waiver is denied, I request that I be considered a member of the news media for fee purposes.

Under 5 U.S.C. §552(a)(4)(A)(iii), "Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Disclosure in this case meets the statutory criteria, as the records sought detail the operations and activities of government. This request is also not primarily in my commercial request, as I am seeking the records as a journalist to analyze and freely release to members of the public.

If I am not granted a complete fee waiver, I request to be considered a member of the news media for fee purposes. I am willing to pay all reasonable duplication expenses incurred in processing this FOIA request.

I will appeal any denial of my request for a waiver administratively and to the courts if necessary.

**Documentation Files**

## Non-Individual FOIA Request

| | |
|---|---|
| **Request Information** | I request disclosure from the FBI the following investigative records:<br><br>1. All FBI 302s maintained/stored/in possession of the FBI relating or referring to all of the individuals who were questioned and interviewed by FBI agents working for the Office of Special Counsel Robert Mueller during his investigation into: any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a).<br><br>Reasonably Foreseeable Harm. The FOIA Improvement Act of 2016 amended the FOIA as follows (5 USC 552(a)(8)):<br><br>(A) An agency shall—<br>(i) withhold information under this section only if—<br>(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or<br>(II) disclosure is prohibited by law; and<br>(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and<br>(II) take reasonable steps necessary to segregate and release nonexempt information. . . .<br><br>The Department of Justice and its components should not fail to meet the requirements of Section 552(a)(8) when processing my request and release responsive records to me in full or at least in part. |

# Expedite

| | |
|---|---|
| **Expedite Reason** | This request seeks expedited processing as there is both an urgency to inform the public and it relates to a matter of widespread public interest and actual government activity. For nearly two years, the Office of Special Counsel Robert Mueller has been conducting an investigation into any ties between the Russian government and individuals associated with the campaign of President Donald Trump. This investigation has already resulted in the guilty pleas of more than three dozen individuals and charges leveled against other people. The investigation, Mr. Mueller and his team, have been the subject of harsh criticism by President Trump on a near daily basis over Twitter and by numerous other people working for the president and who retain an official role in his cabinet. They have referred to this investigation as a "witch hunt" and President Trump has referred to the Office of Special Counsel prosecutors as "angry Democrats." In other words, President Trump has said the investigation is purely partisan. It is crucial that these FBI 302s be processed expeditiously as it would provide the public with insight into whether they can have confidence that the president can satisfactorily execute the duties of his office and would set the record straight as to whether the Trump Campaign had colluded with the Russian government during the presidential campaign. |

\*\*

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

\*\*

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD & BUZZFEED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, *et al.*, <br><br> Defendants. | Civil Action No. 19-cv-1278 |
| CABLE NEWS NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | Civil Action No. 19-cv-1626 |

**EXHIBIT B**



Tuesday, March 26, 2019

Federal Bureau of Investigation
Department of Justice
David M. Hardy, Chief, Record/Information Dissemination Section, Records Management Division
170 Marcel Drive
Winchester, VA 22602-4843
Phone: 540-868-4500
Fax: 540-868-4997

Re:   Interview memos in special counsel's investigation

This is a request for records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

**REQUESTED RECORDS**
Records related to the Office of Special Counsel's investigation led by Robert Mueller into Russian interference in the 2016 election. Specifically, CNN seeks:

- FBI memoranda, such as 302s, from any and all of the interviews of the "approximately 500 witnesses" in the Mueller investigation. We also request any and all case files related to the approximately 500 witnesses in the Mueller investigation.

**FORMAT OF REQUESTED RECORDS**
If this request is denied in whole or in part, justify all deletions or withholdings by reference to specific exemptions in the FOIA.

When possible, produce responsive records in their native, digital formats and include their original metadata, not as hard copy facsimiles or PDFs. For example, spreadsheets created in Microsoft Excel should be provided in an `.xlsx` format. Emails should be provided in common email file formats, such as `.pst` files for collections of emails or `.eml` files for individual emails.

Data should be provided in a non-proprietary, machine-readable format, such as comma separated values (`.csv`). Included is a request for a record layout for the database and a data dictionary for any codes used in the database.

**LIMITATIONS ON FEES**
Because CNN is a representative of the news media and these records are sought as part of a newsgathering effort, waive or reduce search and duplication fees, where applicable.

If you determine that fees will apply to this request and expect such fees to exceed $500 USD, provide an itemized invoice of fees.

**TIME LIMITS FOR RESPONSE**

If you expect this request to take longer than ten (10) working days to process, we expect an acknowledgment letter and tracking number within that time or no later than Tuesday, April 9, 2019.

We expect a final grant/denial determination on this request within twenty (20) working days after receipt by the appropriate office or no later than Tuesday, April 23, 2019.

If you are unable to fulfill this request within that period, produce information as it becomes available (i.e. on a "rolling" basis) and an explanation for the circumstances requiring an extension of time and an estimated date on which you expect to finish processing this request.

Please direct questions and responsive information concerning this request to katelyn.polantz@turner.com.

Sincerely,

Katelyn Polantz
Senior writer
Justice, crime & courts
(202) 738-8185
katelyn.polantz@turner.com

820 First St. NE | Washington, D.C. 20002