**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| JASON LEOPOLD, BUZZFEED, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-cv-1278 (RBW) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| CABLE NEWS NETWORK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-cv-1626 (RBW) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEPARTMENT OF JUSTICE'S REPLY**
**IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………………..ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.     The FD-302s are Attorney Work Product and Protected From Disclosure Under Exemption 5. ................................................................................................. 1

     A.     DOJ's Redactions to the FD-302s are Supported by Established Precedent Holding that Witness Interviews Constitute Attorney Work Product. ............................................................................................ 2

     B.     Release of Attorney Work Product Would Harm DOJ's Interest in Preserving the Confidentiality and Effectiveness of its Prosecutorial Functions. ............................................................................. 6

     C.     DOJ Has Not Withheld Information that was Released in the Mueller Report. ........................................................................................ 8

II.     DOJ Logically and Plausibly Established that the Presidential Communications Privilege Protects from Disclosure Information Concerning Presidential Decision-making in 19 FD-302s. ................................. 11

     A.     The Presidential Communications Privilege Applies to Information Individuals Provided to SCO that is Memorialized in FD-302s. .............. 12

     B.     Disclosure of Information Protected by the Presidential Communications Privilege Would Harm the President's Generalized Interest in Confidentiality. .................................................... 16

     C.     The Presidential Communications Privilege Has Not Been Waived. ........ 17

III.     Pre-decisional, Deliberative Information from Narratives of Three FD-302s and an Attachment to One FD-302 Are Protected From Disclosure Under Exemption 5. ............................................................................................... 19

IV.     The Government Misconduct Exception that Applies in Discovery Matters Is Inapplicable in this FOIA Case. ......................................................................... 22

V.     *In Camera* Review is Neither Necessary Nor Appropriate. ................................. 25

i

## **TABLE OF AUTHORITIES**

### **Cases**

*ACLU v. Dep't of Def.*,
   723 F. Supp. 2d 621 (S.D.N.Y. 2010) ................................................................. 11

*Afshar v. Dep't of State*,
   702 F.2d 1125 (D.C. Cir. 1983)................................................................. 10, 11

*Butler v. DEA*,
   2006 WL 398653 (D.D.C. Feb. 16, 2006) ................................................................. 9

*Carter v. Dep't of Commerce*,
   830 F.2d 388 (D.C. Cir. 1987)................................................................. 25

*CFTC v. Weintraub*,
   471 U.S. 343 (1985) ................................................................. 3

*Citizens for Responsibility & Ethics in Washington v. Department of Justice*,
   658 F. Supp. 2d 217 (D.D.C. 2009)................................................................. 18, 19

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*,
   514 F. Supp. 2d 36 (D.D.C. 2007)................................................................. 16

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980)................................................................. 21

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999)................................................................. 10, 11

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
   2019 WL 7372663 (D.D.C. Dec. 31, 2019) ................................................................. 7

*Ctr. for Pub. Integrity v. Dep't of Energy*,
   287 F. Supp. 3d 50 (D.D.C. 2018)................................................................. 10

*Davis v. Dep't of Justice*,
   968 F.2d 1276 (D.C. Cir. 1992)................................................................. 10

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990)................................................................. 10

*Food Marketing Institute v. Argus Leader Media*,
   139 S. Ct. 2356 (2019)................................................................. 16

*Fortson v. Harvey*,
  407 F. Supp. 2d 13 (D.D.C. 2005) .......................................................................... 6

*FTC v. Grolier*,
  462 U.S. 19 (1983) ..................................................................................... 7, 8

*Garside v. Webster*,
  733 F. Supp. 1142 (S.D. Ohio 1989) ....................................................................... 6

*Gold Anti-Trust Action Comm. Inc. v. Bd. of Governors of the Fed. Reserve Sys.*,
  762 F. Supp. 2d 123 (D.D.C. 2011) ...................................................................... 21

*Hayden v. NSA*,
  608 F.2d 1381 (D.C. Cir. 1979) .......................................................................... 25

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ...................................................................................... 2

*In re Grand Jury Proceedings*,
  5 F. Supp. 2d 21 (D.D.C.), *aff'd sub nom. In re Lindsey*, 148 F.3d 1100 (D.C. Cir. 1998),
  *and aff'd in part, rev'd in part*, 158 F.3d 1263 (D.C. Cir. 1998) ..................................... 14, 15

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ..................................................................... *passim*

*Judicial Watch v. Department of Justice*,
  391 F. Supp. 3d 43 (D.D.C. 2019) ................................................................. *passim*

*Judicial Watch, Inc. v. Dep't of Def.*,
  913 F.3d 1106 (D.C. Cir. 2019) ................................................................... *passim*

*Judicial Watch, Inc. v. Dep't of Justice*,
  365 F.3d 1108 (D.C. Cir. 2004) .......................................................................... 18

*Judicial Watch, Inc. v. Dep't of State*,
  235 F. Supp. 3d 310 (D.D.C. 2017) ....................................................................... 23

*Lardner v. Dep't of Justice*,
  2005 WL 758267 (D.D.C. 2005) ........................................................................... 16

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ....................................................................... 12, 20

*Latif v. Obama*,
  677 F.3d 1175 (D.C. Cir. 2011) .......................................................................... 25

*Loving v. Dep't of Def.*,
  550 F.3d 32 (D.C. Cir. 2008) ........................................................................ 17

*Martin v. Office of Special Counsel, Merit System Protection Board*,
  819 F.2d 1181 (D.C. Cir. 1987) ................................................................... 2, 3

*New York Times Co. v. Department of Justice*,
  138 F. Supp. 3d 462 (S.D.N.Y. 2015) ......................................................... 2, 6

*Nixon v. Admin. of Gen. Servs.*,
  433 U.S. 425 (1977) .................................................................................... 14

*Nixon v. Sirica*,
  487 F.2d 700 (D.C. Cir. 1973) ................................................................ 14, 17

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ...................................................................................... 5

*Petit v. Dep't of Educ.*,
  675 F.3d 769 (D.C. Cir. 2012) ..................................................................... 20

*Pizzuti v. United States*,
  809 F. Supp. 2d 164 (S.D.N.Y. 2011) ............................................................ 6

*Raphael v. Dep't of Justice*,
  2003 U.S. Dist. LEXIS 6515 (E.D. Pa. Mar 31, 2003) .................................... 6

*Rockwell Int'l Corp. v. Dep't of Justice*,
  235 F.3d 598 (D.C. Cir. 2001) ..................................................................... 18

*Salisbury v. United States*,
  690 F.2d 966 (D.C. Cir. 1982) ....................................................................... 5

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ....................................................................... 5

*United States v. Clemens*,
  793 F. Supp. 2d 236 (D.D.C. 2011) ............................................................... 5

*United States v. Nixon*,
  418 U.S. 683 (1974) .................................................................................... 17

*United States v. Nobles*,
  422 U.S. 225 (1975) ...................................................................................... 4

*United States v. Two Bank Accts.*,
   2007 WL 108392 (D.S.D. Jan. 5, 2007) ...................................................................... 6

*Vazquez v. Dep't of Justice*,
   887 F. Supp. 2d 114 (D.D.C. 2012) ............................................................................ 6

*Williams & Connolly v. SEC*,
   662 F.3d 1240 (D.C. Cir. 2011) ............................................................................. 5, 8

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ........................................................................... 12, 20

*Wright v. Admin. for Children & Families*,
   2016 WL 5922293 (D.D.C. Oct. 11, 2016) ............................................................... 22

## Statutes

5 U.S.C. § 552 ................................................................................................................. 5

## Rules

Fed. R. Civ. P. 26(b)(3)(A) ........................................................................................... 3

## Other Authorities

Statement from the Press Secretary, https://www.whitehouse.gov/briefings-statements/
   statement-press-secretary-13/ (May 9, 2017) ........................................................... 22

## INTRODUCTION

Throughout their briefs, Plaintiffs ignore binding case law directly on point and instead rely on generalized arguments and speculation concerning the importance of the Special Counsel's Office ("SCO") records and the Department of Justice's ("DOJ") motivations for redacting the FD-302s under Exemption 5.  But, as illustrated in the declarations of Bradley Weinsheimer, Associate Deputy Attorney General for the Department of Justice ("DOJ"), Vanessa Brinkmann, Senior Counsel in DOJ's Office of Information Policy ("OIP"), and David Hardy, Section Chief of the Record/Information Dissemination Section of the Federal Bureau of Investigation ("FBI"), DOJ and FBI have provided reasonably specific explanations that more than justify the withholdings for attorney work product, the presidential communications privilege, and the deliberative process privilege under Exemption 5.  Although work product does not require segregation of factual information, the declarations also demonstrate that DOJ and FBI conducted a line-by-line review of the withheld material and released all non-exempt information subject to FOIA. The Court should enter partial summary judgment on Exemption 5 in favor of Defendant.

## ARGUMENT

I.  **The FD-302s are Attorney Work Product and Protected From Disclosure Under Exemption 5.**

Plaintiffs raise three arguments related to DOJ's redactions for attorney work product under Exemption 5, none of which has merit.[1]  *See* Pls.' Opp'n 3–13, Dkt. 64.  First, Plaintiffs argue that these redactions are "inappropriate," despite Supreme Court, D.C. Circuit, and district court case law to the contrary.  *See id.* at 6–9.  Second, by selectively quoting DOJ's declaration, Plaintiffs argue that DOJ has failed to establish any foreseeable harm in release.  *See id.* at 3–8.  Finally,

---

[1] Plaintiffs do not contest that the FD-302s meet Exemption 5's "inter-/intra-agency" threshold.  *See generally* Pls.' Opp'n.  Plaintiffs have also withdrawn their argument that interviews conducted pursuant to a witness proffer cannot constitute attorney work product.  *See* Pls.' Opp'n 9 n.4.  The Court should therefore treat these issues as conceded.

Plaintiffs contend that DOJ improperly redacted information from the FD-302s that was released in the Mueller Report, *see id.* at 9–13, even though OIP attorneys carefully reviewed, and for the examples cited by Plaintiffs, re-reviewed the FD-302s to ensure that was not the case.

A.      **DOJ's Redactions to the FD-302s are Supported by Established Precedent Holding that Witness Interviews Constitute Attorney Work Product.**

Plaintiffs argue that redacting the FD-302s to protect attorney work product is "inappropriate." Pls.' Opp'n 6. In doing so, they entirely fail to grapple with the case law upholding redactions from witness interviews, including FD-302s, as attorney work product. *See id.* at 6–9. Specifically, Plaintiffs make no mention of established Supreme Court and D.C. Circuit precedent holding that statements made by potential witnesses in anticipation of litigation are work product. *See id.* (failing to discuss either *Hickman v. Taylor*, 329 U.S. 495 (1947), or *Martin v. Office of Special Counsel, Merit System Protection Board*, 819 F.2d 1181 (D.C. Cir. 1987)). And Plaintiffs also brush aside two district court cases that upheld DOJ's redactions to FD-302s from attorney-led investigations as attorney work product under Exemption 5. *See id.* (failing to discuss either *Judicial Watch v. Department of Justice*, 391 F. Supp. 3d 43 (D.D.C. 2019), or *New York Times Co. v. Department of Justice*, 138 F. Supp. 3d 462 (S.D.N.Y. 2015), both of which were discussed at length in Defendant's opening brief, *see* Def.'s Mem. 15–17, Dkt. 62).

Rather than addressing this established case law supporting redactions to FD-302s as attorney work product under Exemption 5, Plaintiffs raise arguments that have already been rejected by these same courts. First, Plaintiffs argue that because at least some of the SCO prosecutors did not consider the FD-302s to be their work product, the FD-302s cannot be withheld under Exemption 5. Pls.' Opp'n 6. But these prosecutors "had no occasion or reason to fully evaluate whether the Department could assert the attorney work product doctrine under FOIA Exemption 5 and the applicable case law." Weinsheimer Decl. ¶ 34, Dkt. 62-3. More importantly,

2

an attorney's subjective belief as to whether a document constitutes work product is not an element of the test.  Instead, to constitute attorney work product, the documents must have been "prepared in anticipation of litigation by an attorney or an attorney's agent."[2]  *Judicial Watch*, 391 F. Supp. 3d at 50; *see* Fed. R. Civ. P. 26(b)(3)(A).

The FD-302s at issue here easily clear that bar.  Plaintiffs do not contest any of the characteristics of the FD-302s that are relevant for this inquiry: the FD-302s were created as part of an attorney-led investigation and summarize the statements of potential witnesses, made in the presence of prosecutors, under questioning from both prosecutors and FBI agents, and in clear anticipation of the criminal indictment and trial of various individuals and entities.  *See* Weinsheimer Decl. ¶¶ 20–31.  Such witness statements, when collected in anticipation of litigation, are "classic examples of work product."  *Martin*, 819 F.2d at 1187; *see also Judicial Watch*, 391 F. Supp. 3d at 50–53 (concluding that FD-302s prepared under similar circumstances constituted attorney work product and could be withheld under Exemption 5).

Plaintiffs next argue that because "the 302s were prepared by FBI agents . . . and the Special Counsel prosecutors 'treated the FD-302s as the FBI's documents,' and not the lawyers' [documents]," they cannot constitute attorney work product.  Pls.' Opp'n 6 (citing Weinsheimer Decl. ¶¶ 31, 34).  In making this argument, Plaintiffs selectively quote from Mr. Weinsheimer's declaration to give the impression that SCO prosecutors had no involvement in the creation of the FD-302s.  As Mr. Weinsheimer explained, SCO prosecutors often reviewed draft FD-302s "to ensure the draft accurately reflected the interview and did not inadvertently omit pertinent information" and that the prosecutors would "suggest any edits" to the FD-302s, if necessary.

---

[2] It is well established that when an entity holds a privilege, that privilege runs to the entity itself (here, the Executive Branch) rather than individual employees or agents.  *See, e.g.*, *CFTC v. Weintraub*, 471 U.S. 343, 348–49 (1985).  Thus, in the context of DOJ investigations and litigation, the "holder" of the attorney work product doctrine is not the individual DOJ prosecutor or line attorney, but rather DOJ itself.

Weinsheimer Decl. ¶ 31.

But even if the SCO prosecutors had no involvement in the review of the draft FD-302s, they would nevertheless be protected as attorney work product. Indeed, in *Judicial Watch*, the court flatly rejected the plaintiff's argument that the FD-302s could not constitute attorney work product because the Assistant United States Attorneys ("AUSAs") had no involvement in drafting them. *See* 391 F. Supp. 3d at 51–53. The court recognized that "[a]ttorney work product frequently includes records created by an attorney himself and 'material prepared by agents for the attorney.'" *Id.* at 51 (quoting *United States v. Nobles*, 422 U.S. 225, 238–39 (1975)). Relying on this Supreme Court precedent, the court found that, "once [law enforcement agents] are acting in a supportive role to an attorney preparing a case for indictment or prosecution, the attorney work-product protection applies to their work product under FOIA Exemption 5." *Id.* at 52. The court concluded that because "[t]he FBI agents were working under the direction of [AUSAs] and in support of their decisions concerning the Blagojevich indictment and trial" and the attorneys were relying on the assistance of the FBI agents, the FD-302s "share[d] the protections of attorney work product." *Id.* (citing *Nobles*, 422 U.S. at 238). The same is true here. The FBI agents were working under the direction of the Special Counsel, in support of the attorney-led Russia Investigation, and the interviews were conducted in coordination with the prosecutors who, in conjunction with FBI investigative personnel, selected witnesses to be interviewed and the topics to be covered. *See* Weinsheimer Decl. ¶¶ 13–19, 25–31. Accordingly, the FD-302s constitute attorney work product, regardless of who drafted them. *Judicial Watch*, 391 F. Supp. 3d at 53.

Plaintiffs also argue that the FD-302s cannot constitute attorney work product because "the FBI agents responsible for the content of the 302 reports were specifically required to exclude prosecutors' 'impressions, opinions or analyses.'" Pls.' Opp'n 7 (quoting Hardy Decl. ¶ 7 n.2).

Here, too, Plaintiffs ignore binding D.C. Circuit precedent.  It is immaterial that the FD-302s do not contain attorneys' impressions, opinions, or analyses because, as the D.C. Circuit has recognized, the work product doctrine covers not only "the mental impressions, conclusions, opinions, or legal theories of an attorney," but also "factual materials prepared in anticipation of litigation." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).  Because the FD-302s consist of factual material prepared in anticipation of litigation by FBI agents working under the Special Counsel's direction and supervision, *see* Weinsheimer Decl. ¶¶ 20–31, they constitute attorney work product.  *See United States v. Clemens*, 793 F. Supp. 2d 236, 239 (D.D.C. 2011).

Plaintiffs further argue that the FD-302s cannot constitute attorney work product because the prosecutors expected that they would be disclosed to criminal defendants in discovery.  *See* Pls.' Opp'n 6–7.  But the standard for withholding information under Exemption 5 refers to civil discovery, not criminal discovery, such that DOJ may withhold the FD-302s in their entirety, pursuant to FOIA Exemption 5, if they would "normally [be] privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also* 5 U.S.C. § 552(b)(5).  Indeed, the D.C. Circuit has made clear that "disclosure in criminal trials is based on different legal standards than disclosure under FOIA, which turns on whether a document would be discoverable in a civil case." *Williams & Connolly v. SEC*, 662 F.3d 1240, 1245 (D.C. Cir. 2011).  Thus, Plaintiffs' discussion of the production of FD-302s in the criminal discovery context, where due process rights and statutory protections may attach, has no bearing on the analysis here.

Equally misplaced is Plaintiffs' reliance upon the fact that witness statements in other FOIA cases, with different facts, have been released.  *See* Pls.' Opp'n 8.  "[D]isclosure of a similar type of information in a different case does not mean that the agency must make its disclosure in every case." *Salisbury v. United States*, 690 F.2d 966, 971 (D.C. Cir. 1982).  Even if the

Government's disclosures in other cases were relevant, the cases cited by Plaintiffs are factually distinguishable, and none analyzed whether the Government could withhold witness statements as attorney work product.  *See Raphael v. Dep't of Justice*, 2003 U.S. Dist. LEXIS 6515, at *2 (E.D. Pa. Mar. 31, 2003) (analyzing whether FOIA request was moot after the FBI withdrew its withholding under Exemption 7); *Pizzuti v. United States*, 809 F. Supp. 2d 164, 168 (S.D.N.Y. 2011) (merely noting that an unredacted FD-302 was produced in a separate FOIA case); *Garside v. Webster*, 733 F. Supp. 1142, 1148 (S.D. Ohio 1989) (analyzing whether the FD-302 could be withheld under Exemption 3); *Fortson v. Harvey*, 407 F. Supp. 2d 13, 17 (D.D.C. 2005) (analyzing withholding of witness statements under Exemption 6).

Finally, Plaintiffs argue that the FD-302s cannot be withheld as attorney work product because of the alleged "political impact" of these documents.  Pls.' Opp'n 8–9.  But the "political impact" of documents is not an element of the attorney work product test, and a "[p]laintiff's personal reasons for wanting the requested records . . . are irrelevant."  *Vazquez v. Dep't of Justice*, 887 F. Supp. 2d 114, 118 (D.D.C. 2012).

Accordingly, far from being "inappropriate," Pls.' Opp'n 6, DOJ's redactions for attorney work product are entirely consistent with Supreme Court and D.C. Circuit precedent and with the district court decisions upholding redactions to FD-302s as attorney work product.  *See Judicial Watch*, 391 F. Supp. 3d at 50–53; *N.Y. Times*, 138 F. Supp. 3d at 475–76; *see also United States v. Two Bank Accts.*, 2007 WL 108392, at *2 (D.S.D. Jan. 5, 2007) (finding that "interview notes by [FBI] agents are materials prepared in anticipation of litigation and are thus work product").

## B.   Release of Attorney Work Product Would Harm DOJ's Interest in Preserving the Confidentiality and Effectiveness of its Prosecutorial Functions.

Plaintiffs argue that DOJ's declarations are insufficient to show that release of the withheld information would reasonably harm an interest protected by the attorney work product doctrine.

*See* Pls.' Opp'n 3–6, 7–8. Although there is no binding precedent on the foreseeable harm standard, some courts in this district have found that "an agency must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 2019 WL 7372663, at *9 (D.D.C. Dec. 31, 2019). Even assuming without conceding that the FOIA Improvement Act of 2016 created this heightened standard as Plaintiffs contend, DOJ's declarations meet that standard.

DOJ's declarants explained that disclosure of the FD-302s would reveal prosecutors' strategic decisions concerning "what to ask, in what order, and what information not to include in the interview" and would thus "reveal the mental impressions, assessments, and thought processes of the attorneys involved in the investigation and the Special Counsel in particular." Weinsheimer Decl. ¶¶ 37, 38; *see also* Brinkmann Decl. ¶ 35, Dkt. 62-8 ("[P]rosecutorial strategies and opinions may nonetheless be revealed through disclosure of the topics covered and information elicited from the witnesses."). "Moreover, given the substantial involvement of the attorneys in the interviews, as well as that the interviews occurred at the direction and instruction of the Special Counsel, revealing the FD-302s would inhibit the flexibility with which future special counsels might structure and pursue investigations." Weinsheimer Decl. ¶ 38; *see also* Brinkmann Decl. ¶ 37 (stating that disclosure "would undermine" both DOJ's and SCO's "core functions").

These harms identified by DOJ's declarants are precisely those articulated by Justice Brennan in his concurring opinion in *FTC v. Grolier*. As Justice Brennan found,

> disclosure of work product connected to prior litigation can cause real harm to the interests of the attorney and his client even after the controversy in the prior litigation is resolved. Many government agencies, for example, deal with hundreds or thousands of essentially similar cases in which they must decide whether and how to conduct enforcement litigation. Few of these cases will be "related" to each other in the sense of involving the same private parties or arising out of the same

set of historical facts; yet large classes of them may present recurring, parallel factual settings and identical legal and policy considerations. It would be of substantial benefit to an opposing party (and of corresponding detriment to an agency) if the party could obtain work product generated by the agency in connection with earlier, similar litigation against other persons. He would get the benefit of the agency's legal and factual research and reasoning, enabling him to litigate on wits borrowed from the adversary. Worse yet, he could gain insight into the agency's general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled.

462 U.S. 19, 30–31 (1983) (Brennan, J., concurring in part and concurring in the judgment). Thus, far from "conclusory boilerplate," Pls.' Opp'n 3, DOJ's assertions of foreseeable harm are entirely consistent with judicially recognized harms of disclosure.

Plaintiffs also argue that because the Government has not redacted all the FD-302s under Exemption 5 as attorney work product, there would be no harm in releasing information from other FD-302s that has been redacted as attorney work product. Pls.' Opp'n 4, 7. As a factual matter, not all the FD-302s contain attorney work product. For example, if an FD-302 "describ[es] an encounter between FBI special agents and an individual outside of an interview," DOJ did not redact it for attorney work product. Weinsheimer Decl. ¶¶ 5, 5 n.2. And even if DOJ had released some FD-302s that could have been redacted as attorney work product under Exemption 5, the D.C. Circuit has recognized that "[t]he purposes of the work product privilege . . . are not inconsistent with selective disclosure—even in some circumstances to an adversary." *Williams & Connolly*, 662 F.3d at 1244 (quotation omitted). Thus, DOJ's release of certain FD-302s, because they did not contain attorney work product, had been produced to counsel in criminal litigation, or constituted a discretionary release, is simply not inconsistent with DOJ's overall interest in preserving "the flexibility with which future special counsels might structure and pursue investigations." Weinsheimer Decl. ¶ 38.

**C.**      **DOJ Has Not Withheld Information that was Released in the Mueller Report.**

Plaintiffs continue to argue that "DOJ has waived work product protection for all

information released in the Mueller Report." Pls.' Opp'n. 9–13. But this argument is inapposite, as DOJ has not withheld any information from the FD-302s that was released in the Mueller Report. Brinkmann Decl. ¶¶ 33, 39, 40. As Ms. Brinkmann explained, "OIP Attorneys conducted a thorough review of both the FD-302s and the Mueller Report to identify material contained in both documents." *Id.* ¶ 33. In doing this review, "two OIP Attorneys cross-referenced the released portions of the Mueller Report which cited to any of the FD-302s released in this litigation with the text of each FD-302." *Id.* ¶ 39. When the information in the FD-302s matched the information released in the Mueller Report, "that information was released in the FD-302s produced to Plaintiffs." *Id.* When the information did not match, such that "releasing a portion of a given FD-302 would provide the public with new information that was not revealed in the redacted Mueller Report, OIP withheld the information in the FD-302." *Id.* Plaintiffs' speculation that DOJ withheld information released in the Report is insufficient to rebut the presumption of good faith accorded to DOJ's declaration. *See Butler v. DEA*, 2006 WL 398653, at \*2 (D.D.C. Feb. 16, 2006).

Plaintiffs criticize DOJ for not "directly address[ing] most of the examples Plaintiffs provided" in their opening brief. Pls.' Opp'n 10–11. But that is simply incorrect. As Ms. Brinkmann attested, "OIP Attorneys re-reviewed each FD-302 listed on pages 12, 13, 15, and 18 of Plaintiffs' Memorandum"—including the FD-302s of Ike Kaveladze, Roman Beniaminov, Giorgi Rtskhiladze, and Richard Gerson that Plaintiffs again reference in their opposition brief, *see* Pls.' Opp'n 10–11—"and compared each FD-302 to information in the Mueller Report that cites to each FD-302." Brinkmann Decl. ¶ 40. Aside from portions of the Dmitri Simes FD-302s that were inadvertently withheld,[3] OIP attorneys determined that "[t]he information in the FD-302s [is] not a match to the information in the Mueller Report." *Id.* After OIP completed its re-

---

[3] These pages were reprocessed and re-released to Plaintiffs on March 2, 2020. *See* Brinkmann Decl. ¶ 40 n.8.

review, Ms. Brinkmann concluded that "DOJ did not withhold any information pursuant to

Exemption 5 that is waived by its release in the Mueller Report."[4]  *Id.*

Plaintiffs also argue that DOJ relied on an "empty formalism" by comparing the FD-302s

to the Mueller Report to determine if the information in the FD-302s "matched" the information

in the Report.  *See* Pls.' Opp'n 11–13.  But DOJ's method of comparing the FD-302s to the Report

is consistent with D.C. Circuit precedent.  An official public disclosure has occurred, such that the

Government cannot rely on an otherwise valid exemption, if the information requested (1) is "as

specific as the information previously released," (2) "match[es] the information previously

disclosed," and (3) has "already . . . been made public through an official and documented

disclosure."  *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).  And while Plaintiffs argue

that this standard applies only in national security cases, *see* Pls.' Opp'n 12, courts in cases not

involving national security have likewise applied this standard, *see, e.g.*, *Ctr. for Pub. Integrity v.

Dep't of Energy*, 287 F. Supp. 3d 50, 67–69 (D.D.C. 2018); *see also Davis v. Dep't of Justice*, 968

F.2d 1276, 1280 (D.C. Cir. 1992) (stating that "our public domain cases . . . require the requester

to point to 'specific' information identical to that being withheld").

Plaintiffs primarily rely on *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999), to argue

that DOJ's method of comparison amounted to an "empty formalism."  Pls.' Opp'n 11–12.  But,

as in the above-cited cases, the D.C. Circuit in *Cottone* found that for there to be an official public

disclosure, the plaintiff "must 'point[ ] to specific information in the public domain that appears

to duplicate that being withheld.'"  193 F.3d at 554 (quoting *Afshar v. Dep't of State*, 702 F.2d

---

[4] On March 18, 2020, Plaintiffs, for the first time, informed undersigned counsel that they believe that the Government officially acknowledged certain information during the Roger Stone trial that may be included in the FD-302 of Steve Bannon dated February 14, 2018.  *See* Pls.' Second Notice of Suppl. Authority, Ex. 1, Dkt. 70-1.  DOJ is re-reviewing this FD-302 to determine whether any additional information should be released and anticipates its re-review will be completed by the oral argument scheduled for May 1.

1125, 1130 (D.C. Cir. 1983)).  In *Cottone*, because the information on audio tapes played at a trial was identical to the written transcripts, the court concluded that the information was in the public domain and that the Government could not withhold the transcripts under the FOIA.  *Id.* at 555 (stating that because the plaintiff identified precisely which tapes were played at trial, he met his burden to show what information "reside[s] in the public domain and mirror[s] precisely the information he had requested").  Thus, *Cottone* is readily distinguishable from this case because, as Ms. Brinkmann attested, the information withheld in the FD-302s does not match the information provided in the Mueller Report.  *See* Brinkmann Decl. ¶¶ 33, 38–40.

Finally, Plaintiffs assert that "the withheld information matches what was officially and publicly disclosed in the Mueller Report" because the Mueller Report "cit[es] [to] specific pages in specific 302 reports."  Pls.' Opp'n 12.  But Plaintiffs fail to recognize that the Mueller Report often does not directly quote the cited documents.  *See, e.g.*, Mueller Report, Vol. 1 at 70, 70 n.314, Dkt. 62-4 (citing to, but not quoting, the Cohen and Rtskhiladze FD-302s).  And OIP attorneys carefully reviewed each citation and determined that releasing the cited material in the FD-302 "would provide the public with new information that was not revealed in the redacted Mueller Report."  Brinkmann Decl. ¶ 39.  Thus, even though the Mueller Report cites to FD-302s, because the material in the withheld FD-302s does not substantively match to the information provided in the Report, DOJ properly withheld the information.  *See Afshar*, 702 F.2d at 1132 (finding that "withheld information is in some material respect different" from that which requester claimed had been released previously); *ACLU v. Dep't of Def.*, 723 F. Supp. 2d 621, 630 (S.D.N.Y. 2010).

## II. DOJ Logically and Plausibly Established that the Presidential Communications Privilege Protects from Disclosure Information Concerning Presidential Decision-making in 19 FD-302s.

As an initial matter, the vast majority of the information withheld under Exemption 5 as protected by the presidential communications privilege is also protected under Exemption 5 as

attorney work product.[5]  *See* Brinkmann Decl. Ex. A (*Vaughn* Index).  If the Court upholds those

withholdings as attorney work product under Exemption 5, it need not consider the applicability

of the presidential communications privilege under Exemption 5 to this information.  *See Larson*

*v. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009).

If the Court reaches the issue, it should conclude that DOJ logically and plausibly justified

the redactions for the presidential communications privilege under Exemption 5.  *See Wolf v. CIA*,

473 F.3d 370, 374–75 (D.C. Cir. 2007) ("Ultimately, an agency's justification for invoking a FOIA

exemption is sufficient if it appears logical or plausible.").  Although Plaintiffs argue that the

presidential communications privilege does not apply to information in the FD-302s, that DOJ has

not articulated harm that would result from release, and that the privilege has been waived, none

of their arguments has merit.  *See* Pls.' Opp'n 4, 16–22.

## A.   The Presidential Communications Privilege Applies to Information Individuals Provided to SCO that is Memorialized in FD-302s.

Plaintiffs criticize DOJ for making a "blanket claim" that "all of these communications

involve matters of presidential decision-making" and argue that "DOJ must establish that the

subject matter of each of these communications is a legitimate part of official presidential decision-

making."[6]  *Id.* at 18.  But DOJ's declarations establish that all of the information redacted under

the privilege falls within these four categories of official presidential decision-making: (1) "foreign

relations"; (2) "nomination, appointment, or removal of presidential appointees" and "other

government officials"; (3) "presidential action documents"; and (4) "official public statements."

---

[5] As shown on the *Vaughn* Index, the only FD-302s for which DOJ redacted information under the presidential communications privilege but not under the attorney work product doctrine are the FD-302s memorializing the interviews of Mr. Rosenstein, Mr. Cohen, and Ms. McFarland.  *See* Brinkmann Decl. Ex. A (*Vaughn* Index).

[6] Plaintiffs also criticize DOJ for not identifying which pages contain redactions for material covered by the presidential communications privilege.  Pls.' Opp'n 20.  Attached to this motion is a supplemental declaration identifying those pages in the 14 unclassified FD-302s containing such materials.  *See* Ex. 1 (Fourth Decl. of Vanessa Brinkmann ¶ 5 (Mar. 27, 2020)) ("Suppl. Brinkmann Decl.").

*See* Brinkmann Decl. ¶¶ 23, 26, 30; Suppl. Brinkmann Decl. ¶ 6.  And despite their assertion that

DOJ made a "blanket claim" of privilege, Pls.' Opp'n 18, Plaintiffs concede that DOJ's declaration

provides "adequately specific" descriptions for the first three subjects, *id.* at 19.  The Court should

likewise find that these descriptions are sufficient to uphold DOJ's redactions under the privilege.

      Plaintiffs argue that DOJ's explanation that it redacted communications about "[p]ossible

official public statements, which the President personally participated in developing or was

anticipated to participate in developing," Brinkmann Decl. ¶¶ 23, 30, is "too conclusory to meet

DOJ's burden," Pls.' Opp'n 19.  But the D.C. Circuit has rejected similar arguments.  As the D.C.

Circuit recently explained in *Judicial Watch*,

> In *In re Sealed Case*, the court held that notes of meetings among White House
> advisers and drafts of press briefings were protected from disclosure by the
> privilege, even though it was undisputed that the President never saw these
> documents, [121 F.3d 729,] 746–47 [(D.C. Cir. 1997)].  Nothing in the court's
> analysis implied that additional information would be required about who took the
> notes or how the discussions at the meetings were ultimately communicated to the
> President.  Similarly, here, to determine the applicability of the presidential
> communications privilege, the government's declarations did not need to be more
> specific about who gave the briefings or how those conducting the briefings
> obtained the analysis and advice they conveyed, or the relationship of the briefer to
> the authors, the President, and the President's senior advisers, or whether and how
> the results of the briefings were later conveyed to the authors of the memoranda.

*Judicial Watch, Inc. v. Dep't of Def.*, 913 F.3d 1106, 1113 (D.C. Cir. 2019).  The D.C. Circuit

concluded that for the privilege to apply, "it sufficed that the President and his top national security

advisors solicited and received" the information at issue.  *Id.*

      DOJ's declaration easily meets this standard.  Ms. Brinkmann explained that all the

communications about "possible official statements" involved the President himself, an immediate

adviser to the President, or a member of the staff of an immediate adviser to the President.  *See*

Brinkmann Decl. ¶¶ 21, 22, 27, 29.  Ms. Brinkmann further explained that when the

communications involved only government employees (category "PCP-1"), these communications

"were made in the course of performing their function of advising the President on official government matters." *Id.* ¶ 21. For the communications between the President, his immediate advisors or their staff, and a private party (category "PCP-3"), Ms. Brinkmann stated that these communications "concern[ed] presidential decision-making." *Id.* ¶ 27. Thus, Ms. Brinkmann's declaration sets forth sufficient detail for the Court to uphold the redactions. *See Judicial Watch*, 913 F.3d at 1113; *In re Sealed Case*, 121 F.3d at 750, 752.

Plaintiffs also argue that "DOJ has withheld information unrelated to any presidential decision or 'official' presidential public statements," as the context of information redacted in certain FD-302s appears to relate to discussion about "non-presidential activity," such as the "June 2016 Trump Tower Meeting." Pls.' Opp'n 19–20. Even assuming, *arguendo*, that Plaintiffs' characterization of the redacted information is correct, that does not mean that communications concerning official statements about these activities are not protected by the privilege. It is true that the presidential communications privilege is "limited to communications in performance of [a President's] responsibilities, of his office, and made in the process of shaping policies and making decisions." *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 449 (1977). But, "[t]he nature of the Presidency often makes it difficult to distinguish private from official concerns of the President." *Nixon v. Sirica*, 487 F.2d 700, 754 (D.C. Cir. 1973) (McKinnon, J., concurring in part and dissenting in part). And "the President does need to address personal matters in the context of his official decisions." *In re Grand Jury Proceedings*, 5 F. Supp. 2d 21, 26 (D.D.C.), *aff'd sub nom. In re Lindsey*, 148 F.3d 1100 (D.C. Cir. 1998), *and aff'd in part, rev'd in part*, 158 F.3d 1263 (D.C. Cir. 1998). For example, the court in *In re Grand Jury Proceedings* found that communications concerning the Paula Jones and Monica Lewinsky matters, which plainly concerned President Clinton's personal conduct, could relate to the President's official duties and be protected by the

privilege.  *See id.* (explaining that "[t]he position that nothing the President or his advisors could say to each other regarding the grand jury investigation or the Jones litigation would relate to the President's official duties is oversimplified").  Notably, that court found that "certain executive communications, such as those discussing how the President should respond to the Lewinsky matter during Tony Blair's visit, are protected by the executive privilege."  *Id.*  Likewise, communications about "[p]ossible official public statements," even if they do concern the President's personal matters, are protected by the privilege.  *See* Brinkmann Decl. ¶¶ 23, 30.

Plaintiffs further argue that for the communications including one or more private parties (category "PCP-3"), DOJ's declaration is inadequate because "DOJ has not identified those third parties."  Pls.' Opp'n 20.  But there is no requirement that DOJ do so.  *See Judicial Watch*, 913 F.3d at 1113 (stating that "to determine the applicability of the presidential communications privilege, the government's declarations did not need to be more specific about who gave the briefings . . . or the relationship of the briefer to the authors, the President, and the President's senior advisers").  Plaintiffs also contend that it is "simply implausible that the President's former personal lawyer [Michael Cohen] or the head of a news organization [Christopher Ruddy] are members of an immediate White House adviser's staff."  Pls.' Opp'n 20.  But DOJ never stated that these private parties were members of an immediate White House adviser's staff.  Instead, Ms. Brinkmann's declaration makes clear that the information withheld under category "PCP-3" "consists of descriptions of communications after the Inauguration concerning presidential decision-making, where at least one party to the communication is either the President himself, an immediate adviser to the President, or a member of the staff of an immediate adviser to the President, but where at least one other party to the communication was a private party at the time of the communication" and that these private parties are "individuals outside the Government."

Brinkmann Decl. ¶¶ 27, 28.  Because the President and his advisers "need . . . sufficient elbow room . . . to obtain information from all knowledgeable sources," *In re Sealed Case*, 121 F.3d at 752, these communications are protected by the presidential communications privilege.

Finally, Plaintiffs argue that the privilege cannot apply because the President has not "personally asserted it."  Pls.' Opp'n 21.  That argument is plainly wrong.  Although personal invocation of a privilege may be required in discovery, courts have made clear that invocation by the President is not required in the FOIA context.  *See Lardner v. Dep't of Justice*, 2005 WL 758267, at *7 (D.D.C. 2005); *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 48 n.10 (D.D.C. 2007).  And agencies routinely assert the presidential communications privilege in FOIA cases.  *See, e.g.*, *Judicial Watch*, 913 F.3d at 1112–13 (in upholding the redactions under the privilege, finding that "[t]he district court properly relied on the government's declarations [from the CIA and the Department of Defense]").

Plaintiffs' sole argument to the contrary is that the Supreme Court in the Exemption 4 case *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019), somehow directed the President's personal invocation of the presidential communications privilege.  *See* Pls.' Opp'n 21.  But *Food Marketing* relates to Exemption 4 and not in any way to Exemption 5 or the presidential communications privilege.  *See* 139 S. Ct. at 2364.  Because *Food Marketing* is entirely unrelated to whether the President must personally invoke the presidential communications privilege in the FOIA context, the Court should reject Plaintiffs' argument.

### B.   Disclosure of Information Protected by the Presidential Communications Privilege Would Harm the President's Generalized Interest in Confidentiality.

Plaintiffs argue that DOJ's declaration is insufficient to show that release of the withheld information would reasonably harm an interest protected by the presidential communications privilege because the declaration does not identify specific harms and connect them to the

information withheld.  *See* Pls.' Opp'n 3–6.  But Plaintiffs fail to recognize that the presidential communications privilege is founded on "a President's generalized interest in confidentiality." *United States v. Nixon*, 418 U.S. 683, 708, 711 (1974).  The privilege "preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).  Preserving "the confidentiality of conversations that take place in the President's performance of his official duties" is necessary to protect "the effectiveness of the executive decision-making process." *Nixon*, 487 F.2d at 717.  Thus, because the interest protected by the presidential communications privilege is the "President's generalized interest in confidentiality," *Nixon*, 418 U.S. at 708, 711, DOJ's declaration need only to establish that disclosure of the information protected by the privilege would harm that generalized interest.

DOJ's declaration easily meets that standard.  Ms. Brinkmann attested that if communications that were made to advise the President on foreign relations, personnel matters, presidential action documents, or official public statements are "forced to be disclosed, Presidents and their advisers will be unable to confidently engage in confidential decision-making without fear that their deliberations will be open to public view" which would chill candid discussions and harm the effectiveness of the decision-making process.  Brinkmann Decl. ¶ 32.  Ms. Brinkmann further attested that "disclosing transition deliberations would jeopardize the ability of future Presidents-elect to have full and candid discussions with their advisers and would undermine the ability to protect the confidentiality of discussions on the same matters after the President-elect takes office."  *Id.* ¶ 26.  Because disclosure of information protected by the presidential communications privilege would harm the President's generalized interest in confidentiality, DOJ properly withheld it under Exemption 5.

### C.   The Presidential Communications Privilege Has Not Been Waived.

Plaintiffs' contention that the Executive Branch waived the presidential communications privilege when witnesses provided information to the Special Counsel's Office—an entity that was within the Department of Justice—is baseless. *See* Pls.' Opp'n 16–18.  As the D.C. Circuit has held, because executive privileges such as the presidential communications privilege exist "to aid the governmental decisionmaking process, a waiver should not be lightly inferred." *In re Sealed Case (Espy)*, 121 F.3d at 741.  Indeed, it is precisely because these privileges exist to assist in government decisionmaking, that they can apply to inter-agency, as well as intra-agency, materials. *E.g.*, *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004) (privileges applied to documents passed between DOJ and White House).  As such, neither the purposes of these executive privileges nor the efficient operation of the government would be served by holding that the voluntary, non-public sharing of information between an executive branch official and executive branch investigators waives the privileges that attaches to that information.  Indeed, the D.C. Circuit has held that executive privileges are not waived even when the information is sent to Congress. *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001).  If disclosures between separate branches of the government do not waive executive privileges, then surely such privileges are not waived by disclosure within the executive branch.

Plaintiffs' reference to the President's statements on Twitter is inapposite. *See* Pls.' Opp'n 16–17.  The President's disclosure decision was limited to the Special Counsel's investigation.  There is no basis for finding that a non-public disclosure within the Executive Branch to meet DOJ's needs in its then-ongoing criminal investigation can cause a waiver of privilege in the very different context of a FOIA request.

Plaintiffs also brush aside the one case, *Citizens for Responsibility & Ethics in Washington v. Department of Justice* ("*CREW*"), 658 F. Supp. 2d 217 (D.D.C. 2009), that addressed this same

issue.  *See* Pls.' Opp'n 16–18.  In *CREW*, the plaintiff made the same argument that Plaintiffs advance here—that the "presidential communications privilege [was] waived when Vice President Cheney 'voluntarily revealed' the information at issue to the Special Counsel, a 'third part[y] outside the White House.'"  658 F. Supp. 2d at 236.  The Court rejected the plaintiff's argument and found that because the discussion between the Special Counsel and the Vice President is "more appropriately considered a protected inter-agency disclosure," *id.* at 237, the "presidential communications privilege[] [has] not been waived," *id.* at 238.

Unsurprisingly, Plaintiffs can cite no case where a court has found a waiver of the presidential communications privilege from the sharing of information between two executive branch officials.  The case Plaintiffs rely on, *Espy*, found a limited waiver over a document that the White House had publicly released and a document that the White House had provided to the private counsel of a former government official.  *See* 121 F.3d at 741–42; *see also CREW*, 658 F. Supp. 2d at 236–38 (rejecting CREW's reliance on *Espy*).  Here, aside from the information provided in the public version of the Mueller Report,[7] the Executive Branch has not released the information at issue to the public or to a private party.  Hence, there has been no waiver.

## III.    Pre-decisional, Deliberative Information from Narratives of Three FD-302s and an Attachment to One FD-302 Are Protected From Disclosure Under Exemption 5.

With regard to the Government's withholdings under the deliberative process privilege, Plaintiffs have made four concessions that greatly narrow the scope of the issues before the Court. First, Plaintiffs do not contest that FBI properly redacted the draft talking points that were attached to the McCord FD-302 under Exemption 5.  *See* Pls.' Opp'n 22–23 (contesting only the withholdings by DOJ to the narratives of the McCord and Miller FD-302s).  Accordingly, Plaintiffs

---

[7] DOJ has not withheld information from the FD-302s that was made publicly available in the Mueller Report.  *See supra* Part I.C..; Brinkmann Decl. ¶¶ 38–40.

have conceded that these withholdings by the FBI under Exemption 5 were proper.

Second, although Plaintiffs generally argue that DOJ "has not provided sufficient information for the Court to determine whether the privilege applies," *id.* at 22, Plaintiffs provide no argument at all regarding any alleged deficiencies in DOJ's explanation concerning the redactions to the Rosenstein FD-302. *See id.* at 22–23. By failing to address the Rosenstein FD-302 in either of their briefs, *see id.*; *see also* Pls.' Mem. 19–21, Dkt. 59, Plaintiffs have waived the argument that DOJ's redactions to that FD-302 were improper, *see Petit v. Dep't of Educ.*, 675 F.3d 769, 779 (D.C. Cir. 2012) (stating that arguments not raised in the briefs are waived).

Third, Plaintiffs do not contest that the information withheld under the deliberative process privilege pursuant to Exemption 5 satisfies the "inter/intra-agency" threshold requirement. *See generally* Pls.' Opp'n. Thus, Plaintiffs have conceded this issue as well.

Finally, Plaintiffs have conceded that DOJ and FBI have sufficiently articulated the harm that would result from release. *See* Pls.' Mem. 5 n.2. Given these concessions, the only issue before the Court is whether the material in the typewritten narratives of the McCord and Miller FD-302s falls within the scope of the deliberative process privilege.

The Court may not need to reach this issue. For the McCord and Miller FD-302s, information DOJ withheld under Exemption 5 as protected by the deliberative process privilege is also protected under Exemption 5 as attorney work product. *See* Brinkmann Decl. Ex. A (*Vaughn* Index). If the Court upholds those withholdings as attorney work product, it need not consider the applicability of the deliberative process privilege. *See Larson*, 565 F.3d at 862–63.

If the Court reaches the issue, it should conclude that DOJ logically and plausibly justified the redactions under Exemption 5 to the McCord and Miller FD-302s. *See Wolf*, 473 F.3d at 374–75. Plaintiffs argue that DOJ's explanation of the redactions to the McCord FD-302 were too

"vague[]" because the DOJ asserted only that the redactions "involved discussions among select Executive Branch employees of 'rationales, opinions and alternatives to specific issues.'"  Pls.' Opp'n 22–23 (quoting Defs.' Mem. 28).  But Plaintiffs omit the topic of the discussion, which was "national security related" and that the discussion included Ms. McCord, who was then the Acting Assistant Attorney General for National Security, and "representatives from a small number of Executive Branch agencies, including DOJ."  Brinkmann Decl. ¶ 15.  Plaintiffs also fail to recognize that Ms. Brinkmann explained that this same information is classified and is protected as "national security intelligence sources and methods" under section 102(d)(3) of the National Security Act of 1947.[8]  *Id.* ¶ 15 n.5.  Because Ms. McCord recounted discussions among a small group of Executive Branch representatives concerning "national security intelligence sources and methods" and possible alternative courses of action, DOJ logically and plausibly redacted these discussions under the deliberative process privilege pursuant to Exemption 5.

Plaintiffs also argue that DOJ's description of the deliberative material in the Miller FD-302 is insufficient because Defendant must identify "what decision was made and when" in order to invoke the deliberative process privilege.  Pls.' Opp'n 22.  Not so.  Courts have found that an agency does not necessarily have to point to a specific final decision to invoke the privilege.  *See Gold Anti-Trust Action Comm. Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 136 (D.D.C. 2011) (rejecting plaintiff's contention that "the Board must identify a specific decision corresponding to each [withheld] communication").  Instead, the agency must establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).  DOJ has met this standard.  Ms. Brinkmann's declaration establishes that Mr. Miller recounted a

---

[8] Ms. Brinkmann further explained that no additional information about these discussions could be released without revealing information that is protected by Exemptions 1, 3, and 7(E).  *See* Brinkmann Decl. ¶ 15 n.5.

discussion he had with then-Attorney General Sessions about "internal DOJ decision-making concerning a personnel matter" and that the conversation concerned "ongoing review of Department decision-making."  Brinkmann Decl. ¶ 16.

Plaintiffs also speculate that the "personnel matter" refers to the dismissal of former FBI Director James Comey and argue that because "President Trump had already decided to fire Comey by" the time Mr. Miller spoke with the former Attorney General on May 8, 2017, that information is post-decisional and cannot be withheld pursuant to the deliberative process privilege.  Pls.' Opp'n 22.  Even assuming, *arguendo*, that the President had decided to dismiss Mr. Comey at that point, that was the *President's* decision.[9]  Ms. Brinkmann's declaration does not state that the "personnel matter" related to any presidential decision; to the contrary, Ms. Brinkmann explicitly states that the information redacted concerned "ongoing review of *Department* decision-making" and "*internal DOJ decision-making* concerning a personnel matter."  Brinkmann Decl. ¶ 16.  Accordingly, Plaintiffs' speculative argument that the redacted information concerns a decision that had already been made should be rejected.

## IV.    The Government Misconduct Exception that Applies in Discovery Matters Is Inapplicable in this FOIA Case.

As set forth in Defendant's opening brief, the prevailing view of courts in this district is that the government misconduct exception that applies in civil discovery matters does not apply in FOIA matters.  *See* Defs.' Mem. 37–40 (collecting cases); *see also, e.g.*, *Wright v. Admin. for Children & Families*, 2016 WL 5922293, at *11 (D.D.C. Oct. 11, 2016) ("[T]he government misconduct exception recognized in *In re Sealed Case* cannot overcome an otherwise valid withholding pursuant to Exemption 5.").  Even if the exception did apply in FOIA cases, Plaintiffs

---

[9] *See* Statement from the Press Secretary, https://www.whitehouse.gov/briefings-statements/statement-press-secretary-13/ (May 9, 2017).

have failed to show that it applies here.  In their reply brief, Plaintiffs changed their theory of the alleged misconduct.  In their opening brief, Plaintiffs alleged that the FD-302s will shed light on the Trump Tower Moscow project, June 9, 2016 Trump Tower meeting, and the President's "efforts to prevent disclosure about the June 9, 2016 Trump Tower meeting and his role in creating misleading public statements about the meeting."  *See* Pls.' Mem. 17–18.  Plaintiffs appear to have abandoned that theory and now argue that the FD-302s "contain potential evidence of . . . possible obstruction of justice by the President and his advisers" because they will reveal the "justification for President Trump's firing of FBI director James Comey."  Pls.' Opp'n 13–15.

With this argument, Plaintiffs continue to misconstrue the circumstances under which the government misconduct exception applies.  The exception does not apply to a document that is "part of the legitimate government process intended to be protected by Exemption 5."  *Judicial Watch, Inc. v. Dep't of State*, 235 F. Supp. 3d 310, 314 (D.D.C. 2017).  The FD-302s were created as part of the Special Counsel's investigation.  *See* Weinsheimer Decl. ¶¶ 25–31.  Plaintiffs do not contend that the Special Counsel's investigation was not a legitimate government process or that the FD-302s were not created as part of that process.  *See generally* Pls.' Opp'n.

Plaintiffs essentially argue that any document that describes evidence of misconduct cannot be withheld under the FOIA.  Taken to its logical end, Plaintiffs' argument would mean that the Government could never withhold information its attorneys gathered as part of a public corruption investigation under Exemption 5.  For example, if a prosecutor in the DOJ Public Integrity Section wrote a memorandum recommending prosecution of a government official, and that memorandum described the evidence collected against that official, then under Plaintiffs' argument, because that memorandum contains evidence of potential government misconduct, it could not be withheld as attorney work product under Exemption 5.  That simply cannot be the law.

Plaintiffs also argue that the FD-302s "contain potential evidence of extreme government misconduct" because they show "DOJ's efforts to keep secret information in the 302 reports about those potential crimes." Pls.' Opp'n 13. Here, again, Plaintiffs have shifted their argument. In their opening brief, Plaintiffs argued that OIP attorneys have committed governmental misconduct by engaging in "[s]elective disclosure of favorable information to a government official." Pls.' Mem. 18. Plaintiffs now appear to have dropped their "selective disclosure" argument and argue that because the Court ordered *in camera* review of the Mueller Report, there is evidence that DOJ committed misconduct by redacting the FD-302s. Pls.' Opp'n 13.

Plaintiffs' argument misses the mark. The Court in *Electronic Privacy Information Center v. Department of Justice* did not find, as Plaintiffs imply, that DOJ committed misconduct by redacting the Mueller Report, but instead ordered *in camera* review of the Report so it could conduct an "independent verification" of the redactions. *See* Mem. Op., Dkt. 111, 19-cv-810 (D.D.C. Mar. 5, 2020), at 20. And the Court has not yet conducted its *in camera* review of the Report nor ruled on any of DOJ's redactions to the Report. As such, the Court's order in that case has no bearing on whether the purported government misconduct exception applies here.

Moreover, there is simply no basis to conclude, as Plaintiffs argue, that DOJ redacted the FD-302s to "keep secret information" about "possible obstruction of justice by the President and his advisers." Pls.' Opp'n 13. Volume II of the Mueller Report, which summarizes the Special Counsel's obstruction-of-justice investigation of the President, was mostly unredacted. *See* Weinsheimer Decl. Ex. C, Dkt. 62-5. Only 24 out of the 187 pages of Volume II (less than 8%) contain any redactions, most of those redactions are for single sentences or even parts of sentences, and none of those redactions were under Exemption 5. *See generally id.* And the pages concerning the termination of former FBI Director James Comey contain only one redaction for part of one

sentence under Exemptions 6 and 7.  *See id.* at 62–77.  Plaintiffs' baseless speculation that OIP attorneys redacted the FD-302s for improper purposes is contrary to the facts and to the presumption of regularity that supports the acts of government officials.  *See Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011).  As such, it should be rejected outright.

**V.**      ***In Camera* Review is Neither Necessary Nor Appropriate.**

DOJ's and FBI's declarations provide sufficiently detailed information to show that the redacted information falls within Exemption 5.  Plaintiffs rely on a recent case, *Protect Democracy Project v. NSA*, in which the court determined *in camera* review was necessary because the NSA's conclusory affidavits were insufficient to establish that material in the withheld memorandum had not been officially acknowledged in the Mueller Report.  *See* Pls.' Notice of Supp. Authority, Dkt. 66 (citing Mem. Op., *Protect Democracy Project v. NSA*, No. 17-cv-1000 (CKK) (Mar. 6, 2020)).  But Ms. Brinkmann's declaration describing OIP's methodical comparison of the FD-302s to the Mueller Report is sufficient for the Court to determine that the material in these FD-302s has not been officially acknowledged.  *See* Brinkmann Decl. ¶¶ 39–40.  And Plaintiffs' speculative assertions of bad faith do not show that "information contained in [DOJ's and FBI's declarations] is contradicted by other evidence in the record."  *Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987).  Finally, as a practical matter, *in camera* review would not assist the Court in ruling on DOJ's redactions under Exemption 5 for attorney work product because those redactions present a legal issue that is not dependent upon the contents of any specific FD-302.  Accordingly, "[*i*]*n camera* review is neither necessary nor appropriate."  *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

**CONCLUSION**

For these reasons, the Court should grant partial summary judgment for Defendant.

Dated: March 27, 2020

Respectfully submitted,

ETHAN P. DAVIS
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2020, I electronically transmitted the foregoing to the

parties and the clerk of court for the United States District Court for the District of Columbia using

the CM/ECF filing system.

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov
