## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am the Assistant Section Chief of the Record/Information Dissemination Section

(RIDS), Information Management Division (IMD), in Winchester, Virginia and, in the absence

of RIDS Section Chief, David M. Hardy, I serve as Acting Section Chief for RIDS. I have held

this position since June 26, 2016. I joined the FBI in September 2011, and prior to my current

position, I was the Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016;

and an Assistant General Counsel, FBI Office of General Counsel, Freedom of Information Act

("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had

management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("PA")

litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S.

Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where

among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency

counsel representing the DEA in FOIA/PA suits nationwide. I also served as a U.S. Army Judge

Advocate General's Corps Officer in various assignments from 1994 to September 2006

culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation

Division where I oversaw FOIA/PA litigation for the U.S. Army. I am an attorney registered in

the State of Ohio and the District of Columbia.

(2)     In my official capacity as the Assistant Section Chief of RIDS, I supervise

approximately 245 FBI employees, supported by approximately 72 contractors, who staff a total

of twelve (12) FBI Headquarters (FBIHQ) units and two (2) field operational service center units

whose collective mission is to effectively plan, develop, direct, and manage responses to requests

for access to FBI records and information pursuant to the FOIA as amended by the OPEN

Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13,526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a.  The declaration provides an update on the status of the FBI's FOIA program, and supplements two similar declarations that I executed on March 19 and March 27, 2020.

(4)     On January 31, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19.  On March 11, 2020, the World Health Organization publicly characterized COVID-19 as a pandemic.[1]  On March 13, 2020, the President declared a National Emergency in an effort to address the spread of COVID-19.[2]  Further, on March 16, 2020, the President announced new guidelines to slow the spread of the virus, to include avoiding groups of more than 10 people and closing schools in many communities.[3]  This

---

[1] Centers for Disease Control and Prevention. "Coronavirus Disease 2019 (COVID-19): Situation Summary."  www.cdc.gov, accessed March 13, 2019.

[2] *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last accessed Mar. 17, 2020).

[3] *See* The President's Coronavirus Guidelines for America, https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last accessed Mar. 17, 2020).

guidance follows recommendations by the Centers for Disease Control (CDC) to engage in social distancing.[4]

(5)     The United States Office of Personnel Management (OPM) has been issuing guidance to address how the Federal Government can implement measures to protect its workforce and the American public.  Specifically, on March 7, 2020, OPM recommended the "incorporation of telework and 'social distancing' in COOP [Continuity of Operations] and emergency planning [to] allow the Federal Government to continue functioning efficiently and effectively, while ensuring the health and safety of employees."[5]  Further, on March 15, 2020, both the Acting Director of the Office of Management and Budget (OMB) issued guidance to Federal agencies in the National Capital Region (NCR) to implement maximum telework flexibilities.  OMB's guidance asked agencies "to offer maximum telework flexibilities to all current telework eligible employees, consistent with operational needs of the departments and agencies as determined by their heads."[6]

(6)     The FBI is implementing these guidelines to protect its employees and their communities, and to ensure that it can continue to protect the American people during this national emergency.

---

[4] *See, e.g.*, Centers for Disease Control "Interim Guidance for Businesses and Employers" https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html (last accessed Mar. 17, 2020).

[5] United States Office of Personnel Management Memorandum "Coronavirus Disease 2019 (COVID-19); Additional Guidance" (March 7, 2020), https://www.chcoc.gov/content/coronavirus-disease-2019-covid-19-additional-guidance (last accessed Mar. 17, 2020).  *See also* United States Office of Personnel Management Memorandum "Updated Guidance on Telework Flexibilities in Response to Coronavirus" (March 12, 2020), https://www.chcoc.gov/sites/default/files/M-20-13.pdf (last accessed Mar. 17, 2020).

[6] Memorandum from the Acting Director of The Office of Management and Budget to the Heads of Departments and Agencies "Updated Guidance for National Capital Region on Telework Flexibilities in Response to Coronavirus" (March 15, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/M20-15-Telework-Guidance-OMB.pdf (last accessed Mar. 17, 2020).

(7)     Telework is not available for RIDS employees. The systems that they work on are located on FBI's SECRET-level classified enclave. Significantly, most FOIA searches are conducted using Sentinel and documents are processed in the FOIA Document Processing System (FDPS), both of which maintain classified and other sensitive information and are located on the SECRET enclave.[7] Furthermore, many FOIA requests involve records that must undergo classification reviews before they can be processed for FOIA exemptions. That work necessarily must be done in the office.

(8)     RIDS employees have been designated as not mission-critical and were sent home as of March 17, 2020.[8] Only a limited number of employees are currently being permitted to report to the office, but no FOIA processing is occurring as of March 17, 2020. The goal has been for RIDS employees to return to work and for FBI's FOIA program to resume at the earliest possible date consistent with the health and safety of RIDS employees, their families, and the community. While RIDS initially anticipated that its staff would return to work on March 30, 2020, the situation has continued to develop. As a result, and subject to continued reassessment, RIDS now anticipates that its staff will return on a limited basis no earlier than April 27, 2020. Until at least April 27th, no production of records pursuant to FOIA will be made, whether those productions are in relation to requests in litigation or at the administrative stage. This includes responses to FOIA consultation requests or referrals from other agencies to the FBI. RIDS staff members responsible for drafting *Vaughn* declarations and indexes in litigation matters continue to be designated as not mission-critical as well and remain at home.

---

[7] Moreover, in order to downgrade and move information from the SECRET enclave to an unclassified system requires running particular security protocols that can only be done on the classified enclave.

[8] A mission-critical position is one that's functions absolutely cannot be put on hold.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of April, 2020.

Michael G. Seidel
Assistant Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

5