IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, BUZZFEED, INC., | |
| Plaintiffs, | |
| v. | Civil Action No. 19-cv-1278 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, et al. | |
| Defendants. | |
| CABLE NEWS NETWORK, | |
| Plaintiff, | |
| v. | Civil Action No. 19-cv-1626 (RBW) |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |

**DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION TO MODIFY COURT ORDER**

By requesting that the Court order production by October 1 of all FD-302s that have been sent by the Federal Bureau of Investigation ("FBI") to other governmental agencies for their review, Plaintiffs effectively seek to compel the FBI to produce potentially sensitive information in the FD-302s that members of the Intelligence Community or law enforcement agencies may determine should be protected from disclosure. But there is no basis for such an order. Far from delaying the production of the FD-302s, the FBI has been diligently processing 800 pages of FD-302s each month, sending them to other governmental agencies for review when necessary, repeatedly following up with those agencies for a final response, and, once the FBI receives a

response from these other governmental agencies, including the FD-302s in productions to Plaintiffs. This process is the only way to ensure that potentially classified and/or law enforcement sensitive information that would otherwise be exempt under the Freedom of Information Act ("FOIA") is not disclosed. The Court should permit the FBI to continue its standard consultation/coordination process and deny Plaintiffs' motion.

## BACKGROUND

As previously described, *see* Dkt. 57, in processing the typewritten narratives of FD-302s in response to Plaintiffs' FOIA requests, the FBI has identified information in certain FD-302s that was obtained from other governmental agencies ("OGAs"), including members of the Intelligence Community ("IC"), or bore on OGA equities. *See* Second Decl. of Michael G. Seidel ¶ 17 (Aug. 28, 2020). When the FBI identified such information, it followed the Department of Justice's FOIA regulations (in relevant part, 28 C.F.R. § 16.4) that "specifically addresses how OGA information and records are to be handled during the processing of a FOIA request, including classified information," *id.* ¶ 5, and the FBI's standard consultation/coordination process, *id.* ¶¶ 6–17. Specifically, once the FBI identified OGA information in the FD-302s, it marked the information, notated which OGA needed to review it, and prepared the consultation/coordination packages to be sent to the OGA(s). *Id.* ¶¶ 12, 17. As the FBI declarant attests, "[g]iven the sensitivities of these records and significant law enforcement, national security, and/or intelligence concerns implicated by the presence of particular IC or law enforcement agency information in them, it is critical to solicit and incorporate the input of these agencies before releasing the records." *Id.* ¶ 27. Once the OGAs receive and review the FD-302(s) for their equities, they will "provide recommendations to the FBI as to how they wish their information to be handled (*i.e.*, disclose or redact)." *Id.* ¶ 17.

As of August 28, 2020, the FBI has sent 194 consultation/coordination requests to 22 agencies. *Id.* ¶ 18. Those requests concern 129 FD-302s (some with overlapping equities of more than one OGA). *Id.* Seventy-eight of the total 194 consultation/coordination requests were sent to the OGAs in August 2020, and have, therefore, been pending less than one month. *Id.* ¶ 19. Another 20 of the total 194 consultation/coordination requests were sent to the OGAs in June or July 2020, and have thus been pending less than three months. *Id.* Forty consultation/coordination requests have been pending for more than three months. *Id.*

The FBI has been diligently working with their partners at the OGAs to ensure timely production to Plaintiffs. Specifically, the FBI is requesting responses by the OGAs within two weeks of OGA receipt, so that any 302s with fully resolved responses can be included in the next scheduled interim response. *Id.* ¶ 21. When the FBI does not receive a response within that requested two-week period, FBI employees have been following up with their agency contacts each month. *Id.* ¶ 23. Moreover, when FBI employees were unable to receive an acknowledgement of receipt of certain consultation/coordination requests from an OGA, senior officials at FBI who do not normally get involved with these requests contacted the OGAs obtained acknowledgment of the consultation/coordination request. *Id.*

All of the OGAs have acknowledged receipt of the consultation/coordination requests, but many of them have not been able to provide final recommendations to the FBI because of other litigation demands. *Id.* ¶ 22. Moreover, certain OGAs have indicated that they cannot meet the FBI's requested two-week response deadline "due to staffing issues related to the COVID 19 Pandemic." *Id.* Although RIDS fully reopened for FOIA processing in June, not all governmental agencies resumed FOIA processing on the same timetable or on the same staffing levels. *Id.* ¶¶ 22, 26. This has "significantly delayed some agencies' responses to classified FBI

3

consultations." *Id.* ¶ 26.

The FBI has received a total of 56 responses to the consultation/coordination requests from other governmental agencies. *Id.* ¶ 19 n.6. Because the FBI received final responses from OGAs and there were no additional responses pending from any other governmental agency, the FBI has released, or will release in the September 1 production, 16 FD-302s to Plaintiffs. *Id.* ¶ 20. The FBI has not yet released other FD-302s for which it has received responses from OGAs because a consultation/coordination request on that same FD-302 is pending with another governmental agency, there are outstanding classification issues, or the FBI only recently received a response from the OGA, which left insufficient time to include the response in the September 1 production. *Id.* ¶ 19 n.6; *see also id.* ¶ 14(b) (explaining the actions FBI must take to complete the processing of records upon receipt of the responses from OGAs). Once the FBI receives final responses for each FD-302, the FBI has been and will continue to finalize all records and release the non-exemption portions to Plaintiffs in the next monthly production. *Id.* ¶ 24.

## ARGUMENT

The consultation/coordination process that the FBI followed in this case is permitted by the FOIA and required by regulation. As the D.C. Circuit has recognized, the "FOIA explicitly permits 'consultation . . . with another agency having a substantial interest in the determination of the request." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1118 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552(a)(6)(B)(iii)(III)). Moreover, the Department of Justice's regulations, which the FBI follows, require the FBI to determine for each record it reviews "whether another component or another agency of the Federal Government is better able to determine whether the record is exempt from disclosure under the FOIA." 28 C.F.R. § 16.4(d). For such records, the

4

FBI is required under the applicable regulation to "consult with that other component or agency prior to making a release determination."[1]  28 C.F.R. § 16.4(d)(1).  The regulation further permits the FBI to withhold the identity of the other agency "where disclosure of the identity of the component or agency to which the referral would be made could harm an interest protected by an applicable exemption, such as the exemptions that protect personal privacy or national security interests."  28 C.F.R. § 16.4(d)(3).

Plaintiffs request that the Court compel disclosure of the FD-302s before the other governmental agencies finish their review of the documents.  However, the Court may "compel[] disclosure of the documents only if they were '(1) improperly'; (2) withheld' by the [FBI]." *McGehee v. CIA*, 697 F.2d 1095, 1109 (D.C. Cir.), *on reh'g*, 711 F.2d 1076 (D.C. Cir. 1983) (quoting *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980)).  The D.C. Circuit has found that an agency's system for sending documents to another agency for review "constitutes 'withholding' of those documents if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them."  *Id.* at 1110.  And that "withholding" "will be deemed 'improper' unless the agency can offer a reasonable explanation for its procedure."  *Id.*; *see also Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998) (noting that "there is no 'bright line' test for evaluating" the procedure used by the agency).

Here, the FBI has followed its standard consultation/coordination procedure, whereby a FOIA processor identifies information in the FD-302s that concern another agency's equities,

---

[1] The regulations also permit the FBI to refer to another agency the responsibility for responding to the FOIA request regarding the record if the FBI determines that "a different component, agency, or other Federal Government office is best able to determine whether to disclose the record."  28 C.F.R. § 16.4(d)(2).  This part of the regulation is not at issue in this case, as FBI did not refer to any other agency the responsibility for responding to Plaintiffs' FOIA requests concerning the FD-302s.  *See* Seidel Decl. ¶ 7 n.1.

sends that FD-302 to the agency for a consultation, and informs Plaintiffs in the cover letters to the productions that documents have been sent to other agencies for consultation. Seidel Decl. ¶ 17. The FBI does not publicly identify the agency receiving the consultation/coordination request in order to avoid potential inadvertent disclosure of classified and/or law enforcement sensitive information that would otherwise be exempt under the FOIA. *Id.* ¶¶ 11, 28. As the FBI declarant has attested, "[t]he coordination process is critical to the resolution of Intelligence Community equities in particular because an IC agency's connection to a specific individual, activity, program, or FBI investigation can often be classified or prohibited from disclosure under a withholding statute." *Id.* ¶ 11. The process is also necessary to resolve sensitive law enforcement agency equities in order to avoid inadvertent disclosure of information related to pending investigations. *Id.* Accordingly, because the agency followed a reasonable procedure for the resolution of other governmental agencies' equities in the FD-302s, the Court should find that the FBI is not "improperly withholding" the FD-302s through its consultation/coordination process. *McGehee v. CIA*, 697 F.2d at 1110.

Although Plaintiffs are correct that an agency may not refuse to act when it finds records that implicate another agency's equities, Pls.' Mot. 3, the FBI plainly has not done so here. The FBI has continuously taken responsibility over the FD-302s by processing 800 pages of the typewritten narratives per month, recognizing when another governmental agency's equities are implicated by the records, and promptly sending the consultation/coordination requests to those agencies. Seidel Decl. ¶ 21. FBI employees confirmed that the consultation packages had been received by the other governmental agencies, and, in the instances where the FBI did not receive any acknowledgment, the FBI elevated the issue to senior officials who do not normally get involved in consultation/coordination requests in order to prompt a response from the other

agencies. *Id.* ¶ 23. These actions resulted in all of the other governmental agencies acknowledging receipt of the consultation/coordination requests. *Id.* ¶ 23. Upon receipt of the consultation/coordination requests, certain agencies requested more information from the FBI, which the FBI promptly provided to them. *Id.* ¶ 22. The FBI further asked for all of the agencies to provide a response to the consultation/coordination request within two weeks. *Id.* ¶ 23. Certain agencies have informed the FBI that "they are unable to meet RIDS' requested two-week deadline due to staffing issues related to the COVID-19 Pandemic and multiple competing priorities, including litigation deadlines." *Id.* ¶ 22. When the FBI did not receive responses in the requested two-week period, FBI employees have routinely and repeatedly followed up with each agency. *Id.* ¶ 23. Specifically, "a RIDS employee has emailed and/or called each his or her contact at each OGA every month the consult has been pending and will continue to do so" until each consultation/coordination request has been resolved. *Id.* Once the consultation/coordination request for a FD-302 is fully resolved – *i.e.*, all affected OGAs provide recommendations – RIDS has been and will continue to finalize the FD-302s for production and release the non-exempt information to Plaintiffs in the next production. *Id.* ¶ 24. Accordingly, far from failing to take responsibility over the FD-302s as Plaintiffs claim, the FBI has continuously taken efforts to process the FD-302s and release the non-exempt portions of those records to Plaintiffs in a timely manner.

In arguing that the Court should disregard FBI's process and order the disclosure of potentially classified and/or law enforcement sensitive information that may otherwise be exempt under the FOIA, Plaintiffs rely on *Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983) and *Keys v. Department of Homeland Security*, 570 F. Supp. 2d 59 (D.D.C. 2008). But in *Paisley*, the court ordered the agency to provide an affidavit within 30 days setting forth the reasons for

withholding because the plaintiff had not received the requested records for *four years* and the agency did not inform the plaintiff for 18 months that her records had been referred to another agency for processing. 712 F.2d at 691 n.22. And in *Keys*, the court found that the Secret Service improperly withheld documents when it referred them to another agency, entirely failed to follow up with that agency, and the agency did not respond for nearly a year. 570 F. Supp. 2d at 70. This case is plainly distinguishable from both *Paisley* and *Keys*, as the FBI has been issuing monthly releases to Plaintiffs and the majority of the pending consultation/coordination requests have been pending for less than three months. *See* Seidel Decl. ¶ 19. For all pending requests, the FBI has been diligently following up with its agency contacts each month to prompt a final resolution of the consultation. *Id.* ¶ 23. Accordingly, the FBI has taken and continues to take responsibility over the processing of the FD-302s, and there is no basis upon which to order premature disclosure of FD-302s.

## CONCLUSION

The FBI has followed its long-standing procedures that it follows both at the administrative phase as well as for cases in litigation and has done all it can do to comply with the Court's Orders and process the FD-302s for release. Because directing the release of FD-302s before this consultation process is complete risks exposing classified and/or law enforcement sensitive information that would otherwise be exempt under the FOIA, the Court should reject Plaintiffs' request to order disclosure of FD-302s before that vital consultation process is complete.

Dated: August 28, 2020                    Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW (N.C. Bar No. 46578)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendant*