## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
JASON LEOPOLD and ) 
BUZZFEED, INC., )
     )
       Plaintiffs, )
     )
       v. )        Civil Action No. 19-1278 (RBW)
     )
UNITED STATES DEPARTMENT OF )
JUSTICE, et al., )
     )
       Defendants. )
———————————————————————)
     )
CABLE NEWS NETWORK, )
     )
       Plaintiff, )
     )
       v. )        Civil Action No. 19-1626 (RBW)
     )
FEDERAL BUREAU OF INVESTIGATION, )
     )
       Defendant. )
———————————————————————)

## <u>MEMORANDUM OPINION</u>

The above-captioned matters involve requests made by Jason Leopold and Buzzfeed, Inc. (the "Leopold plaintiffs") and Cable News Network ("CNN") (collectively, the "plaintiffs") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018), seeking, <u>inter alia</u>, the release of the typewritten narratives of the FD-302 forms ("FD-302s") created by the Federal Bureau of Investigation (the "FBI") in conjunction with Special Counsel Robert Mueller's investigation into Russian interference in the 2016 United States presidential election.  <u>See</u> Complaint ("Compl.") ¶ 16, <u>Leopold v. U.S. Dep't of Justice</u>, Civ. Action No. 19-1278 ("Leopold Pls.' Compl."); Compl. ¶ 1, <u>Cable News Network v. Fed. Bureau of Investigation</u>,

Civ. Action No. 19-1626 ("CNN Compl.").[1]  Currently pending before the Court are the motions

for partial summary judgment filed by the plaintiffs and the United States Department of Justice

(the "Department").  See generally Memorandum in Support of Plaintiffs' Motion for Partial

Summary Judgment ("Pls.' Mem."); Department of Justice's Motion for Partial Summary

Judgment in Leopold v. Department of Justice and Cable News Network v. Federal Bureau of

Investigation ("Defs.' Mot.").  Upon careful consideration of the parties' submissions,[2] the Court

concludes for the following reasons that it must grant the Department's motion for partial

summary judgment and deny the plaintiffs' motion for partial summary judgment.

## I.       BACKGROUND

On March 27, 2019, the Leopold plaintiffs, pursuant to the FOIA, submitted a request to

the FBI, seeking, inter alia, "[a]ll FBI [FD-]302s maintained/stored/in possession of the FBI

relating or referring to all of the individuals who were questioned and interviewed by FBI agents

working for the Office of Special Counsel Robert Mueller during his investigation."  Leopold

Pls.' Compl. ¶ 16.  Previously, on March 21, 2019, the Leopold plaintiffs submitted a similar

---

[1] According to the Department, FD-302s "are investigative records that document factual information elicited from interviewees (e.g., targets, witnesses, others with pertinent information) during FBI criminal and national security investigations."  Department of Justice's Motion for Partial Summary Judgment in Leopold v. Department of Justice and Cable News Network v. Federal Bureau of Investigation, Exhibit ("Ex.") 3 (Third Declaration of David M. Hardy) ("Hardy Decl.").  On November 19, 2019, the Court ordered the Department to prioritize its processing and production of the typewritten narratives of the FD-302s and indicated that it would address the processing and production of the handwritten notes and attachments to the typewritten narratives at a later date.  See Order at 1 (Nov. 19, 2019), ECF No. 39; see also Order at 1 (Nov. 28, 2019), ECF No. 47; Min. Order (Nov. 20, 2019).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of the Department of Justice's Motion for Partial Summary Judgment in Leopold v. Department of Justice and Cable News Network v. Federal Bureau of Investigation ("Defs.' Mem."); (2) Defs.' Mot., Ex. 1 (Declaration of Bradley Weinsheimer) ("Weinsheimer Decl."); (3) id., Ex. 2 (Third Declaration of Vanessa R. Brinkmann) ("Brinkmann 3d Decl."); (4) the Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Partial Summary Judgment ("Pls.' Opp'n"); (5) the Department of Justice's Reply in Support of its Motion for Partial Summary Judgment ("Defs.' Reply"); (6) id., Ex. 1 (Fourth Declaration of Vanessa R. Brinkmann) ("Brinkmann 4th Decl."); (7) the Notice of Supplemental Authority ("Pls.' 1st Notice"); (8) the Second Notice of Supplemental Authority ("Pls.' 2d Notice"); (9) the Defendants' Notice of Supplemental Authority ("Defs.' Notice"); (10) the Plaintiffs' Response to Defendants' Notice of Supplemental Authority ("Pls.' Resp."); and (11) the Third Notice of Supplemental Authority ("Pls.' 3d Notice").

request to the Department.  Id. ¶ 6.  Because neither the Department nor the FBI "issued a determination or produced responsive records," id. ¶¶ 10, 19, the Leopold plaintiffs filed their Complaint in this Court against the Department, the Office of Attorney General of the United States, the Deputy Attorney General of the United States, the Special Counsel's Office, and the FBI.  See generally id.

On March 26, 2019, CNN also submitted a FOIA request to the Department seeking "copies of FBI memoranda, such as [FD-]302s, from any and all of the interviews of the 'approximately 500 witnesses' in the Mueller investigation," as well as "any and all case files" related to those interviews.  CNN Compl. ¶ 11; see also CNN Compl., Exhibit ("Ex.") A (Letter to David M. Hardy, Chief, Record/Information Dissemination Section, Records Management Division (Mar. 26, 2019)) at 1.  According to CNN, the FBI did not "provide[] a response indicating whether it will comply with [CNN's] [r]equest," CNN Compl. ¶ 21, but rather indicated that "the records sought involved 'unusual circumstances' that will 'delay [the FBI's] ability to make a determination,'" id. ¶ 18 (citing id., Ex. B (Letter from David M. Hardy, Section Chief, Record/Information Dissemination Section, Information Management Division (Apr. 25, 2019)) at 1).  Consequently, CNN also filed its Complaint against the FBI in this Court.  See generally CNN Compl.

On October 3, 2019, the Court consolidated the above-captioned matters to the extent that both plaintiffs are seeking the release of the FD-302s created by the FBI in relation to Special Counsel Mueller's investigation into Russian interference in the 2016 United States presidential election.  See Order at 1 (Oct. 3, 2019), ECF No. 33.  The parties subsequently filed their partial cross-motions for summary judgment, addressing only the Department's withholdings pursuant to Exemption 5 of the FOIA.  These motions are the subjects of this Memorandum Opinion.

## II.     STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment." Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted).  The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of Justice, 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly.").  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure." Boyd v. U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted).  This burden "cannot be met by mere conclusory statements." Wash. Post Co., 863 F.2d at 101 (citation omitted).  "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed," King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how release of the particular material would have the adverse consequence that the Act seeks to guard against," Wash. Post Co., 863 F.2d at 101 (citation omitted).

Courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  Thus, in a lawsuit brought to compel the production of documents under the

FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'"  Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).  However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Pub. Citizen Health Research Grp. v. Food & Drug Admin., 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

## III.    ANALYSIS

The Department has withheld information from the typewritten narratives of the FD-302s pursuant to Exemption 5 of the FOIA, invoking the attorney work product privilege and the presidential communications privilege.  See Defs.' Mem. at 1–2.[3]

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. §

---

[3] The Department also represents that, pursuant to the deliberative process privilege under Exemption 5, it has withheld information from "three FD-302s summarizing the interviews of former Deputy Attorney Rod Rosenstein, former Acting Assistant Attorney General for National Security Mary McCord [(the "McCord FD-302")], and Senior Advisor to the President Stephen Miller [(the "Miller FD-302")]," Brinkmann 3d Decl. ¶ 11, as well as "draft talking points that were attached to the McCord FD-302," Defs.' Mem. at 26 (citing Hardy Decl. ¶¶ 8, 12–20.  The plaintiffs only challenge the Department's withholding of information pursuant to the deliberative process privilege from the Miller and McCord FD-302s.  See Pls.' Opp'n at 22 (claiming that "[t]he description of Miller's conversation with then-Attorney General Sessions is insufficient to show that the information is protected by the deliberative process privilege"); id. at 22–23 (quotation omitted) (arguing that the Department "vaguely asserts that the information withheld from the 302 of then-Acting Assistant Attorney General for National Security Mary McCord involved discussions among select Executive Branch employees of 'rationales, opinions[,] and alternative to specific issues,'" and that this "is insufficient to meet the [Department's] burden").  Because the Department has since withdrawn its reliance on Exemption 5 for the McCord FD-302 and has represented that it will be reprocessed and produced to the plaintiffs, and because the Department represents that the information withheld from the Miller FD-302 "is also protected under Exemption 5 as attorney work product," Defs.' Reply at 20, which the Court finds is appropriate, infra Part III.A., the Court need not address the Department's withholdings pursuant to the deliberative process privilege, see Larson v. U.S. Dep't of State, 565 F.3d 857, 862–63 (D.C. Cir. 2009) (citing Gardels v. Cent. Intelligence Agency, 689 F.2d 1100, 1106–07 (D.C. Cir. 1982) ("[C]ourts may uphold agency action under one exemption without considering the applicability of the other.").

552(b)(5).  To be covered by Exemption 5, a document's "source must be a [g]overnment

agency, and it must fall within the ambit of a privilege against discovery under judicial standards

that would govern litigation against the agency that holds it."  Dep't of Interior & Bureau of

Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001); see also Burka v.

Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996) ("[T]he parameters of

Exemption 5 are determined by reference to the protections available to litigants in civil

discovery; if material is not 'available' in discovery, it may be withheld from FOIA

requesters.").  "Exemption 5 incorporates the privileges that the [g]overnment may claim when

litigating against a private party, including the . . . attorney work product privilege[] [and] the

presidential communications privilege[.]"  Abtew v. U.S. Dep't of Homeland Sec., 808 F.3d 895,

898 (D.C. Cir. 2015) (citation omitted).

     The Court will address the Department's withholdings pursuant to the attorney work

product privilege and presidential communications privilege in turn.[4]

---

[4] As a general matter, the Court rejects the plaintiffs' argument that the Department's withholdings "do not protect any reasonably foreseeable harm to the interests protected by Exemption 5."  Pls.' Mem. at 7.  With respect to the attorney work product privilege, the Department represents that "[g]iven the unique structure of the Special Counsel's Office, as well as the role of attorneys at every investigative phase, including witness interviews, disclosing the contents of the FD-302s at issue here would [ ] indirectly reveal the mental impressions, assessments, and thought processes of the attorneys involved in the investigation and of the Special Counsel in particular, contrary to the purpose of the attorney work product doctrine," which would "inhibit the flexibility with which future special counsels might structure and pursue investigations."  Weinsheimer Decl. ¶ 38.  And, as to the presidential communications privilege, the Department represents that disclosure of communications intended to advise the President and allow him to discharge his duties under Article III of the Constitution would stifle the Presidents and their advisers from being able "to confidently engage in confidential decision-making without fear that their deliberations will be open to public view," and that "[c]andid discussions will naturally be chilled or inhibited, and the efficiency of government policy making would suffer."  Brinkmann 3d Decl. ¶ 32.  The Department further represents that "disclosing transition deliberations would jeopardize the ability of future Presidents-elect to have full and candid discussions with their advisers" and "would undermine the ability to protect the confidentiality of discussions on the same matters after the President-elect takes office and further damage the quality of presidential decision-making."  Id.  The Court concludes that the Department has sufficiently identified the foreseeable harm that would result if the information withheld pursuant to the attorney work product privilege and the presidential communications privilege were disclosed.

A.      **Attorney Work Product Privilege**

The attorney work product privilege "shields materials prepared in anticipation of

litigation or for trial by or for another party or by or for that other party's representative

(including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

McKinley v. Bd. of Governors of the Fed. Reserve Sys., 647 F.3d 331, 341 (D.C. Cir. 2011)

(internal quotations and citation omitted).  This privilege protects "factual materials prepared in

anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal

theories." Heggestad v. U.S. Dep't of Justice, 182 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing Tax

Analysts v. Internal Revenue Serv., 117 F.3d 607, 620 (D.C. Cir. 1997)).

Here, the information withheld by the Department from the FD-302s pursuant to

Exemption 5 based on the attorney work product privilege falls squarely within the scope of the

privilege.  According to the Department, the Special Counsel's Office, which was staffed with

attorneys and FBI investigative personnel who were "assigned to work under the direction of the

Special Counsel," Weinsheimer Decl. ¶ 26, conducted approximately 500 witness interviews

during its investigation into Russian interference in the 2016 United States presidential election,

see id. ¶ 20, "for the purpose of gathering or otherwise assessing the extent to which evidence

could be obtained to support criminal charges and that therefore could be presented to a grand

jury and at trial," id. ¶ 25, and in anticipation of "the potential for criminal charges," id. ¶ 21.

The plaintiffs argue that the "[FD-]302[s] [ ] are not subject to work product protection"

because "the Special Counsel prosecutors themselves 'did not consider FD-302s as their work

product'" and "treated the FD-302s as the FBI's document[s]."  Pls.' Opp'n at 6 (quoting

Weinsheimer Decl. ¶ 34).[5]   However, although "FBI investigative personnel drafted the

FD-302s," the Department represents that "attorneys would review the draft FD-302 and, if

necessary, suggest edits."  Weinsheimer Decl. ¶ 31.  The Department further represents that "[i]n

addition to participating in the selection of these witnesses for interviews, prosecutors discussed

and determined . . . the investigative strategy for witness interviews," id. ¶ 26, that, "[a]s a

general matter, outlines were prepared prior to the witness interview," id. ¶ 27, either by an

attorney or by an FBI investigative personnel with edits and comments from an attorney, see id.,

and that the "[a]ttorneys led, participated in, or attended all the interviews for which the

[Department] has asserted the attorney work product doctrine," id. ¶ 26.  And, "[i]n the FOIA

context, [the District of Columbia Circuit] ha[s] long held that documents prepared by

non-attorneys in anticipation of litigation may also be protected by the privilege."  Judicial

Watch, Inc. v. U.S. Dep't of Justice, 806 F. App'x 5, 6–7 (D.C. Cir. 2020) (citations omitted)

(concluding that, in light of the facts that "the information captured in the [ ] FD-302s was

'obtained because of the prospect of litigation,' . . . [t]he interviews were 'conducted at the

direction of the career [Department] prosecutors assigned,' [ ] prosecutors participated in

determining the investigative strategy for each interview and in questioning the witnesses, [and]

. . . all of the [Assistant United States Attorneys] on the investigation team reviewed the FD-302s

at issue," the FD-302s "fit within the attorney work[ ]product privilege for purposes of

Exemption 5" because they reflected "'the thoughts and opinions of counsel developed in

---

[5] The plaintiffs further argue that the "information provided in witness proffer statements is not attorney work product," and that "when entering into a proffer agreement and disclosing information to investigators, witnesses waive any privilege that might exist in the information provided."  Pls.' Mem. at 14 (capitalization removed). However, the Court concludes that this argument is without merit.  As the Department correctly notes, "the FD-302s constitute work product regardless of whether the interview was conducted pursuant to a witness proffer agreement."  Defs.' Mem. at 44.  The plaintiffs do not cite—and the Court is unable to locate—any authority suggesting that FD-302s summarizing interviews conducted pursuant to a witness proffer agreement would somehow lose their characterization as attorney work product by the sheer fact that the interview was conducted pursuant to a witness proffer agreement.

anticipation of litigation' so as to fall within the attorney work[ ]product privilege" (quoting United States v. Deloitte LLP, 610 F.3d 129, 136 (D.C. Cir. 2010))). In fact, because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial[,]" the Supreme Court has stated that "[i]t is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." United States v. Nobles, 422 U.S. 225, 238–39 (1975). Where, as here, "[l]aw enforcement agents . . . [were] acting in a supportive role to an attorney preparing a case for indictment or prosecution, the attorney work[ ]product protection applies to their work product under FOIA Exemption 5." Judicial Watch, Inc. v. U.S. Dep't of Justice, 391 F. Supp. 3d 43, 52 (D.D.C. 2019), aff'd, 806 F. App'x 5 (D.C. Cir. 2020).

The plaintiffs further argue that the FD-302s are not protected by the attorney work product privilege because, "although the questioning of the witnesses was often directed by government attorneys, the FBI agents responsible for the content of the [FD-]302[s] [ ] were specifically required to exclude prosecutors' 'impressions, opinions or analyses.'" Pls.' Opp'n at 7 (quoting Hardy Decl. ¶ 7 n.2). However, the plaintiffs ignore that the FD-302s, as "factual recitations of what occurred during the interview," Weinsheimer Decl. ¶ 38, are also protected by the attorney work product privilege, see Heggestad, 182 F. Supp. 2d at 8; see also Tax Analysts, 117 F.3d at 620 n.11 (alteration in original) ("Federal Rule of Civil Procedure 26(b)(3) allows discovery of materials prepared in anticipation of litigation only upon a showing of 'substantial need,' but in all cases 'the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation.' The point of the rule is that while all materials prepared in anticipation of litigation are work product and protected from discovery by other parties, a sufficient showing of need may overcome that

protection with respect to factual materials, but not with respect to deliberative materials. This does not mean that factual materials are not work product; it means only that they receive a lower degree of protection under the Federal Rules than deliberative work product." (alteration in original)); Williams & Connolly v. Sec. Exch. Comm'n, 662 F.3d 1240, 1243 (D.C. Cir. 2011) ("Although work product protection may be overcome for cause in civil cases, any materials disclosed for cause are not 'routinely' or 'normally' discoverable and, for that reason, are exempt under [the] FOIA." (citations omitted)).  Accordingly, to the extent that the information contained in the FD-302s are factual in nature, they are nevertheless protected by the attorney work product privilege and are exempt from disclosure pursuant to Exemption 5 of the FOIA.

The plaintiffs also claim that applying the attorney work product privilege to the FD-302s is inappropriate because "the [FD-]302[s] [ ] would be provided to criminal defendants in discovery."  Pls.' Opp'n at 6–7 (first citing Weinsheimer Decl. ¶ 34, then citing Hardy Decl. ¶ 7 n.2).  However, "[t]he decision of the [ ] Department to disclose the . . . [FD-302s] in [a] criminal proceeding has no bearing on whether [the] FOIA permits the [Department] to withhold [such information]."  Williams & Connolly, 662 F.3d at 1244.  In fact, "[i]n criminal trials, evidentiary privileges may give way for any number of reasons," id. (citation omitted), and "disclosure in criminal trials is based on different legal standards than disclosure under [the] FOIA, which turns on whether a document would usually be discoverable in a civil case," id. at 1245.  Therefore, contrary to the plaintiffs' assertion, the FD-302s are accorded protection from disclosure by Exemption 5.

The plaintiffs also contend that the Department has "waived th[e] [attorney work product] privilege with respect to much of [its] redactions" because the Department "officially

acknowledged [the redacted information] in the Mueller Report." Pls.' Mem. at 10.[6] Although

the Department "cannot rely on an otherwise valid exemption claim to justify withholding

information that has been 'officially acknowledged' or is in the 'public domain,'" Davis v. U.S.

Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (citing Afshar v. Dep't of State, 702 F.2d

1125, 1130–34 (D.C. Cir. 1983)), "the fact that information exists in some form in the public

domain does not necessarily mean that official disclosure will not cause harm cognizable under a

FOIA exemption," Wolf v. Cent. Intelligence Agency, 473 F.3d 370, 378 (D.C. Cir. 2007)

(citation omitted), and "a plaintiff asserting a claim of prior disclosure must bear the initial

burden of pointing to specific information in the public domain that appears to duplicate that

being withheld," Afshar, 702 F.2d at 1130; see also Wolf, 473 F.3d at 378 ("[T]he inquiry turns

on the match between the information requested and the content of the prior disclosure."). Here,

the plaintiffs provide "a non-exhaustive list of some of the key, substantive information [that] the

[Department allegedly] improperly redacted from the[] [FD-]302s]," Pls.' Mem. at 11, as well as

"a spreadsheet detailing each found instance of material that is redacted from the[] [FD-]302s but

is cited in the Mueller Report," id. at 11 n.6. However, the plaintiffs presuppose that the FD-

302s "appear[ ] to duplicate that being withheld," Afshar, 702 F.2d at 1130, "mirror precisely the

information that [they have] requested," Cottone v. Reno, 193 F.3d 550, 555 (D.C. Cir. 1999), or

"precisely track the records sought to be released," Assassination Archives & Research Ctr. v.

Cent. Intelligence Agency, 334 F.3d 55, 60 (D.C. Cir. 2003). Moreover, the plaintiffs also fail to

---

[6] The plaintiffs further claim that the Department's "presentation[ ] at the various criminal trials stemming from the Special Counsel's investigation represent official acknowledgments of information contained in the [FD-]302s at issue," and that the Department "should be directed to provide this information as well." Pls.' Mem. at 13 n.7. However, the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld is on the plaintiffs, see Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (citation omitted) (stating that the burden is on the plaintiff because "the task of proving the negative—that information has not been revealed—might require the government to undertake an exhaustive, potentially limitless search."), and this broad and conclusory allegation fails to meet that burden.

adequately disprove the Department's representation that it "did not withhold any information

pursuant to Exemption 5 that is waived by its release in the Mueller Report."  Brinkmann 3d

Decl. ¶ 40.  According to the Department, "[i]f the information in a given FD-302 was as specific

as that information released in the Mueller Report, . . . that information was released in the FD-

302s produced to [the] [p]laintiffs in this litigation," but that "[i]f the information released in the

Mueller Report did not match the information in a given FD-302, then [it was] determined that

the Department had not waived its ability to withhold the information pursuant to FOIA

Exemption 5."  Id. ¶ 39.  Contrary to the plaintiffs' claim that the Department's "narrow, word-

for-word filter violates FOIA's official acknowledgment waiver doctrine," Pls.' Opp'n at 11, the

Department only maintains that information was withheld pursuant to the attorney work product

privilege "if releasing a portion of a given FD-302 would provide the public with new

information that was not revealed in the redacted Mueller Report," Brinkmann 3d Decl. ¶ 39.

Because the plaintiffs have offered no basis to discredit the Department's representations,

Brinkmann's third declaration must be accorded the "presumption of good faith" that attaches to

agency declarations in FOIA actions.[7]  SafeCard Servs., Inc. v. Sec. Exchange Comm'n, 926

F.2d 1197, 1200 (D.C. Cir. 1991).  Therefore, the Court rejects the plaintiffs' argument that the

Department waived the attorney work product privilege because of information contained in the

Mueller Report.  Cf. Protect Democracy Project, Inc. v. U.S. Nat'l Sec. Agency, Civ. Action No.

17-1000 (CKK), 2020 WL 1331996, at *10 (D.D.C. Mar. 23, 2020) (holding that the plaintiff did

not show that the government officially acknowledged information such that disclosure of the

---

[7] Because the plaintiffs have not rebutted this presumption of good faith, the Court will deny the plaintiffs' "request that the Court perform an in camera review of the Kaveladze, Beniaminov, Rtskhiladze, and Gerson [FD-]302[s] [ ] . . . to determine whether the substance of the withheld material aligns with the information published in the Mueller Report."  Pls.' Opp'n at 13.

information is appropriate over an otherwise valid exemption claim  because "the information disclosed and released in the Mueller Report is not sufficiently specific").

The plaintiffs also argue that "[i]n the event the Court determines [that the Department] did not waive th[e] [attorney work product] privilege, [the Department] must still disclose the information because it provides evidence of extreme governmental misconduct."  Pls.' Mem. at 10.  Specifically, the plaintiffs claim that the government misconduct exception applies because "[t]he details recounted in these [FD-]302s concern allegations of the most extreme government misconduct"—"the Trump Tower Moscow project and the June 9, 2016 Trump Tower meeting." Id. at 17.  To invoke government misconduct as grounds to defeat the attorney work-product privilege, "the [plaintiffs] must establish more than a bare suspicion in order to obtain disclosure," but rather "must produce evidence that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred."  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004); see also SafeCard Servs., 926 F.2d at 1205–06 ("[U]nless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity[,] . . . there is no reason to believe that the incremental public interest in such information would ever be significant."); Moody v. Internal Revenue Servs., 654 F.2d 795, 800 (D.C. Cir. 1981) (recognizing that "at least in some circumstances, a lawyer's unprofessional behavior may vitiate the work product privilege").  However, the plaintiffs' "allegation[s] do[] not concern any allegedly egregious discussion [regarding what the Department has] withh[e]ld[], but rather allegedly egregious underlying conduct;" therefore, the plaintiffs' "effort to avail [themselves] of the government misconduct exception accordingly is suspect[.]" Judicial Watch, Inc. v. U.S. Dep't of State, 285 F. Supp. 3d 249, 255 (D.D.C. 2018); see also Bartko v. U.S. Dep't of Justice, Civ. Action No. 13-1135 (JEB), 2014 WL 12787631, at

*8 (D.D.C. Oct. 8, 2014) (citation omitted) ("[I]t is not enough for [the plaintiff] to allege general malfeasance in his prosecution; instead, he must show that the exempted records themselves constitute or are the fruit of wrongdoing.  This he has not done.  None of his atmospheric claims of wrongdoing calls into question the propriety of any individual withheld record.  [The plaintiff], moreover, cannot make a blanket allegation of attorney misconduct in the hopes of uncovering evidence of that misconduct, as he seeks to do here.").  The plaintiffs have failed to produce any evidence showing "that the [Department] [handling its] FOIA request is engaged in illegal activity," SafeCard Servs., 926 F.2d at 1205–06, or "unprofessional behavior [on the part of the Department's lawyers that] [would] vitiate the work product privilege," Moody, 654 F.2d at 800.  Lacking any such evidence of misconduct on the part of the Department, the plaintiffs' argument must be rejected.[8]

In sum, the Court concludes that the Department appropriately withheld information from the FD-302s pursuant to the attorney work product privilege and must therefore grant the Department's motion for partial summary judgment and deny the plaintiffs' motion for partial summary judgment as to the Department's withholdings pursuant to the attorney work product privilege.

**B.     Presidential Communications Privilege**

According to the Department, it has "withheld three types of communications under the presidential communications privilege: (1) communications between [g]overnment officials or staff during the [a]dministration in connection with presidential decision-making;

---

[8] The plaintiffs also claim that they "are [ ] especially concerned by [the Department's] pattern of redacting negative information while disclosing to [the] [p]laintiffs information favorable or benign to the Trump Administration" and that "[s]elective disclosures of favorable information to a government official is plainly unlawful under [the] FOIA." Pls.' Mem. at 18.  However, while the plaintiffs' position is understandable, under the current state of the law, they have failed to provide the Court with sufficient evidence that calls into question the Department's redactions in this case.  Therefore, the plaintiffs' argument is not supported by the record or existing law on the subject.

(2) communications between transition officers or staff which concern potential presidential decisions after the [i]nauguration; and (3) communications involving private parties concerning presidential decision-making."  Defs.' Mem. at 19.  Because the Department represents that "the only FD-302s for which [the Department] redacted information under the presidential communications privilege but not under the attorney work product doctrine are the FD-302s memorializing the interviews of [ ] Rosenstein, [Michael] Cohen, and [Deputy National Security Advisor K.T.] McFarland," Defs.' Reply at 12 n.5 (citing Brinkmann 3d Decl., Ex. A (OIP Vaughn Index)), the Court will therefore only focus on the Department's withholding of information from the FD-302s memorializing McFarland's October 17, 2017 and September 14, 2017 interviews ("McFarland FD-302s"), the FD-302 memorializing Rosenstein's May 23, 2017 interview ("Rosenstein FD-302"), and the FD-302 memorializing Cohen's August 7, 2018 interview ("Cohen FD-302").

The presidential communications privilege "protects 'communications directly involving and documents actually viewed by the President,' as well as documents 'solicited and received' by the President or his 'immediate White House advisers [with] . . . broad and significant responsibility for investigating and formulating the advice to be given the President.'"  Loving v. U.S. Dep't of Defense, 496 F. Supp. 2d 101, 107 (D.D.C. 2007), aff'd, 550 F.3d 32 (D.C. Cir. 2008) (alteration in original) (quoting Judicial Watch, Inc. v. U.S. Dep't of Justice, 365 F.3d 1108, 1114 (D.C. Cir. 2004)).  As this Circuit has explained, "[t]he privilege covers documents reflecting 'presidential decision[-]making and deliberations,' regardless of whether the documents are predecisional or not[.]"  Loving, 550 F.3d at 37–38 (quoting In re Sealed Case, 121 F.3d 729, 744–45 (D.C. Cir. 1997)); see also Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 449 (1977) (stating that the privilege is "limited to communications 'in performance of [a

President's] responsibilities' 'of his office,' and made 'in the process of shaping policies and making decisions.'" (citations omitted)).

As an initial matter, the Court notes that, contrary to the plaintiffs' positions, see Pls.' Opp'n at 16 ("The President himself specifically and publicly waived any executive privilege during the Mueller investigation[.]"); id. at 21 (arguing that "the privilege cannot apply because the President has not personally asserted it"), the presidential communications privilege has not been waived and need not be personally asserted by the President to apply.  Courts in this district have routinely concluded that it is not required that the President personally invoke the presidential communications privilege for the privilege to apply under Exemption 5 in FOIA cases.  See, e.g., Buzzfeed, Inc. v. Fed. Bureau of Investigation, Civ. Action No. 18-2567 (BAH), 2020 WL 2219246, at *13–14 (D.D.C. May 7, 2020) (citation omitted) ("Judges on this Court [ ] have consistently rejected the argument that personal invocation is required to apply the presidential communications privilege in the context of Exemption 5."); Am. Ctr. for Law & Justice v. United States Dep't of State, 330 F. Supp. 3d 293, 308–09 (D.D.C. 2018) (concluding that personal assertion of the presidential communications privilege by the President is not required under the FOIA because withholding documents in response to a FOIA request is materially different than a privilege asserted in civil discovery); Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice, 584 F. Supp. 2d 65, 80 (D.D.C. 2008) (concluding that "the presidential communications privilege does not need to be asserted by the President himself" to withhold documents under Exemption 5 in a FOIA case); Loving, 496 F. Supp. 2d at 108 (D.D.C. 2007) ("[P]ersonal invocation is not required as to FOIA requests."); Lardner v. U.S. Dep't of Justice, Civ. Action No. 03-0180 (JDB), 2005 WL 758267, at *7 (D.D.C. Mar. 31, 2005) ("[T]he personal invocation of the presidential communications privilege is [ ] a civil discovery rule that

should not be imported into the FOIA analysis.").  Furthermore, although the plaintiffs claim that

the President has waived the executive privilege by publicly stating that he "had the RIGHT to

use [e]xecutive [p]rivilege," but that he "did[] n[o]t!" Pls.' Opp'n at 16 (quoting

@realDonaldTrump, Twitter (Apr. 18, 2019, 5:31 PM),

https://twitter.com/realdonaldtrump/status/1118990550235877376), they have not provided the

context in which the President's statement was made to suggest that his statement was made in

reference to the specific invocation of the presidential communications privilege.  Therefore,

because the President "did not explicitly declare that [he] . . . would forego any and all claims of

privilege that might apply to the [FD-302s]," In re Sealed Case, 121 F.3d at 740, and because "a

waiver [of this privilege] should not be lightly inferred," id. at 741 (quoting SCM Corp. v.

United States, 82 Cust. Ct. 351, 356 (1979)); see also Nixon v. Sirica, 487 F.2d 700, 717 (D.C.

Cir. 1973) (concluding that President Nixon's statement that "[e]xecutive privilege will not be

invoked" did not constitute a waiver of the executive privilege), the Court concludes that the

President did not waive the presidential communications privilege in regard to the information

withheld by the Department.

Here, the information withheld pursuant to the presidential communications privilege

from the McFarland FD-302s, the Rosenstein FD-302, and the Cohen FD-302 are clearly

protected by the privilege.  The Department's representations show that it withheld descriptions

of communications that involve the President or his advisers.  According to the Department, the

information withheld from the McFarland FD-302s and the Rosenstein FD-302 either falls within

the Department's first or second categories of communications—communications between

government officials or staff during the administration in connection with presidential decision-

making, and communications between transition officers or staff that concern potential

presidential decisions after the inauguration, respectively, <u>see</u> Brinkmann 3d Decl., Ex. A (OIP

Vaughn Index) at 1–2, while the information withheld from the Cohen FD-302 falls within the

third category of communications—communications involving private parties concerning

presidential decision-making, <u>see</u> <u>id.</u>, Ex. A (OIP Vaughn Index) at 1; Brinkmann 4th Decl. ¶ 5.[9]

In regard to the first category, the Department represents that it withheld information that

"described communications with immediate advisers in the Office of the President, and, in some

instances, with the President himself," Defs.' Mem. at 20 (citing Brinkmann 3d Decl. ¶ 21), and

that

> [t]hese communications involved at least one of the following individuals:
> President Donald Trump; Vice President Michael Pence; Chief of Staff John
> Kelly; Chief of Staff Reince Priebus; Counsel to the President Donald McGahn;
> National Security Advisor Michael Flynn; Special Counsel to the President
> Emmett Flood; Press Secretary Sean Spicer; Deputy Press Secretary (and later,
> Press Secretary) Sarah Huckabee Sanders; Staff Secretary Robert Porter; Chief
> Strategist and Senior Adviser to the President Stephen Bannon; Deputy Chief of
> Staff Richard Dearborn; Deputy Counsel to the President and Legal Adviser to the
> National Security Council John Eisenberg; Deputy National Security Advisor
> K.T. McFarland; Deputy Counsel to the President Uttam Dhillon; Chief of Staff
> to the Counsel to the President Annie Donaldson; Senior Advisor to the President
> Jared Kushner; Senior Advisor to the President Ivanka Trump; Director of
> Strategic Communications (and later, Director of Communications) Hope Hicks;
> and Senior Advisor to the President Stephen Miller[,]

<u>id.</u> (citing Brinkmann 3d Decl. ¶ 22).  According to the Department, the third category of

information withheld describes communications between a private party and one or more of the

individuals listed above.  <u>See</u> Defs.' Mem. at 24; <u>see also</u> Brinkmann 3d Decl. ¶¶ 27, 29.  As to

the second category, the Department represents it withheld information describing

communications "between [t]ransition officials or staff . . . , where at least one party to the

---

[9] The Court notes that the Department's representations in the fourth Brinkmann declaration has mooted the
plaintiffs' argument that it is "difficult to understand exactly what privilege categories even apply to which
redactions." Pls.' Opp'n at 20.  In this declaration, the Department represents that information was withheld
pursuant to the presidential communications privilege "only to particular, discrete portions" appearing on FBI Bates
pages 650 through 653 of the Rosenstein FD-302 and on FBI Bates page 444 of the Cohen FD-302.  <u>See</u> Brinkmann
4th Decl. ¶ 5.

communication is either the President-elect himself, a [t]ransition official who has been

designated to be an immediate adviser to the President-elect, or a member of the staff of such an

official," Defs.' Mem. at 22 (citing Brinkmann 3d Decl. ¶ 24), and that these communications

> included one or more of the following individuals: President-elect Donald Trump;
> Vice President-elect and Transition Chair Michael Pence; Transition Vice Chair
> Jefferson Sessions; Transition Vice-Chair and National Security Adviser
> designate Michael Flynn; Transition Vice-Chair and Deputy National Security
> Advisor-designate K.T. McFarland; Transition Executive Committee and Chief of
> Staff-designate Reince Priebus; and members of the Transition Executive
> Committee, Ivanka Trump, Jared Kushner, Stephen Bannon, and Kellyanne
> Conway[,]

id. (citing Brinkmann 3d Decl. ¶ 25).

All three of the Department's categories describe communications that involve the types

of advisers—individuals with "broad and significant responsibility for investigating and

formulating the advice to be given the President," see Loving, 550 F.3d at 37 (citation

omitted)—contemplated as being covered by the presidential communications privilege.

Contrary to the plaintiffs' argument that "several of the [FD-]302s redacted pursuant to the

[presidential communications] privilege reflect interviews with people . . . who are not, and

never have been, federal government officials," Pls.' Mem. at 22; see also Pls.' Opp'n at 20

(internal quotation marks and citation omitted) (arguing that "it is simply implausible that the

President's former personal lawyer [is a] member[] of an immediate White House adviser's staff

who ha[s] broad and significant responsibility for investigating and formulating the advice to be

given the President on the particular matter to which the communications relate" (internal

quotation marks omitted)), "communications made by presidential advisers in the course of

preparing advice for the President come under the presidential communications privilege even

when these communications are not made directly to the President," and "'[g]iven the need to

provide sufficient elbow room for advisers to obtain information from all knowledgeable

19

sources,' the [presidential communications] privilege must apply both to communications which these advisers solicited and received from others as well as those they authored themselves," and "also extend[s] to communications authored or received in response to a solicitation by members of a presidential adviser's staff[.]"  In re Sealed Case, 121 F.3d at 752 (emphasis added).

The plaintiffs also challenge the Department's withholdings, arguing that the Department "makes the blanket claim [that] all of these communications involve matters of presidential decision[]making."  Pls.' Opp'n at 18.   The Court concludes, however, that the Department's representations sufficiently establish that the withheld information concerned presidential decision-making and deliberations.  The plaintiffs fail to acknowledge the Department's representation that the subjects of the communications withheld under the presidential communications privilege "related to the following areas of actual or potential presidential decision-making:" (1) "[p]ossible actions to be taken in the conduct of foreign relations," (2) "[p]ossible actions to be taken with respect to nomination, appointment or removal of presidential appointees," (3) "[p]ossible presidential action documents (whether styled as Executive Orders, Presidential Memoranda, Proclamations, National Security Presidential Memoranda, or other forms)," and (4) "[p]ossible official public statements, which the President personally participated in developing or was anticipated to participate in developing." Brinkmann 3d Decl. ¶¶ 23, 26, 30.[10]  And, deliberations about such decisions are protected by the presidential communications privilege because they involve official government matters.  Cf. In re Sealed Case, 121 F.3d at 758 (determining that press briefings fell within the presidential communications privilege); Protect Democracy Project, 2020 WL 1331996, at *5 (finding that a

---

[10] The Court notes that the Department's representation that the withheld information pertains to communications concerning "[p]ossible official public statements, which the President personally participated in developing or was anticipated to participate in developing," only applies to information withheld under the first and third categories. See Brinkmann 3d Decl. ¶¶ 23, 30.

communication "that directly related to presidential decision-making with respect to foreign relations" falls within the presidential communications privilege); Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau, 60 F. Supp. 3d 1, 13 (D.D.C. 2014) ("Communications generated in the course of advising the President in the exercise of his appointment and removal power are clearly protected by  the presidential communications privilege.  The appointment and removal power are 'a quintessential and nondelegable Presidential power . . . [T]he President himself must directly exercise the presidential power of appointment or removal.  As a result, in this case there is assurance that even if the President were not a party to the communications over which the government is asserting presidential privilege, these communications nonetheless are intimately connected to his presidential decision[-]making.'" (quoting In re Sealed Case, 121 F.3d at 752–53)).  Moreover, contrary to the plaintiffs' argument that the Department's description of communications concerning "[p]ossible official public statements . . . is simply too conclusory to meet [the Department's] burden or to allow [the] [p]laintiffs or the Court to determine whether they are actually the kinds of official decisions that the privilege protects," Pls.' Opp'n at 19,[11] the Department's declaration is sufficiently specific for the Court to conclude that the Department has appropriately withheld information pursuant to the presidential communications privilege because, as the Department represents, the withheld information describes communications concerning "possible official public statements[] [that] the President personally participated in developing or was anticipated to participate in developing,"

---

[11] The plaintiffs also claim that "reading many of the redactions in context strongly suggests that [the Department] has withheld information unrelated to any presidential decisions or 'official' presidential public statements."  Pls.' Opp'n at 19.  However, as previously noted, absent a showing of bad faith, see SafeCard Servs., 926 F.2d at 1200, the Court must accord the "presumption of good faith" to the Department's representation that the information withheld pursuant to the presidential communications privilege pertains to "matters of presidential decision-making," Brinkmann 3d Decl. ¶ 20.

Brinkmann 3d Decl. ¶¶ 23, 30, which is an "official government matter[]" that falls within the privilege, In re Sealed Case, 121 F.3d at 752.

In sum, the Court concludes that the Department's withholdings pursuant to the presidential communications privilege are appropriate and must therefore grant the Department's motion for partial summary judgment and deny the plaintiffs' motion for partial summary judgment as to the Department's withholdings pursuant to the presidential communications privilege.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the Department has appropriately withheld information from the FD-302s pursuant to Exemption 5 of the FOIA.  Accordingly, the Court will grant the Department's motion for partial summary judgment and deny the plaintiffs' motion for partial summary judgment.

**SO ORDERED** this 3rd day of September, 2020.[12]

REGGIE B. WALTON
United States District Judge

---

[12] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.