**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

JASON LEOPOLD, BUZZFEED, INC.,  )
  )
     Plaintiffs,  )
  )
     v.  )     Civil Action No. 19-cv-1278 (RBW)
  )
UNITED STATES DEPARTMENT OF  )
JUSTICE, et al.  )
  )
     Defendants.  )
_____  )
  )
CABLE NEWS NETWORK,  )
  )
     Plaintiff,  )
  )
     v.  )     Civil Action No. 19-cv-1626 (RBW)
  )
FEDERAL BUREAU OF  )
INVESTIGATION,  )
  )
     Defendant.  )
_____  )

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION OF THE COURT'S AMENDED ORDER AND REQUEST FOR EXPEDITED RULING

Plaintiffs baselessly attribute the Department of Justice's motion for clarification and reconsideration as an attempt to delay production of certain FD-302s to Plaintiffs until after the Presidential election. But the Federal Bureau of Investigation is neither seeking to delay resolution of this case, nor is the FBI attempting to shield any FD-302s from disclosure until after the election. Far from it. The FBI has already processed and released to Plaintiffs 636 FD-302s, for a total of 4,233 pages, and the FBI will have completed its processing of all of the FD-302s from the Special Counsel's investigation by the October 1 production. The FBI also has processed records at an

expedited rate and in the order that Plaintiffs requested under the most unusual and demanding of circumstances: the FBI first processed the FD-302s that the Department made available to the U.S. House Committee on the Judiciary and the U.S. House Permanent Select Committee on Intelligence, *see* Dkt. 36, 46; the FBI then processed all the FD-302s that were cited in the Mueller Report, *see* Dkt. 60; and then the FBI processed the FD-302s on Plaintiffs' "priority lists," *see* Dkt. 50-2.  Over the past few months, the FBI has made these productions despite a global pandemic that shuttered much of the country for a period of time.  Dedicated FBI employees have worked tirelessly, including over nights and weekends, and at personal risk to comply with the Court's orders and the FBI's Freedom of Information Act (FOIA) obligations.  Accordingly, there is simply no basis to conclude that the Department's motion is motivated by an attempt to delay this case.

The Department seeks partial relief from the Court's Amended Order for two reasons. First, it is not clear from the Amended Order whether it applies only to *pending* consultations, or whether it applies to any consultation/coordination requests that the FBI identifies in the month of September and sends to other governmental agencies for review in October.  If the Court's October 9 deadline for the FBI to receive final responses to all consultation/coordination requests applies to those requests identified in September, the Amended Order would leave those other governmental agencies mere days to complete their review of the FD-302s.  That is simply not enough time for agencies to review material that could be classified or contain law enforcement sensitive information, especially given that certain other governmental agencies do not yet have fully staffed FOIA processing units due to the ongoing pandemic.  Second, the Amended Order appears to require the disclosure of the identities of consulting agencies at the October 7 status conference.  But revealing the identities of the agencies with which the FBI consulting at the

October 7 status conference could result in the disclosure of classified information or information concerning pending law enforcement proceedings, which would be exempt from disclosure under the FOIA.  These are legitimate concerns, supported by sworn declarations, that the Court should not disregard in the name of having all of the FD-302s processed and produced to Plaintiffs before the Presidential election.  Given the productions that have been made thus far, including public release of a more than 400-page report by the Special Counsel that contained limited redactions, Plaintiffs cannot seriously contend that the public lacks substantial information concerning the Special Counsel and FBI Russia investigation.[1]

## ARGUMENT

### I.     The Amended Order Should Not Apply to Consultation/Coordination Requests Identified by the FBI in September.

Plaintiffs argue that the Department "seeks a wholesale revision" of the Amended Order. Pls.' Opp'n 2.  Not so.  To be clear, the Department does not seek any relief from the October 9 or the October 30 deadlines for pending consultation/coordination requests.  Nor does the Department seek any relief for the consultation/coordination requests that the FBI identified in August and sent to other governmental agencies in September.  *Cf. id.* at 4 (setting forth an argument about the September consultation/coordination requests even though those requests are not at issue in the Department's motion).  Rather, the Department seeks relief from the October 9 and October 30 deadlines only for those FD-302s that the FBI identifies during its processing this month (September) as requiring consultation with other governmental agencies prior to release to Plaintiffs.  The Department seeks relief from the October 9 and October 30 deadlines for this small

---

[1] Beyond these productions, the public also has available to it a nearly 500-page report from the Department's Office of the Inspector General that touches on aspects of the Russia investigation, as well as five volumes of information released following an investigation by the Senate Select Committee on Intelligence.  *See* https://www.justice.gov/storage/120919-examination.pdf (OIG report); https://www.intelligence.senate.gov/press/ senate-intel-releases-volume-5-bipartisan-russia-report (Senate Intelligence Committee press release with links to the five volume report).

subset of consultation/coordination requests because these requests have not yet been fully processed by the FBI, will not be fully processed until the end of September, and thus will not be sent to the other governmental agencies for review until after the upcoming production to Plaintiffs on Thursday, October 1.

Relief is warranted for those consultation/coordination requests because the other governmental agencies will have mere days to review the FD-302s, determine whether the information in the FD-302s is classified (if applicable) or exempt from disclosure under the FOIA, and provide a final response to the FBI. This compressed timeframe leaves virtually no time for any discussions concerning the FD-302s between the FBI and the other governmental agencies, or for the FBI to send those same FD-302s to a third governmental agency for review if necessary. Third Seidel Decl. ¶ 16; *see* Second Seidel Decl. ¶ 22 (describing how a "back-and-forth between the FBI and the [other governmental agency] is necessary to provide sufficient information to [that agency] so [that agency] can properly address whether any of its material in the 302 is exempt" and how "[i]n some instances, [other governmental agencies] have recognized another [agency's] equities within the consult and recommended the FBI also consult to that [agency] concerning its equities").

Plaintiffs criticize the FBI for its purported delay in sending the consultation/coordination requests to other governmental agencies for review. Pls.' Opp'n 2–4. In doing so, Plaintiffs entirely ignore the standard process the FBI has followed in this case (and thousands of others) to address information or equities of other governmental agencies within the FBI's records. *See* Second Seidel Decl. ¶¶ 15, 17. As explained in detail in the FBI's declarations, when the FBI identifies such information, the FBI does not and cannot immediately send a FD-302 to another

governmental agency for consultation.[2]  *See* Third Seidel Decl. ¶ 8.  Instead, the FBI must finish

processing the FD-302s before it sends the records to other governmental agencies to ensure any

classified information is identified and handled properly by the other governmental agency.  *Id.*

Specifically, the FD-302s that contain classified information must be handled by personnel with

the proper security clearances and stored by the other governmental agency in a SCIF or in a GSA-

approved container.  *Id.*  Failure to properly identify and handle classified material could result in

an inadvertent disclosure of that material.  *Id.* ¶¶ 11–12.  Such a disclosure could result in "foreign

intelligence services or other malicious actors gaining access to Classified National Security

Information ('CSNI'); compromised investigations or operations; espionage by malicious insiders;

unintentional data spills; unauthorized disclosure of classified information; and non-compliance

with federal laws or policy."  *Id.* ¶ 11.

Many of the FD-302s at issue in this case potentially contain classified information, which

is hardly surprising given that the witness interviews took place during a counterintelligence

investigation.  Because many of the FD-302s potentially contain classified information, the FBI

must ensure it follows its standard protocols for identifying and handling such information before

consultation/coordination requests are sent to other governmental agencies to prevent inadvertent

disclosure of classified information.  Accordingly, the FBI has not delayed in sending any

upcoming consultation/coordination requests to other governmental agencies and cannot "speed

up its review and referral process," as Plaintiffs suggest, Pls.' Opp'n 4, without risking inadvertent

disclosure of classified information.  The other governmental agencies that receive consultation

---

[2] In addition to the issues with handling classified information, the FBI's FOIA Document Processing System ("FDPS") has a technological limitation that prohibits the FBI from creating a consultation package before the FBI has finished its processing and finalized the "work item."  Second Seidel Decl. ¶ 13.

requests in October should not have to provide a rushed final response to FBI simply because FBI followed its standard practice to prevent the disclosure of classified information.

## II.     The Court Should Not Require the Disclosure of the Identities of the Consulting Agencies at the October 7 Status Conference.

Plaintiffs argue that the First Amendment provides that they are entitled to disclosure of the identities of the consulting agencies at the October 7 status conference.  Pls.' Opp'n at 5–6. But, as Plaintiffs acknowledge, "the D.C. Circuit has not explicitly recognized the First Amendment access right in civil cases."  *Id.* at 5 n.1 (citing *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 9–10 (D.D.C. 2009)).  And "the First Amendment does not 'mandate[ ] a right of access to government information or sources of information within the government's control.'" *Ctr. for Nat. Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 934 (D.C. Cir. 2003) (quoting *Houchins v. KQED*, 438 U.S. 1, 15 (1978) (plurality opinion)) (citing *Houchins*, 438 U.S. at 16 (Stewart, J., concurring in the judgment) (the First Amendment "do[es] not guarantee the public a right of access to information generated or controlled by the government").

Plaintiffs also argue that the common-law right of access to the courts means that they are entitled to know the identities of the consulting agencies.  Pls.' Opp'n at 5–6.  "[T]he common law bestows upon the public a right of access to public records and documents," unless a statute provides otherwise.  *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996); *see also Ctr. for Nat'l Sec. Studies*, 331 F.3d at 937 ("[W]e cannot craft federal common law when Congress has spoken directly to the issue at hand.").  Here, the common-law right of access has been preempted by a statute—the FOIA.  In *Center for National Security Studies*, the D.C. Circuit held that the FOIA preempts the common law with respect to records held by federal agencies because Congress has already "balanc[ed] the benefits and harms of disclosure" in that "carefully calibrated statutory scheme."  331 F.3d at 937.

Even if the common-law right of access was not preempted by statute, Plaintiffs' argument still fails. The right "is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). "There is, for instance, no right of access to documents which have traditionally been kept secret for important policy reasons." *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998) (quotation marks omitted). And even where the right does apply, it may be overcome when "the government's interest in keeping the document secret [outweighs] the public's interest in disclosure." *Washington Legal Found.*, 89 F.3d at 902.

Here, the Government's interest in keeping the identities of the consulting agencies secret outweighs the public's interest in disclosure. Plaintiffs argue that revealing the identities of consulting agencies would not "reveal classified information or jeopardize a criminal investigation" because "[m]erely knowing that a particular agency has an interest in some information in one or more of the hundreds of pages at issue here would not reveal that agency's interest in any specific person or topic." Pls.' Opp'n 6. But the FBI's sworn declaration makes clear that "[i]f an agency locates within its files material originating with an Intelligence Community agency, and the mere involvement of that agency in the matter is a classified fact that has not been publicly acknowledged, then to disclose or give attribution to the involvement of that Intelligence Community agency could cause national security harms." Third Seidel Decl. ¶ 17 (citing Exec. Order No. 13,526, § 3.6(b), 3 C.F.R. § 298 (2009)); *see Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 ("[I]n the FOIA context, [the D.C. Circuit has] consistently deferred to executive affidavits predicting harm to the national security, and . . . found it unwise to undertake searching judicial review."). Along with being classified, an Intelligence Community agency's connection to a specific individual, activity, program, or FBI investigation can be prohibited from disclosure under a withholding statute. Second Seidel Decl. ¶ 11. And withholding identities of consulting

agencies is often crucial to avoid exposure of a law enforcement agency's interest in a person or activity that may not be publicly known. *Id.* Disclosure of these consulting agencies' identities could thus risk disclosure of information that could harm national security or pending law enforcement matters and would otherwise be exempt under the FOIA.

Plaintiffs rely on *CNN v. FBI*, 384 F. Supp. 3d 20 (D.D.C. 2019), to argue that the common-law right of access requires the identities of the consulting agencies to be disclosed at the October 7 status conference. But that case, which is on appeal in the D.C. Circuit, addressed whether an *in camera* declaration submitted by the FBI to support its withholdings should be unsealed following the court's ruling on the redactions. It did not involve classified information, unlike this case, where particular agencies' involvement in an aspect of the Special Counsel's investigation could be classified. And *CNN* did not require the Government to disclose the identities of consulting agencies before a final determination had even been made as to whether the identities of those agencies would be exempt from disclosure under the FOIA.

Taking another tack, Plaintiffs also assert that the identities of the consulting agencies would not be revealed if the agencies provide final responses to the FBI by October 9. Pls.' Opp'n 6. While that is certainly true, Plaintiffs ignore that certain consultation/coordination requests will not be sent to other governmental agencies until the beginning of October, leaving very little time for the agencies to provide a final response to the FBI. Third Seidel Decl. ¶ 16. Plaintiffs also ignore the fact that certain consulting agencies have experienced significant productivity losses due to COVID-19, and many agencies have personnel teleworking, who cannot access classified systems or documents. *Id.* ¶ 14.

Finally, Plaintiffs do not offer any counter to the Government's argument that disclosure of the consulting agencies will harm the FBI's ability to conduct counterintelligence, national

security, and law enforcement investigations. Third Seidel Decl. ¶ 19.  This concern should not be lightly brushed aside, as the FBI relies on its relationships with Intelligence Community and law enforcement agencies to effectively conduct and coordinate these investigations.  *Id.*  If Intelligence Community and law enforcement agencies cannot rely on the FBI to honor their requests for confidentiality, then the FBI's relationships with those agencies will suffer, which would negatively impact the FBI's counterintelligence, national security, and law enforcement investigations.  *Id.*

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendant's motion, the Court should grant Defendant's motion and should: (1) clarify that any consultation/coordination requests that the FBI identifies during its processing of the typewritten narratives of the FD-302s for the October 1 production do not have to be returned by October 9, or, in the alternative, reconsider its Amended Order directing as such; and (2) clarify that its Amended Order does not direct the disclosure of the identities of any agencies with pending consultation/coordination requests to Plaintiffs at the October 7, 2020 status conference, or, in the alternative, reconsider the conversion of the *ex parte* hearing into a status conference with all of the parties, and without the presence of agency personnel.

Dated: September 23, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW (N.C. Bar No. 46578)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 12102
Washington, D.C. 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendant*