IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD and BUZZFEED, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <u>et al.</u> <br><br> Defendants. <br><br> CABLE NEWS NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | Case No: 1:19-cv-01278-RBW |

## **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REPROCESS**

For the last three years and nine months, the President has governed this country by tweet. The President has stipulated that he uses Twitter "to announce, describe, and defend his policies; to promote his Administration's legislative agenda; *to announce official decisions*; to engage with foreign political leaders; [and] to publicize state visits." *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 231-32 (2d Cir. 2019) (emphasis added). His administration describes the President's Twitter account as "one of the White House's main vehicles for conducting official business" and his tweets are "official statements of the President." *Id.* at 232. He has even used his tweets to make "official" "legal notice" to

Congress.  Donald J. Trump (@realDonaldTrump), Twitter (Jan. 5, 2020, 2:25 PM), *available at* https://twitter.com/realdonaldtrump/status/1213919480574812160 (notifying Congress the United States "will quickly & fully strike back, & perhaps in a disproportionate manner," should Iran attack any U.S. target).

It is not at all surprising, therefore, that the President would use Twitter as the means by which he would declassify records and waive FOIA exemptions on behalf of the Executive Branch over which is holds Constitutional authority.  Indeed, it would be surprising if he did so by any other means.  The Court should reject the Government's back-pedaling and order DOJ to comply with the President's clear directive to declassify and remove redactions from the narrative FD-302 forms responsive to Plaintiffs' FOIA requests.  And if the Court requires any clarity beyond the President's unequivocal tweets, it should direct the Office of White House Counsel to appear at the hearing scheduled for Friday.

Every item of information from an FD-302 provides the voting public with additional and important information as they cast their ballots for President in 20 days.  Plaintiffs ask the Court to ensure that the Government continue to furnish voters with maximum information on these matters of significant public concern.

**I.       ALL OF THE RECORDS AT ISSUE HERE HAVE BEEN DECLASSIFIED**

As the Government admits, "[t]he President has the authority to declassify documents that are otherwise properly classified," and that authority derives from his Constitutional authority and is independent of any Congressional grant. ECF No. 107 at 4 (citing and quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988)).  There is nothing in the Constitution, Executive Order 13,526, or otherwise that prohibits a president from declassifying records in whatever way and through whatever form of communication the president sees fit.  Thus, an official presidential tweet stating "I have fully authorized the total Declassification of any & all

documents pertaining to the single greatest political CRIME in American History, the Russia Hoax. . . . No redactions!" is more than sufficient to exercise that Constitutional authority. The government offers nothing indicating that the President did not mean exactly what he said or that he lacked the Constitutional authority to do what he has done. Instead, it claims that Plaintiffs "have pointed to no order declassifying the documents at issue in this case," ECF No. 107 at 4, which is plainly wrong: the tweet *is* the order, and it came in an official statement directly from the President himself.[1]

Further, the tweet fully complies with Executive Order 13,526 § 3.1(d), even if the government had cited any authority for the implicit proposition that the President's Constitutional authorities are limited by that order. *See* ECF No. 107 at 4. That section allows declassification where the President determines "the need to protect such information may be outweighed by the public interest in disclosure of the information." E.O. 13,526 § 3.1(d), 75 Fed. Reg. 707, 713 (Dec. 29, 2009). The President made that determination and concluded that the Russia investigation was "the single greatest political CRIME in American History." The President clearly did not indicate in either tweet that any "questions" on this issue have "arise[n]," *id.*, and that he did not consider it necessary to delegate his Constitutional authority to declassify records to anyone else under Section 3.1(d) or seek their input.

Nor is the government correct in its claim that the tweet-orders did not "refer to any specific document." *Id.* at 5. Both tweets specified exactly what documents have been declassified, clearly stating in each: "any & all documents" pertaining to "the Russia Hoax," and "[a]ll Russia Hoax Scandal information." As DOJ acknowledges, documents pertaining to the "Russia hoax" clearly includes those documents at issue here. Declaration of G. Bradley

---

[1] Even assuming for the sake of argument that the tweets are not declassification orders themselves, they at a minimum describe declassification orders the President gave "long ago."

- 3 -

Weinsheimer, ECF No. 107-1 at ¶¶ 1 n.1, 3 (acknowledging that tweets relate to the "Russia Investigation" and stating that the "parameters of the Russia Investigation are described in DOJ Order No. 3915-2017," which appointed Robert Mueller as special counsel); *see also, e.g.,* Donald J. Trump (@realDonaldTrump), Twitter (Apr. 20, 2019, 7:02 AM), *available at* https://twitter.com/realdonaldtrump/status/1119572078175367168 ("The Fake News Media is doing everything possible to stir up and anger the pols and as many people as possible seldom mentioning the fact that the Mueller Report had as its principle conclusion the fact that there was NO COLLUSION WITH RUSSIA. The Russia Hoax is dead!"). This is not at all "ambiguous." It is perfectly clear that the President ordered every document about the Mueller investigation declassified, with no redactions. No other interpretation is plausible, nor has the Government offered any.

The Weinsheimer declaration does not support the government's position, and in fact supports Plaintiffs'. As the declaration makes clear, the question is whether the tweets were "***meant*** as an order to alter any redactions that have already been taken on any materials in this case and other cases." ECF No. 107-1 at ¶ 4 (emphasis added). But the declaration makes clear that neither the DOJ nor the White House Counsel's Office actually attempted to get an answer to that question from the only person who can definitively answer it: the President. Instead, they sought, apparently without actually asking the President, to determine whether the President issued some further "self-executing declassification order" beyond the tweets and somehow concluded that the President merely "authorized the Attorney General to declassify documents as part of his ongoing review of intelligence activities relating to the 2016 Presidential election and certain related matters." *Id.* at ¶ 5. But the President himself has already made clear that this interpretation of his intent is wrong: he clearly stated in an official presidential communication

that this same material "was Declassified by me long ago," but "people have acted very slowly." ECF No. 102-1.

It is clear, therefore, that the White House Counsel and DOJ have neither endeavored to determine what the President intended nor to act upon his orders, despite his authority over the Executive Branch and despite his clear statement that his intent has not been carried out thus far. If the President did not intend to order the immediate public release of all parts of the Mueller investigation as his tweets plainly indicate, he can say so directly. This speculation by the White House Counsel's Office about presidential intent should be rejected, especially because it conflicts with the President's own unambiguous words and his complaint that his prior declassification order was not being followed as he intended.

Finally, the two cases relied on by the government as support are readily distinguishable. Both *Poulsen* and *James Madison Project* focused on whether the September 17, 2018 Statement from the White House Press Secretary[2] was a presidential order to declassify. *Poulsen v. Dep't of Def.*, 373 F. Supp. 3d 1249, 1259, 1279 (N.D. Cal. 2019); *James Madison Project v. Dep't of Justice*, No. 17-CV-00597 (APM), 2020 WL 1033301, at *2 (D.D.C. Mar. 3, 2020). First, both cases merely stand for the proposition that a statement written by the Press Secretary, which discusses an action by the President, does not constitute as an order directly from the President in his own words, as we have here. And second, as the *Poulsen* court reasoned, the Press Secretary's statement said that the President was "asking the executive agencies to undertake a review and further justify the redactions," *Poulsen*, 373 F. Supp. 3d at 1279, and merely showed that the President had delegated his discretionary declassification authority under Section 3.1(d)

---

[2] *Statement from the Press Secretary*, White House (Sept. 17, 2018), *available at* https://www. whitehouse.gov/briefings-statements/statement-press-secretary-34 ("…the President has directed the Office of the Director of National Intelligence and the Department of Justice (including the FBI) to provide for the immediate declassification of the following materials….").

to three agency heads. *Statement from the Press Secretary*, *supra* note 2 ("to provide for"). This is a stark contrast to the President's clear and direct order for "total Declassification" with "No redactions!" here. *See* ECF No. 102-1 (Group Ex. A).

Because the President has declassified the Mueller investigation, the Court should order DOJ to reprocess these public records in advance of the November 3 election. If the Court instead requires further clarity on the President's instructions, it should order a representative from the White House Counsel's Office to appear at Friday's hearing to explain the President's tweets.

## II. AS THE HEAD OF THE EXECUTIVE BRANCH WITH AUTHORITY OVER THE DOJ AND FBI, THE PRESIDENT HAS ORDERED THE WAIVER OF DISCRETIONARY EXEMPTIONS

It is axiomatic that many FOIA exemptions are purely discretionary and that no law prohibits an agency from waiving those exemptions to produce records even though they lawfully could be withheld. *E.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979) ("Congress did not design the FOIA exemptions to be mandatory bars to disclosure"); *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1334 n.1 (D.C. Cir. 1987). That includes, for example, Exemption 5. It is equally axiomatic that unless some judicial or congressional power imposes constitutionally permissible limits on it, the President has total authority over the Executive Branch. U.S. Const. art. II, § 1, cl. 1 ("The executive Power shall be vested in a President of the United States of America."); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2203 (2020) ("Article II 'makes a single President responsible for the actions of the Executive Branch.'"); *Nixon v. Fitzgerald*, 457 U.S. 731, 750 (1982) ("This grant of authority establishes the President as the chief constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity.").

- 7 -

The government does not dispute these points. Rather, it claims that the President did not make sufficiently clear that he was ordering the waiver of any exemptions. ECF No. 107 at 6. But his tweet could hardly be more clear: he ordered the release of **all** records about the Mueller investigation with "No redactions!" And the Court need not decide whether the President has the Constitutional authority to waive statutory prohibitions on release under Exemption 3 or through the Privacy Act because Plaintiffs have not sought the release of that information in their motion. Thus, this matter is exceedingly simple: the President has ordered the release of all Mueller investigation documents without redaction, and the Court should order exactly that except to the extent a statute prohibits release.

### III.    CONCLUSION

The Justice Department and White House Counsel may not like the President's decision to declassify all records from the Mueller investigation and waive discretionary exemptions. But it is not their decision to make, and they have offered absolutely nothing from the President saying that he did not mean precisely what he said. The Court should simply order the government to comply with the President's decision and reprocess these records immediately, or, alternatively, instruct the White House Counsel's Office to send a representative to Friday's hearing to explain why it contends the President's tweets do not mean what they say.

- 8 -

RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

Matthew Topic
Merrick Wayne
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
foia@loevy.com
DC Bar No. IL0037
*Counsel for Jason Leopold and BuzzFeed Inc.*


*/s/ Charles D. Tobin*
Charles D. Tobin (D.C. Bar No. 455593)
tobinc@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 661-2200
*Counsel for Cable News Network, Inc.*